## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff, | ) |
| | ) |
| | ) |
| v. | )  Civil Action No. 2:25-CV-16049 |
| | ) |
| PARTY FOR SOCIALISM AND | ) |
| LIBERATION NEW JERSEY, AMERICAN | ) |
| MUSLIMS FOR PALESTINE NEW JERSEY, | ) |
| TOVA FRY a/k/a TERRY KAY, ALTAF SHARIF, | ) |
| MATT DRAGON, ERIC CAMINS, JANE DOE, | ) |
| and JOHN DOE | ) |
| Defendants | ) |
| | ) |

### COMPLAINT AND JURY DEMAND

The United States of America, by and through the Department of Justice, Civil Rights Division, brings this civil action seeking damages and injunctive relief pursuant to the Freedom of Access to Clinic Entrances Act (FACE Act), 18 U.S.C. § 248, against Defendants Party for Socialism and Liberation-New Jersey (PSL), American Muslims for Palestine-New Jersey (AMP), Tova Fry a/k/a Terry Kay, Altaf Sharif, Matt Dragon, Eric Camins, Jane Doe, and John Doe (collectively Defendants), and states as follows:

### <u>INTRODUCTION</u>

1.      On November 13, 2024, Defendants engaged in a coordinated effort to intimidate and disrupt Jewish worshipers at a religious event held at the synagogue Congregation Ohr Torah, in West Orange, New Jersey. The event, originally scheduled at the home of Dr. Moshe Glick, a well-respected healthcare professional, in a room designated for communal prayer and study, was relocated to the synagogue due to credible threats of violence from certain Defendants. At Congregation Ohr Torah, Defendants' actions—including physical assaults on worshipers Moshe Glick and David Silberberg, antisemitic and threatening chants, and defiance of police orders—

were intended to intimidate Jewish worshipers and prevent their participation in lawful religious services, in violation of 18 U.S.C. § 248(a)(2).

2.     The FACE Act prohibits the use of force, threats of force, or physical obstruction to intentionally injure, intimidate, or interfere with any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship. The Defendants' conduct, both in forcing the relocation of the event from Glick's prayer space and in disrupting the event at the synagogue through violence and intimidation, constitutes clear violations of this statute.

3.     In bringing this action, the United States alleges that Defendants have committed, and are likely to continue to commit, violations of the FACE Act and that persons lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship are being, have been, and will continue to be injured, intimidated, and/or interfered with by the Defendants' conduct.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345, as this is a civil action arising under the laws of the United States, specifically the FACE Act, 18 U.S.C. § 248, and is brought by the United States.

5.     The United States is authorized to bring this action pursuant to the FACE Act, 18 U.S.C. § 248(c)(2).

6.     The FACE Act, 18 U.S.C. § 248(a)(2), provides federal jurisdiction to protect access to places of religious worship by prohibiting conduct that "intentionally injures, intimidates, or interferes with . . . any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship." The events at issue occurred at

Congregation Ohr Torah, a synagogue, and were preceded by threats to intimidate Glick from hosting the same event in a room at his home designated for religious gatherings.

7. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(2), as the events giving rise to this action occurred in West Orange, Essex County, New Jersey, within this judicial district.

## **PARTIES**

8. Plaintiff United States of America, acting through the Department of Justice, Civil Rights Division, is authorized to bring this action under 18 U.S.C. § 248(c)(2) to enforce the FACE Act and seek injunctive relief, civil penalties, and compensatory damages for aggrieved persons.

9. Defendant PSL is the New Jersey chapter of the national Party for Socialism and Liberation, a political organization that organizes protests across the United States. PSL has a documented history of participating in demonstrations targeting Jewish institutions and Israel-related events, often involving violence or incitement. On November 13, 2024, PSL organized and promoted a violent protest at Congregation Ohr Torah, calling for supporters to gather and disrupt the religious event. PSL knew that such actions would foreseeably lead to violence and intimidation based on prior incidents such as the violent protest in Bergenfield, New Jersey, on November 7, 2024.

10. Defendant AMP is the New Jersey chapter of American Muslims for Palestine, a national nonprofit organization that organizes anti-Israel protests and events. AMP's national organization has a history of targeting Jewish institutions, including a violent protest in June 2024 outside Adas Torah Synagogue in Los Angeles. On November 13, 2024, AMP, along with PSL, organized and promoted the violent protest at Congregation Ohr Torah.

