# EXHIBIT A



**P.A.L. LAW COMMISSION**
**On War Crimes, Justice, Reparations, and Return**

Reply To:
support@palassembly.org
P.O. Box 199
New York, NY 10272

November 3, 2024

**LEGAL CORRESPONDENCE**

To:

Moshe and Renee Glick [Host]
47 Nicholas Ave
West Orange, NJ 07052

**DEMAND TO CEASE AND DESIST**
**AND**
**NOTICE OF ACTIONABLE LEGAL LIABILITY**

To All the Above-Listed Individuals and Entities:

Please accept this as **a formal demand to immediately cease** all unlawful and potentially unlawful activities described herein, including but not limited to any attempts, conspiracies, support, hosting, sponsorship and aid to the commission of same. Your failure to do so may result in legal liability as outlined below.

We write concerning an event scheduled to be hosted, organized, supported, and/or promoted by you and your organization or corporate entity wherein Israeli and Israeli affiliated groups, and other unknown groups are reportedly promoting, showcasing, offering information about, and possibly offering for sale illegally secured land in the West Bank and East Jerusalem. The sales, support, showcasing and promotion thereof, are not only discriminatory, as they specifically exclude non-Jewish persons generally and Palestinians specifically, but they likely amount to

1



**P.A.L. LAW COMMISSION**
**On War Crimes, Justice, Reparations, and Return**

gross violations of local laws and regulations, non-profit and tax laws (as may be applicable to your organization), real estate licensing laws, international laws and, most notably Federal Criminal laws.

This letter serves as a formal demand to immediately cease and desist from hosting, promoting, supporting, participating in, and conspiring to support such events, as it may likely be in violation of the following, non-exhaustive, list of laws and regulations:

1. Fair Housing Act, 42 U.S.C. § 3604(a)- direct violation and for aiding and abetting by hosting and showcasing said illegal sales;
2. 42 U.S.C. Section 1983 (Civil Action for Deprivation of Civil Rights);
3. Executive Order on Imposing Certain Sanctions on Persons Undermining Peace, Security, and Stability in The West Bank signed by President Joseph R. Biden Jr. on February 1, 2024;
4. Federal Non-Profit Laws and their State equivalents;
5. Unrelated Business Income Tax (UBIT) provisions IRS Sections 511-513;
6. New Jersey Law Against Discrimination (N.J.S.A. 10:5-1);
7. New Jersey Administrative Code § 11:5-6.4;
8. New Jersey Administrative Code § 11:5-6.6;
9. 18 U.S.C. § 956 (Conspiracies to Harm Persons Overseas);
10. 18 U.S. Code 1091 (Genocide);
11. New Jersey Code of Criminal Justice § 2C:2-6;
12. The International Covenant on Civil and Political Rights (ICCPR);
13. The International Convention on the Elimination of All Forms of Racial Discrimination;
14. The Rome Statute and International Criminal Court Prosecutor's Findings;
15. International Court of Justice Advisory Opinion of 2004, and Order on Provisional Measure of January 2023;
16. The Geneva Conventions;
17. The Convention Against Genocide;
18. UNSC and UNGA Resolutions.

As such, it is imperative that your organization immediately cease its direct and indirect involvement in such events, and its involvement with, and/or rental of space and support to organizations engaging in and promoting such events, to ensure your compliance with applicable laws.

Failure to comply with this demand could result in legal action being taken to protect the rights of those potentially harmed by these unlawful practices. This may include, but is not limited to, complaints with the U.S. Department of Housing and Urban Development (HUD), the IRS, the Department of Justice, local and federal authorities, and all other interested and relevant agencies and courts.



**P.A.L. LAW COMMISSION**
**On War Crimes, Justice, Reparations, and Return**

Your failure to do so may result in legal action not only in the U.S., but in all other appropriate jurisdictions interested in holding you and your associates accountable for your direct or indirect participation in these unlawful activities, including but not limited to Courts of foreign jurisdictions and International Courts.