3

11.     Defendant Tova Fry, also known as Terry Kay ("Fry"), is an individual residing in New Jersey. Fry was recorded on a Ring camera delivering a threatening letter to Glick's home demanding cancellation of the planned religious event. Fry's actions were intended to intimidate Glick as a threat by signaling that she knew where he lived. She also took photographs of Glick's home from the street, indicating an intent to disseminate his address to others to facilitate further intimidation or harm.  On November 13, 2024, Fry joined a mob that broke through a police line, marched onto the Congregation Ohr Torah synagogue property, and physically obstructed Jewish worshipers from accessing the religious event with the intent to intimidate and disrupt the service

12.     Defendant Altaf Sharif is an individual residing in New Jersey. On November 13, 2024, Sharif joined a mob that broke through a police line, marched onto the Congregation Ohr Torah synagogue property, and physically obstructed Jewish worshipers from accessing the religious event with the intent to intimidate and disrupt the service. Sharif used a vuvuzela as a weapon reasonably known to lead to permanent noise-induced hearing loss. Sharif directly blew the vuvuzela within inches of Glick's ear to cause injury to him, to intimidate him, and to disrupt the religious service. Sharif charged at Glick with intent to cause serious bodily harm. Sharif was motivated by antisemitic animus after another defendant identified David Silberberg as "the Jew." Sharif physically assaulted Silberberg by grabbing him by the throat, placing him in a chokehold, and tackling him down a hill on synagogue property.

13.     Defendant Matt Dragon is an individual residing in New Jersey. On November 13, 2024, Dragon led a mob that broke through a police line, marched onto synagogue property, and physically obstructed Jewish worshipers from accessing the religious event with the intent to intimidate and disrupt the service.

14.    Defendant Eric Camins is an individual whose residence is unknown. On November 13, 2024, Camins joined the mob that broke through a police line, marched onto synagogue property, and physically obstructed Jewish worshipers from accessing the religious event with intent to intimidate and disrupt the service. Camins also pointed at David Silberberg, stating, "the Jew is here," aiding and abetting Sharif's assault on Silberberg. Camins joined the mob in following Sharif as Sharif attacked Silberberg with intent to inflict serious bodily harm.

15.    Defendant Jane Doe is an unidentified individual who, on November 13, 2024, joined the mob in physically obstructing Jewish worshipers from accessing the religious event with intent to intimidate and disrupt the service. She also used a vuvuzela as a weapon reasonably known to lead to permanent noise-induced hearing loss by directly blowing it within inches of Glick's ear to cause injury to him, to intimidate him, and to disrupt the religious service. Jane Doe also joined the mob in following Sharif during his assault on David Silberberg.

16.    Defendant John Doe is an unidentified individual who, on November 13, 2024, deployed a stink bomb that obstructed Jewish worshipers from accessing the religious event with the intent to intimidate and disrupt the religious service.

**FACTUAL BACKGROUND**

17.    Glick organized a religious event centered on the Jewish obligation to live in the Land of Israel, a tenet of Jewish faith. The event, designated as an Israel real estate fair and "Ruach" (Spiritual) event, was initially scheduled for November 13, 2024, at Glick's private home in West Orange, New Jersey, in a room designated for communal prayer and study, containing a Jewish library with prayer books and sacred texts, where he hosted numerous prayer groups.

18.    Since the October 7, 2023, attack and massacre in Israel, Jewish events in the United States and Canada have faced heightened security risks due to targeting by anti-Israel groups.

19.    Glick arranged private security in advance of the event, in coordination with the Jewish Federation and the West Orange Police Department.

20.    On or around November 4, 2024, Defendant Tova Fry, a/k/a Terry Kay, was recorded on a Ring camera delivering a threatening letter to Glick's home, signed by AMP and other anti-Israel organizations, demanding cancellation of the event or threatening legal action, stating, in part, to "immediately terminate any and all hosting, participation, support, facilitation, and conspiracy to support such events . . .." The Ring camera captured these images of Fry:

21.    As Image 1 shows, Fry also took photographs of Glick's home, signaling her intent to disseminate the location of his home to others.