Settlement building in the West Bank and/or Gaza Strip necessarily requires the largely violent dispossession of Palestinians.[1] Settlements, which are Jewish-only housing on Palestinian land, usually begin by the building of an outpost on, in or near, Palestinian homes by settlers who are armed themselves, and who are often accompanied by heavily armed Israeli soldiers who undertake well documented violence against Palestinians who object to these settler actions. This violence is often committed against Palestinian elders, farmers, women and children - who are ultimately deprived of their safety and access to freedom of movement, to their own lands, to their sources of food, survival, and economy, all as they are held as inferior subjects of a belligerent military occupation which expressly serves to protect and expand these settlements as it executes violent Apartheid against them.[2] These settlements have been the subject of considerable international condemnation - and legal action - including Biden's declaration of a national emergency identifying the forced displacement of Palestinians in the West Bank and settler violence reaching intolerable levels. These settler actions and the settlements themselves have been found to be grave breaches of the Geneva Conventions constituting war crimes and have been declared as such by the International Court of Justice - even absent the attendant violence. In President Biden's recent Executive Order, broad sanctions are applicable against any foreign person supporting (directly or indirectly) such settler activity - even where there is no direct destruction of property and even when there is no direct violent action- but merely threats that result in Palestinians relocating out of reasonable fear of violence.

We outline below the laws your actions may violate should you conspire to and/or host, promote, support, aid and abet these actions and those undertaking these actions.

### I. VIOLATION OF U.S. AND NEW JERSEY LAWS

**A. Fair Housing Act, Civil Rights Act, NJ Human Rights Law and Real Estate Licensing Law Violations:**

The sale of these properties, and the hosting and marketing of entities intending to undertake these sales, is discriminatory and in violation of the Fair Housing Act, particularly 42 U.S.C. §3604(a), which prohibits discrimination in the sale, rental, and financing of dwellings based on race, color, religion, sex, or national origin and makes it unlawful "to refuse to sell or rent

---

[1] General Assembly Human Rights Council Report of the Special Rapporteur on the situation of human rights in the Palestinian territories occupied since 1967. U.N. Doc. A/HRC/49/87 (12 Aug. 2022)

[2] United Nations Office of the High Commissioner for Human Rights (OHCHR) reports and press releases on the situation in the occupied Palestinian territory, available at https://www.ohchr.org/en/media-centre/statements-grave situation-occupied-palestinian-territory-and-israel

3



**P.A.L. LAW COMMISSION**
**On War Crimes, Justice, Reparations, and Return**

after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, religion, sex, familial status, or national origin."[3]

42 U.S.C. Section 1983 (Civil Action for Deprivation of Civil Rights), also known as the Ku Klux Klan Act, is a Reconstruction-era law providing for a private right of action for the deprivation of civil rights carried out under color of state law.[4] Because the conduct of Israeli settlers in the West Bank in destroying and/or stealing of Palestinian homes as well as perpetrating acts of violence against Palestinians are invariably carried out with the sanction and indeed support of Israeli police and defense forces, such acts are carried out under the color of state law and are therefore actionable under Section 1983 which was signed into law by President Ulysses S. Grant explicitly to deter and stop this type of conduct based upon the race of the victim.

The actions of the real estate groups, their affiliates, franchisees, Agents and Brokers, and their marketing and promotion agents appear to violate real estate licensing laws for their involvement in these events and likely constitute grounds for revocation or suspension under the New Jersey Law Against Discrimination (NJLAD) N.J.S.A. 10:5-1 et seq., the New Jersey Fair Housing Act: This Act, found in N.J.S.A. 52:27D-301 et seq., and the New Jersey Administrative Code 11:5-6.6.[5]

The New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq., prohibits discrimination in employment, housing, and places of public accommodation, among other areas. It covers a wide range of protected classes including race, creed, color, national origin, ancestry, age, marital status, familial status, sex, gender identity or expression, sexual orientation, and disability.

The New Jersey Fair Housing Act, N.J.S.A. 52:27D-301 et seq., is comparable to federal Fair Housing Laws and prohibits discrimination in the sale or rental of housing and in mortgage lending, based on race, creed, color, national origin, ancestry, marital status, familial status, sex, or disability.