**Image 1: Fry taking photo of Glick's home**

22.    Glick interpreted Fry's actions as a serious threat of harm, particularly given recent, prior incidents targeting Jewish events.

23.    Glick discovered social media posts on pro-Palestinian social media accounts publicizing his home address as the location of a planned protest. He perceived this as a credible threat, given a pattern of similar incidents—including a violent protest organized by AMP's national organization and others outside Adas Torah Synagogue in Los Angeles in June 2024. At that protest, protestors blew long horns and chanted "Globalize the Intifada," a phrase commonly interpreted by Jewish individuals as a call to violence against Jews, in reference to the violent uprisings against Jews in Israel during the 1980s through early 2000s which involved killings by rocks and suicide bombs.

24.    Glick relayed the threatening letter to his private security team, who discovered that Defendants PSL and AMP were posting on social media, calling for supporters to gather on November 13, 2024, near Glick's home to protest the event. The solicitation for protestors was distributed via interstate commerce through social media platform, Instagram.  And, in another social media post, AMP urged protestors to hide their identities with masks.

25.    As Image 2 shows, AMP's posts embedded the below flyer from a Jewish organization advertising eight cross-country events in November, circling both Glick's event and another event in Bergenfield, New Jersey, scheduled for November 7, 2024:






**Image 2: Screenshots of AMP social media posts**

26.     On November 7, 2024, AMP and others organized a violent protest that disrupted the Bergenfield event.

27.     Following the letter delivered to Glick's house and the Bergenfield incident, Glick's security team advised that they could not guarantee his safety at his home. Consequently, the event was relocated to Congregation Ohr Torah, a synagogue a short walk from Glick's home, in coordination with the West Orange Police Department, the Essex County Sheriff's Office, the private security agency, and the Jewish Federation of West Orange. Glick also requested armed security for his home, fearing protestors would target it due to its publicized address.

28.     The event at Congregation Ohr Torah was to include prayer, a religious memorial service for the late Rabbi Avi Goldberg, a Torah sermon, religious songs with biblical verses,

prayerful dancing, educational activities about the religious obligation to live in Israel, a real estate fair, and a festive barbecue in the synagogue's parking lot—all part of the religious observance.

29.     On November 12, 2024, Glick emailed local law enforcement, expressing concerns about worshiper safety due to the November 7th Bergenfield protest and a subsequent November 8th attack on Israeli soccer fans in Amsterdam, Netherlands, as reported by the Associated Press, where assailants assaulted Jewish individuals in direct response to social medial calls for a "Jew hunt." Glick inquired of law enforcement whether the protestors had a permit to assemble or march, where they would be allowed to gather, and how many officers would be present. The police informed Glick that the protestors lacked a permit, but five Essex County Sheriff's deputies, two West Orange Police officers, and additional patrols near Glick's home would be deployed. Given both Bergenfield and Amsterdam incidents, Fry's visit to his home, and social media posts urging masked protests, Glick, the private security team, the Jewish Federation, and police anticipated potential violence.

30.     On November 13, 2024, approximately 50 protestors, many wearing masks to conceal their identities and carrying vuvuzelas, gathered at an intersection near Glick's home.

31.     Vuvuzelas are long thin horns capable of causing permanent noise-induced hearing loss and banned at many sporting events due to their potential use as weapons.

32.     On November 13, 2024, at about 6:50 p.m., upon learning the event had moved to Congregation Ohr Torah, the protestors marched toward the synagogue, passing Jewish homes and shouting at residents.

33.     The protestors reached a fire station adjacent to the synagogue, where law enforcement formed a defensive line to prevent them from approaching the synagogue property where worshipers had gathered.

34.    Worshipers, observing the protestors, became frightened and requested that law enforcement establish a physical barricade or that the police order the protestors to move across the street from the synagogue.

35.    Law enforcement asked the protestors to cross the street or at least stop at the fire station, but the protestors refused.

36.    One of the protestors declared, "We're not stopping."

37.    Fry asked Dragon, "Where is the entrance?" (referring to the synagogue). Dragon responded to Fry and said that the synagogue was the next building over.

38.    An officer asked the protestors to step back, and stated, "You're making me nervous."

39.    The protestors—now a mob—defied the police's requests and instead surged through the police line, causing the officers to retreat and scatter.