New Jersey Administrative Code 11:5-6.6 further provides that "[n]o licensed individual, partnership, firm or corporation shall become a member of or otherwise participate in the activities or operation of any trade association or organization or of any multiple listing service operation which places requirements, obligations, or standards upon licensed members or participants which conflict with New Jersey Law Against Discrimination."

**B. Executive Order on Imposing Certain Sanctions on Persons Undermining Peace,**

---

[3] Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601-3619.
[4] 42 U.S.C. §1983.
[5] New Jersey Law Against Discrimination (NJLAD) N.J.S.A. 10:5-1 et seq.;
New Jersey Fair Housing Act: This Act, found in N.J.S.A. 52:27D-301 et seq.;
Real Estate Brokers and Salesmen Act: Encompassed in N.J.S.A. 45:15-1 et seq.; NJ Admin Code 11:5-6.6 (a)
NJSA 10:5-1 et seq.

4



**P.A.L. LAW COMMISSION**
On War Crimes, Justice, Reparations, and Return

**Security, and Stability in The West Bank signed by President Joseph R. Biden Jr. on February 1, 2024**

The Executive Order on Imposing Certain Sanctions on Persons Undermining Peace, Security, and Stability in The West Bank signed by President Joseph R. Biden Jr. on February 1, 2024, has grave implications for entities involved in the sale of stolen Palestinian land, including those that aid, abet, support and conspire to support the same, whether directly or indirectly. ["The Executive Order."][6]

The sale of stolen Palestinian land, under the Executive Order, can be interpreted as an action threatening the peace, security, or stability of Palestinians in the West Bank. Entities involved in such transactions, and the promotions of such transactions, risk being classified under the categories of persons whose property and interests may be blocked, including any foreign or dual citizen leader of your entity or foreign subsidiaries, and they may face U.S. sanctions without forewarning.

The Executive Order was issued to address the acknowledged high levels of extremist settler violence, forced displacement of Palestinians, theft, and property destruction and it specifically prohibits material support to individuals and entities who engage in such actions.

Section 1 of the Executive Order blocks property and interests within U.S. jurisdiction of foreign persons (including entities) who are responsible for, *complicit in, materially support,* or engage(d) in actions that threaten the stability of the West Bank, which includes acts or threats of violence, displacement of Palestinians (even without direct violence), and theft and destruction of property. (Executive Order, Sec. 1(a)(i)).

The sale of stolen Palestinian land contributes to the forced displacement of Palestinians, violence against Palestinians and the seizure of their property. This is prohibited under Section 1(a)(i)(B)(4) of the Order. (Executive Order, Sec. 1(a)(i)(B)(4)). Additionally, the Order prohibits efforts to place Palestinian civilians in reasonable fear of violence with the purpose or effect of necessitating a change of residence to avoid such violence. Even if the land your event describes would be considered to be dispossessed by action made legal by Israeli state law or is purchased through state or private actors, the risk of sanctions still applies (this Order also authorizes the sanctioning of leaders of any foreign government entity personally, for any of the prohibited actions, even if they themselves did not directly engage in the actions).

Section 1(a)(iii) of the Order extends liability to those who have materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of, any blocked person. Those who support, promote, host, or otherwise facilitate the sale of stolen land are providing support to actions prohibited under the Order. (Executive Order, Sec. 1(a)(iii)).

---

[6] E.O. 14115 of Feb 1, 2024.

5



**P.A.L. LAW COMMISSION**
**On War Crimes, Justice, Reparations, and Return**

Support and promotion of these events is engaging in actions that fall under those prohibited by the Executive Order and may subject you to sanctions and other penalties. The list of those sanctioned under the Order is open to update at any moment, without any forewarning, and as these events promote actions that are directly tied to the prohibited actions listed, there is a not insignificant risk that those organizing, hosting, and facilitating this event may be sanctioned directly or supporting those who may fall under the sanctions order.