40.    The mob, led by Defendant Dragon, marched onto Congregation Ohr Torah synagogue property, shouting and blowing vuvuzelas.

41.    The police repeatedly instructed the mob to stay off the synagogue property. Members of the mob cursed at the police and defied the order by entering and spreading out on the synagogue's front lawn where worshipers had gathered.

42.    The mob disrupted the religious event by blowing vuvuzelas to drown out the memorial service and Torah sermon making it impossible for worshipers to hear.

43.    Defendants Sharif and Jane Doe, as part of the mob, marched onto synagogue property blowing vuvuzelas and identified Glick. Jane Doe approached within inches of Glick's face, blowing her vuvuzela directly in Glick's ear as a weapon. Video of the event captured images of Doe's assault with the vuvuzela.

44.    As Image 3 shows, Glick swatted Jane Doe's vuvuzela away as Jane Doe used the vuvuzela as a weapon.



**Image 3: Glick swatting away Jane Doe's vuvuzela**

45.    Sharif, observing that Glick swatted Jane Doe's vuvuzela, became visibly enraged. Sharif then blew his vuvuzela directly in Glick's face, so close that Glick was able to grab it.

46.    As Image 4 shows, Glick grabbed Sharif's vuvuzela and swatted it away as Sharif used the vuvuzela as a weapon.



**Image 4: Glick grabs and swats away Sharif's vuvuzela**

47.    Further enraged, Sharif squared off, staring directly at Glick, and then charged at Glick with intent to cause serious bodily harm.

48.    As Image 5 shows, Glick retreated in fear as Sharif charged towards him.



**Image 5: Sharif charges at Glick and Glick retreats in fear**

12

49.    Defendant Camins and a worshiper named David Silberberg, standing nearby, observed Sharif charging towards Glick and both reacted in a manner demonstrating they recognized Sharif's intent to harm Glick. Camins put out a hand to stop Sharif and shook his head at Sharif, but Sharif continued towards Glick. In defense of Glick, Silberberg sprayed pepper spray in Sharif's eyes, causing Sharif to stop and cover his eyes.

50.    Approximately seven seconds later, Sharif regained his eyesight and looked at Silberberg.

51.    As Image 6 shows, Camins, who had initially attempted to restrain Sharif, changed his stance, pointed at Silberberg, and shouted, "The Jew is here!"



**Image 6: Camins points to Silberberg shouting "The Jew is here!"**

52.    Sharif looked again at Silberberg and—just as he had charged at Glick—suddenly attacked Silberberg.

53.    Sharif who is a head taller and twenty years younger than sixty-five-year-old Silberberg, reached toward Silberberg, placing his right hand over Silberberg's left shoulder and grabbing him behind the neck.

54.    As Image 7 shows, Sharif then brought his left hand over Silberberg's right shoulder, joining his hands behind Silberberg's neck, thus encircling Silberberg in a neck hold.



**Image 7: Sharif places Silberberg in a neck hold**

55.    Sharif applied the full force of his body against Silberberg's neck to throw him to the ground on synagogue property. Once Silberberg was on the ground, Sharif dragged him down a hill from the synagogue's front lawn toward the synagogue's parking lot.

56.    As Image 8 shows, Sharif then completely flipped Silberberg over and drilled Silberberg's head into the ground.



**Image 8: Sharif drills Silberberg's head into the ground**

57.    Silberberg was helpless and defenseless throughout the assault. When the two reached the bottom of the hill, Sharif, without losing the grip of the chokehold, stood up. Sharif, fully on his feet, held Silberberg by the neck in a chokehold, with Silberberg also on his feet, bent over at a right angle with his head below Sharif's waist. Sharif then dragged Silberberg another ten to fifteen feet to the Synagogue parking lot.

58.    The mob, including Camins and Jane Doe, followed Sharif down the hill as he brutally attacked Silberberg.

59.    Bystanders, including Glick, feared for Silberberg's life due to Sharif's large stature compared to Silberberg's small stature and advanced age as well as the severity and ferocity of Sharif's attack. Glick, a healthcare professional, repeatedly called for law enforcement intervention, but officers, stationed on the public street in front of the synagogue at the top of the hill, were too far from the synagogue parking lot to respond in time to save Silberberg from Sharif.