### C. Non-Profit, UBIT, and Tax Law Violations

If your organization is a non-profit and tax-exempt organization, it is prohibited from engaging in or facilitating unlawful and discriminatory practices. The Internal Revenue Service (IRS) prohibits 501(c)(3) organizations from engaging in illegal activities or activities contrary to public policy. The illegality doctrine acts as a check to assure that the federal government does not support, through tax exemption, an organization engaged in behavior the government is charged with preventing.

Discriminatory practices, prospective breaches of the Executive Order, Civil Rights Laws, and International Law and its Federal Law equivalents, by way of promotion, support of and/or engaging in the subject activities is in both direct violation of these laws and regulations and could amount to conspiracy and/or material support to violate same.

If any part of this event involves transactions that are not aligned with the organization's exempt purpose, or involves transactions that result in undue private benefit, and generate income for the group or private benefit then you could be in violation of IRS Section 501(c)(3) - as well as the Unrelated Business Income Tax (UBIT) provision of IRS Sections 511-513.

This could result in significant legal and financial consequences, including the revocation of tax-exempt status, imposition of taxes, sanctions and other penalties.

### D. Violations of Federal Criminal Law

Title 18 of U.S. Code Section 1091 (Genocide) criminalizes acts committed with the intent to destroy, in whole or in part, a national, ethnic, racial, or religious group. The actions of Israeli authorities and settlers in the West Bank has been described by numerous legal authorities, courts, and UN agencies as contributing to acts that amount to ethnic cleansing and, by extension, genocide.[7] Those engaged in promoting or facilitating the sale of land in occupied areas for settlement building or expansion could be found to be aiding, abetting, or conspiring to commit and support these acts, and therefore may be found to be engaging in federally prohibited acts under this Section.

Title 18 U.S.C. § 956, (Conspiracies to Harm Persons Overseas), criminalizes conspiracies

---

[7] Republic of South Africa v. State of Israel, International Court of Justice, Dec 29, 2023; Order of January 26, 2024, Republic of South Africa v. State of Israel, International Court of Justice.

Case 2:25-cv-16049-KSH-JRA   Document 62-2   Filed 02/20/26   Page 8 of 13 PageID: 246



**P.A.L. LAW COMMISSION**
On War Crimes, Justice, Reparations, and Return

within the U.S. to commit certain offenses outside of U.S. jurisdiction, including but not limited to killing, kidnapping, or maiming persons. In the context of Israeli settlements in the West Bank, those who partake in a conspiracy that contributes to violence against Palestinians, including acts that could be characterized as war crimes under international law, such as harm to Palestinians and theft and destruction of Palestinian property in the course of, or for the purpose of building settlements, or for the purpose of committing or aiding and abetting ethnic cleansing, Apartheid, or genocide, may be liable under 18 U.S.C. § 956. Liability under this Code extends to the material support, planning, financing, and facilitation of such activities, and conspiracies to commit such acts and to provide support to activities that result in said harm.

### E. Aiding and Abetting by Renting to and/or Hosting Showcases and Promotions of The Unlawful Sales

The Fair Housing Act extends liability to those who aid or abet discrimination. Numerous Courts including the Supreme Court have found those who host, rent to, facilitate and aid and abet discrimination in housing and violation of Fair Housing and Civil Rights Laws are liable for violation of these laws.[8]

Under the New Jersey Law Against Discrimination (NJLAD), not only are direct acts of discrimination prohibited, but also assisting, aiding, abetting, inciting, compelling, or coercing another person to commit such acts is prohibited. N.J.S.A. 10:5-12(e), are clear, stating that, "it shall be an unlawful... [f]or any person, whether an employer, employee, or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so."

This principle applies across various contexts where NJLAD provides protection, including but not limited to employment, housing, and places of public accommodation.[9]

Moreover, in New Jersey, a person is criminally liable for an offense committed by another person pursuant to New Jersey Code of Criminal Justice § 2C:2-6 which prohibits aiding and abetting violation of Civil Rights and Fair Housing Laws (applicable to those hosting and renting our space to these unlawful events).