60.     Several worshipers, including Glick, ran to aid Silberg. One worshiper grabbed Silberg by the waist and tried to pry him loose from Sharif's chokehold but was unable to do so due to the strength of the hold applied by Sharif. Ultimately, Glick hit Sharif on the head with his flashlight in defense of Glick's life. This finally caused Sharif to loosen his hold on Silberg's throat which, in turn, allowed the worshipers to drag Silberg to safety.

61.     After the assault, Sharif, Jane Doe, and Camins falsely claimed to police that Silberg had tackled Sharif—a claim directly contradicted by video evidence.

62.     After the assault, law enforcement immediately ordered the mob off synagogue property.

63.     After the assault, the mob shouted to the Jewish worshipers, "And you got your fucking shit rocked, didn't you?" and "You're next! You're next!" They also shouted, "Moshe Glick you can't hide!"  These taunts were designed to intimidate the Jewish worshipers.

64.     Around that same time, a police officer on the scene noted that a stink bomb had been deployed. Upon information and belief, the stink bomb was deployed by an unidentified John Doe protestor to further obstruct the Jewish congregants attempts to worship.

65.     The mob's actions led by Defendant Dragon caused several individuals to refrain from attending the religious event out of fear and forced worshipers to move the service to another location within synagogue property, effectively blocking freedom of movement and obstructing access to the event.

66.     The unpermitted protest obstructed the public sidewalk on one side of synagogue rendering passage for worshipers unreasonably difficult and hazardous. Worshipers would have had no choice but to overcome the obstruction by either walking through the angry mob or by

risking their safety by walking on the busy street during heavy vehicular traffic and low visibility during the evening hours.

67.      Defendants PSL and AMP, as organizers, have a history of participating in disruptive and violent demonstrations targeting Jewish institutions, including, upon information and belief, the protest on November 7, 2024, in Bergenfield, New Jersey, demonstrating a pattern of conduct aimed at intimidating Jewish worshipers.

**CAUSE OF ACTION:**

**VIOLATION OF THE FREEDOM OF ACCESS TO CLINIC ENTRANCES ACT**

**(18 U.S.C. § 248)**

68.      The United States incorporates by reference the allegations in the foregoing paragraphs.

69.      Defendants' conduct constitutes force, threat of force, or physical obstruction that intentionally injured, intimidated, or interfered with individuals lawfully exercising the First Amendment right of religious freedom at Congregation Ohr Torah, a place of religious worship, in violation of 18 U.S.C. § 248(a)(2).

70.      Fry delivered a threatening letter to Glick's home, took photographs to signal her intent to disseminate his address, and intimidated him into relocating the religious event from his designated prayer space. These actions constitute a "true threat" as a reasonable person would foresee that Fry's conduct would be interpreted as a serious threat of harm, particularly given prior incidents like the November 7, 2024, Bergenfield protest.

71.      PSL and AMP promoted the November 13, 2024, protest, knowing it would foreseeably lead to violence and intimidation, like the November 7th Bergenfield protest a week

prior. By urging supporters to mask their identities and target the event, PSL and AMP are responsible for the resulting violations.

72.    Defendant Dragon led a mob that broke through a police line, defied lawful police orders to stop, and marched onto synagogue property with intent to intimidate and obstruct Jewish worshipers, preventing access to the religious event at the Congregation Ohr Torah synagogue.

73.    Defendants Sharif and Jane Doe used vuvuzelas as weapons to drown out the religious service, making it impossible for worshipers to hear the memorial service and Torah sermon, effectively denying access to the event. Blowing vuvuzelas to disrupt a religious event is not protected speech, as blowing a vuvuzela does not convey a message and was used by Defendants Sharif and Jane Doe as a method of physical harm, intimidation, and disruption reasonably known to lead to permanent noise-induced hearing loss.

74.    Sharif and Jane Doe specifically targeted Glick, blowing vuvuzelas directly within inches of his ear to intimidate and harm him, constituting force and intimidation under the FACE Act.

75.    Motivated by antisemitic animus, Sharif charged at Glick with intent to cause serious bodily harm and, after Camins identified Silberberg as "the Jew," assaulted Silberberg by grabbing his throat, placing him in a chokehold, tackling him down a hill, and further dragging him across the synagogue property.