---

[8] 42 U.S.C. §§ 3601-3619; Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982): the Supreme Court held that the Fair Housing Act allows suits against those who, even without discriminatory intent, permit or enable discriminatory conduct. The case broadened the understanding of who can be held liable under the Act, not just direct discriminators but also those who facilitate discriminatory practices.
Trafficante v. Metropolitan Life Insurance Co., 409 U.S. 205 (1972): Supreme Court held that the Act is intended to provide for broad remedial action to prevent discrimination and could apply to parties beyond the immediate victims of discrimination, potentially implicating those who aid or abet such practices.
United States v. Starrett City Associates, 840 F.2d 1096 (2d Cir. 1988): Second Circuit Court of Appeals addressed issues related to discriminatory housing practices. The decision reinforced the principle that parties involved in enabling or perpetuating discrimination, even if not the principal actors, can be held liable.
[9] N.J.S.A. 10:5-12(e).

7



**P.A.L. LAW COMMISSION**
**On War Crimes, Justice, Reparations, and Return**

## II. INTERNATIONAL LAW VIOLATIONS

A civil organization hosting an event where Israeli groups are selling land in the West Bank and the Gaza Strip, which are considered occupied Palestinian territories under international and U.S. law, are in violation of numerous international laws and norms, some of which are outlined below:

### A. Ethnic Cleansing, Genocide, The Geneva Conventions

The establishment of Israeli settlements in the West Bank, including East Jerusalem, is declared as having "no legal validity and constitutes a flagrant violation under international law" by the United Nations Security Council (UNSC). This includes UN Security Council Resolution 2334 which reaffirms the illegal status of Israeli settlements in the occupied Palestinian territory[10], UNSC censure of Israeli annexation of East Jerusalem, and the UNSC resolution on Israeli settlements and their legal status.[11]

The Fourth Geneva Convention Relative to the Protection of Civilian Persons in Time of War prohibits the transfer of the occupier's civilian population into the territory it occupies (Geneva Convention Relative to the Protection of Civilian Persons in Time of War, 12 August 1949, 75 UNTS 287). A breach of this provision is a grave breach and amounts to a war crime pursuant to general principles of International Law and as per the International Court of Justice [ICJ] in its 2004 Advisory Opinion on the matter.[12]

Israeli settlements necessitate, as a precondition, the violent, armed and forcible displacement of Palestinians in the West Bank[13] and are considered to be an act in furtherance of a plausible genocide in Gaza (South-Africa-v-Israel, p. 1). The expected finding of genocide by the ICJ may well extend to the finding that Israeli settlements and occupation are, and have long been, a tool of Palestinian genocide, incremental genocide in the West Bank and escalated genocide in Gaza.

### B. CERD and UNDHR

Violation of the International Convention on the Elimination of All Forms of Racial

---

[10] United Nations Security Council Resolution 2334 (2016) on the situation in the Middle East, including the Palestinian question. U.N. Doc. S/RES/2334 (2016).

[11] United Nations Security Council censure of Israeli annexation of East Jerusalem (1980). U.N. Doc. S/RES/478 (1980); United Nations Security Council resolution on Israeli settlements and their legal status. U.N. Doc. S/RES/446 (22 March 1979).

[12] Legal Consequences of the Construction of a Wall in the Occupied Palestinian Territory, Advisory Opinion, I.C.J. Reports 2004.

[13] United Nations Economic and Social Commission for Western Asia (ESCWA) report on countering economic dependence and de-development in the occupied Palestinian territory (October 2022). U.N. ESCWA, Countering Economic Dependence and De-Development in the Occupied Palestinian Territory (Oct. 2022); Human Rights Council report on Israeli settlements in the Occupied Palestinian Territory including East Jerusalem and in the occupied Syrian Golan (12 March 2023). U.N. Doc. A/HRC/52/76 (2023).

8



**P.A.L. LAW COMMISSION**
**On War Crimes, Justice, Reparations, and Return**

Discrimination (CERD) in the Context of Israeli Settlements in Palestinian Territories.