76.    Camins aided and abetted Sharif's assault on Silberberg in deliberately targeting him by pointing at Silberberg stating, "The Jew is here." Camins also joined the mob in following Sharif during the assault with intent to intimidate and harm.

77.    Camins and Jane Doe, as part of the mob, followed Sharif during his assault on Silberberg, furthering the intimidation and interference with the worshipers' religious observance.

78.    The mob's chants, including "Moshe Glick you can't hide" and "You're next! You're next!" were intended to intimidate Jewish worshipers, constituting direct threats of force under the FACE Act, as a reasonable person would foresee these statements as serious threats of harm.

79.    The Defendants' actions were motivated by the religious nature of the event and the Jewish identity—both as a race and religion—of the worshipers, as evidenced by antisemitic statements like "The Jew is here" and the targeting of Glick's prayer space and Congregation Ohr Torah, a synagogue.

80.    Defendants' conduct caused actual intimidation and interference because individuals refrained from attending the event out of fear and reasonable apprehension of bodily harm to themselves and others. The worshipers present at the event were unable to fully participate as planned due to the Defendants' disruption and the eventual relocation of the religious service.

81.    Defendants' actions reflect a pattern of targeting Jewish religious institutions, as evidenced by the Bergenfield and Los Angeles incidents, thus demonstrating a foreseeable risk of further violence and intimidation.

82.    Unless restrained, Defendants are likely to continue violating the FACE Act, given their history of targeting Jewish religious events with violence and intimidation.

## PRAYER FOR RELIEF

**WHEREFORE**, the United States, pursuant to 18 U.S.C. § 248(c), respectfully requests judgment in its favor and against Defendants PSL New Jersey, AMP New Jersey, Tova Fry a/k/a Terry Kay, Altaf Sharif, Matt Dragon, Eric Camins, Jane Doe, and John Doe, in the form of:

A.    A permanent injunction prohibiting Defendants, their representatives, agents, employees, or any others acting in concert or participation with them, from:

B. Using force, threats of force, or physical obstruction to intentionally injure, intimidate, or interfere with or attempt to injure, intimidate, or interfere with any person lawfully exercising or seeking to exercise their First Amendment right to religious freedom at Congregation Ohr Torah or any other place of religious worship in the District of New Jersey, in violation of 18 U.S.C. § 248(a)(2);

C. Coming within a buffer zone directly outside Congregation Ohr Torah's main entrance, comprising an area approximately 50 feet by 50 feet, extending from the synagogue's property line to the adjacent sidewalk and curb, or entering onto Congregation Ohr Torah's property;

D. Coming within a buffer zone directly outside Dr. Moshe Glick's residence, comprising an area approximately 50 feet by 50 feet, extending from his property line to the adjacent sidewalk and curb;

E. Organizing, participating in, or promoting any demonstration within 500 feet of Congregation Ohr Torah or any other place of religious worship in the District of New Jersey during religious services or events, without a valid permit, where such demonstration is intended to disrupt or intimidate worshipers;

F. Statutory compensatory damages for each person aggrieved by Defendants' violations, including those who were intimidated or prevented from attending the religious event on November 13, 2024, pursuant to 18 U.S.C. § 248(c)(2)(B);

G. A civil penalty assessment against each Defendant in the amount of $31,670 for the first violation of the FACE Act, and $52,786 for each subsequent violation, pursuant to 18 U.S.C. § 248(c)(2)(B)(i) and 28 C.F.R. § 85.5;

H. An order authorizing the United States Marshal Service to use reasonable means to execute the Court's order and to arrest any person who impedes its execution;

I. An order authorizing federal, state, or local law enforcement agencies to enforce the permanent injunction against Defendants and any others acting in concert or participation with them;

J. An order for such additional relief as the interests of justice may require.

## DEMAND FOR JURY TRIAL

The United States demands a trial by jury on all issues so triable.

DATED: September 29, 2025.

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

JESUS A. OSETE
Principal Deputy Assistant Attorney General
Civil Rights Division

R. JONAS GEISSLER
Deputy Assistant Attorney General
Civil Rights Division

JONATHAN S. GROSS
Counsel to the Assistant Attorney General
Civil Rights Division

ORLANDO B. SONZA
Counsel to the Assistant Attorney General
Civil Rights Division
950 Pennsylvania Ave. NW
Washington, DC 20530
(202) 305-0996

21