CERD is an international treaty that obligates its parties to eliminate racial discrimination and promote understanding among all races. The Committee on the Elimination of Racial Discrimination (CERD Committee) monitors compliance with the treaty. The United States is a party to CERD and ratified the convention on October 21, 1994. As a state party to CERD, the United States has committed to undertaking its legal obligations to eliminate racial discrimination and promote understanding among all races.

The actions of Israel in the occupied Palestinian territories, including the construction of settlements, have been viewed as a denial of the right of the Palestinian people to self-determination in violation of CERD principles. The CERD Committee has expressed specific concerns about Israeli policies and practices that may constitute racial segregation and apartheid, practices that are incompatible with the obligations under the Convention.[14]

Israeli practices in the West Bank, including land confiscation, home demolitions, and denial of building permits to Palestinians, are highly discriminatory and favor Israeli settlers and support and perpetuate an Apartheid system that discriminates against Palestinians. This discrimination is in direct violation of CERD. This also violates the Universal Declaration of Human Rights, specifically Articles 7 and 17, which respectively address equality before the law and the right to own property.[15] Accordingly, these sales and promotion/showcasing thereof amount to, and aid and abet, War Crimes and Crimes Against Humanity.

### C. The ICCPR

The International Covenant on Civil & Political Rights (ICCPR), which is one of the foundational Covenants of international law, and which the US has signed and ratified, provides for a number of rights which must be guaranteed by states without discrimination based, *inter alia*, on an individual's race, national origin, or religion. Such rights include the right to life; the right to be free from torture or cruel, inhuman or degrading treatment; the right to liberty and security of person; the right to liberty of movement and freedom to choose his/her residence; the right to due process; the right to freedom of religion and religious practice; and the right to public assembly. In addition, the ICCPR provides that "all persons are entitled without any discrimination to the equal protection of the law," and forbids "any advocacy of national, racial or religious hatred that constitutes incitement to discrimination, hostility or violence." All of these rights held by Palestinians are being violated by Israeli settlers on a daily basis with the full sanction of the Israeli state.

---

[14] CERD/C/ISR/CO/17-19, para. 23.
[15] Committee on the Elimination of Racial Discrimination (CERD), Concluding Observations on the Combined Seventeenth to Nineteenth Reports of Israel, CERD/C/ISR/CO/17-19 (27 January 2020), para. 23; CERD, Declaration on the Prevention of Genocide, CRD/C/66/1 (17 October 2005).

9



**P.A.L. LAW COMMISSION**
**On War Crimes, Justice, Reparations, and Return**

### D. The Rome Statute (International Criminal Court)

The Prosecutor of the International Criminal Court [ICC] has determined that there is "a reasonable basis to believe" that members of the Israeli authorities have committed war crimes in relation to the transfer of Israeli civilians into the West Bank, in contravention of the Rome Statute of the International Criminal Court.[16]

The ICC is investigating allegations of war crimes[17] related to Israeli settlements, which also includes acts of genocide, settlements and ethnic cleansing as tool of genocide.

### E. Material Support, Incitement, Conspiracy to Breach International Law

Promoting, aiding, abetting, facilitating, assisting a conspiracy to commit the sale of land in the Occupied Palestinian lands, particularly for settlement expansion, can be seen as providing material support to the breaches of international law listed above and to their US, Federal, equivalents, and to breaches of the subject Executive Order. By facilitating the sale of stolen Palestinian land, entities may be providing material support to acts that contribute to ethnic cleansing and potentially genocide.

Furthermore, the United Nations Guiding Principles on Business and Human Rights articulate companies' responsibility under international law to "avoid causing or contributing to adverse human rights impacts through their own activities," as well as to "seek to prevent or mitigate adverse human rights impacts that are directly linked to their operations, products, or services by their business relationships, even if they have not contributed to those impacts."[18] Synagogues and real estate companies facilitating illegal sales must comply with this directive.

### III. CONCLUSION

Entities and individuals hosting and showcasing events that facilitate the sale of land in the occupied Palestinian territories may be involved in actions that violate Federal Housing and Civil Rights Laws, Executive Order of Feb 1, 2024, IRS laws, Federal Criminal Laws, International laws - and contribute to ethnic cleansing and potentially genocide.

Failure to comply with legal obligations - by ceasing and desisting from hosting, showcasing, and promoting such events - could result in significant legal and financial consequences, including the

---

[16] International Criminal Court, Situation in Palestine - Summary of Preliminary Examination Findings (20 December 2019). ICC, Situation in Palestine - Summary of Preliminary Examination Findings (20 Dec. 2019), available at https://www.icc-cpi.int/palestine.

[17] Prosecutor of the International Criminal Court determination on Israeli authorities' war crimes in relation to the transfer of Israeli civilians into the West Bank. ICC, Situation in Palestine - Summary of Preliminary Examination Findings, para. 138 (20 Dec. 2019), available at https://www.icc-cpi.int/sites/default/files/itemsDocuments/210303-office-of-the-prosecutor-palestine-summary-findings-eng.pdf.

[18] United Nations Human Rights Office of the High Commissioner, Guiding Principles on Business and Human Rights (2011), https://www.ohchr.org/sites/default/files/documents/publications/guidingprinciplesbusinesshr_en.pdf.



**P.A.L. LAW COMMISSION**
**On War Crimes, Justice, Reparations, and Return**

revocation of tax-exempt status, imposition of taxes, penalties, and civil and criminal action inside and outside the United States.

**You are therefore hereby advised to immediately terminate any and all hosting, participation, support, facilitation, and conspiracy to support such events to reduce legal liability.**

Signed

**Lawyers, Attorneys and Legal Organizations:**

Lamis J. Deek, Attorney/Director of the P.A.L. Law Commission[19] and signing for
The Global Legal Alliance for Palestine, Geneva/ N.Y.
Dan Kovalik, Executive Committee of the US Peace Council
Jacqueline Horani, Attorney, New York
Chris Godshall-Bennet, Staff Attorney Arab American Anti-Discrimination Committee
Nadeem Mahomed, Attorney, South Africa Young Muslim Lawyers Association, RSA
Fabio Marcelli, Attorney, CRED Centro di Ricerca ed Elaborazione per la Democrazia, International Legal Intervention Group, Italy
Hüseyin Dişli, Attorney, Worldwide Lawyers Association (WOLAS) Turkey
Pablo Araya Zacarias, Attorney, Abogados por Palestina, Chile
Khaled Alshouli, Attorney, One Justice for Human Rights, France
Najet Hadriche, Attorney, Tunisia
Soraya Jacob, Attorney, Lawyers for Palestine, Chile
American Muslim Bar Association, United States
Farah AlHadad, Attorney, New York
Nora El-Chaer, Attorney
Sarina Larson, Law Student
Suad Abdel Aziz, Attorney
Tara Houska, Attorney and Human Rights Defender, Minnesota
Leena Widd, Attorney, NY
Kamau Franklin, Attorney, Community Movement Builders, New York
Helen Avery Campbell, Attorney, Pennsylvania
Lydia X. Z. Brown, Attorney, Maryland
Daljit K. Soni, Esq. (inactive status), Maryland
Azadeh Shahshahani, Legal & Advocacy Director, Project South, Atlanta Georgia
Amar Shergill, Shergill Law Firm, California
Sabrina Mirza, Attorney, Justice for All

---

[19] P.A.L. Law Commission: On War Crimes, Justice, Reparations and Return

11



**P.A.L. LAW COMMISSION**
**On War Crimes, Justice, Reparations, and Return**

**Human Rights Experts and Organizations:**
Palestinian Assembly for Liberation; PAL-Awda-NY/NJ and Ohio
Arab American Anti-Discrimination Committee
US Peace Council
American Muslims for Palestine
AJP
Haithem Manna Scandinavian Institute for Human Rights/ HMF Geneva, L'Observatoire Français pour les Droits de l'homme- Paris, Horan Rencontre pour la citoyenneté- Paris
Anouar Gharbi Geneva Switzerland
Justice for All