UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
---------------------------------------------------------x
UNITED STATES OF AMERICA,

Plaintiff,

v.

TOVA FRY, ET AL.,
Defendants.
---------------------------------------------------------x

CIVIL ACTION NO. 2:25-CV-16049

Motion Day: March 16

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

## Table of Contents

**POINT I**..................................................................................................................................................5

    **PLAINTIFF'S USE OF THE FACE ACT IS UNCONSTITUTIONAL AS APPLIED** .....................................5

        The Context and the DOJ's Intentions .................................................................................................5

        The Complaint Violates the Establishment Clause .............................................................................9

        The Complaint Seeks to Abridge Defendants' Freedom of Speech ................................................11

        The Complaint's Use of the FACE Act Would Infringe
Defendants' Right of Assembly .............................................................................................................14

**POINT II**...............................................................................................................................................14

    **THIS COURT SHOULD ABSTAIN UNDER *YOUNGER v. HARRIS*** ...............................................14

**POINT III** ............................................................................................................................................16

    **THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION** ........................................................16

**CONCLUSION**.....................................................................................................................................17

## TABLE OF AUTHORITIES

**Cases**

*Allee v. Medrano*, 416 U.S. 802 (1974) .............................................................. 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................ 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................. 5

*Canel v. Art Inst. of Chi.,* 2025 U.S. Dist. LEXIS 30309 (N.D. Ill. Feb. 20, 2025) ............ 13

*Commack Self-Serv. Kosher Meats, Inc. v. Weiss,* 294 F.3d 415 (2d Cir. 2002)

.................................................. 10

*Engdahl v. City of Kenosha*, 317 F. Supp. 1133 (E.D. Wis. 1970) ...................................... 8

*Everson v. Bd. of Educ.,* 330 U.S. 1 (1947) ................................................................ 10

*Gerwaski v. Nevada ex rel. Bd. of Regents of the Nev. Sys. of Higher Educ*.,

2025 U.S. Dist. LEXIS 84645 (D. Nev. May 5, 2025) ............ 13

*Gilles v. Davis*, 427 F.3d 197 (3d Cir. 2005) ................................................. 17

*Landau v. Corp. of Haverford Coll*., 2025 U.S. Dist. LEXIS 1402 (E.D. Pa. Jan. 6, 2025) ............ 13

*McDaniel v. Paty*, 435 U.S. 618 (1978) ................................................................ 11

*Motion Picture Ass'n of Am. v. Specter*, 315 F. Supp. 824 (E.D. Pa. 1970) ...................................... 7

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) .............................................................. 8

*People Acting Through Cmty. Effort v. Doorley*, 468 F.2d 1143

(1st Cir. 1972) ............................................. 14

*Porter v. Gore*, 354 F. Supp. 3d 1162 (S.D. Cal. 2018) ............................... 19

*StandWithUs Ctr. for Legal Just. v. Mass. Inst. of Tech*.,

158 F.4th 1 (1st Cir. 2025) ................................................. 8, 12

*Stivers v. Minnesota*, 575 F.2d 200 (8th Cir. 1978) ............................................. 16

*Students for Just. in Palestine v. Abbott*, 2024 U.S. Dist. LEXIS 196180

(W.D. Tex. Oct. 28, 2024) .................................................. 7

*Swope v. Lubbers*, 560 F. Supp. 1328 (W.D. Mich. 1983) ............................... 7

*Tappe v. Alliance Cap. Mgmt. L.P.,* 177 F. Supp. 2d 176 (S.D.N.Y. 2001) ............................... 8

*United States v. Ngon*, 2026 U.S. Dist. LEXIS 25259

(D. Or. Feb. 5, 2026) ......................................................... 5

*Younger v. Harris*, 401 U.S. 37 (1971) ................................................ 15

**Statutes**

18 U.S.C. § 248(a)(2) .......................................................... 4

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
--------------------------------------------------------x
UNITED STATES OF AMERICA,

Plaintiff,

v.

TOVA FRY, ET AL.,
Defendants.
--------------------------------------------------------x

CIVIL ACTION NO. 2:25-CV-16049

Motion Day: March 16

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Defendant Eric Camins, by his attorneys Jonathan Wallace and Fatima Maryam, submits this Memorandum of Law in support of his motion to dismiss the Complaint pursuant to FRCP Rule 12(b)(6).

This case involves a demonstration against a real estate event held in a synagogue, at which two counter-protesters, Moshe Glick and David Silberberg, pepper-sprayed Altaf Sharif, one of the Defendants, and then bashed him in the head with a flashlight. These two were charged with assault by the Essex County prosecutor. No charges were lodged against any of the Defendants. Now DOJ brings this civil action, and is threatening criminal charges against Defendants, which would interfere with the state prosecution of Mr. Silberberg, by advancing a false self-defense counter-narrative.

The Complaint is divided into two parts, a preamble to the events and a narrative (brimming with falsehoods) of the demonstration and violence (which is in fact entirely attributable to Mr. Silberberg's unprovoked pepper spraying of the Defendants). This 12(b)(6) motion concentrates on the first part, paragraphs 1 through approximately 30 of the Complaint. These paragraphs attempt to satisfy the first two elements of a FACE Act claim[1], that Defendants (i) intentionally (ii) by force or threat of

---

[1]  18 USC 248(a)(2) targets anyone who "by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person lawfully exercising or seeking

force, injured or interfered with (or attempted to do so) (iii) the exercise of the First Amendment right of religious freedom at a place of religious worship[2].

The Complaint fails the *Twombly/ Iqbal*[3] standards of pleading because it chooses to assert FACE Act violations based on First Amendment protected political expression in the weeks prior to November 13. Since these statements cannot by law constitute a threat of force, the Complaint fails to assert all of the FACE Act elements.

### Point One

### PLAINTIFF'S USE OF THE FACE ACT IS UNCONSTITUTIONAL AS APPLIED

The Complaint as drafted asks this Court to infringe the Defendants' First Amendment rights in three ways. First, it seeks to privilege one group of Jewish people over other religions, and in fact over other Jewish people, like defendant Camins, who do not share their beliefs—a violation of the Establishment clause. Secondly, the Complaint baselessly attempts to penalize First Amendment-protected speech as "true threats". Third, the clear intent of the Complaint is to chill the Defendants' right to assemble and petition the government for redress of grievances.

a. *The Context and the DOJ's Intentions*

Mr. Camins asserts that this Court can, and should, evaluate the Complaint in light of statements made by, and other actions of, Plaintiff, as the District Court did recently in *United States v ngon,* 2026 US Dist LEXIS 25259, at *34 (D Or Feb. 5, 2026, No. 6:25-cv-01666-MTK), involving a voting-related civil action by the Justice Department: "The presumption of regularity that has been previously extended to [the federal government] that it could be taken at its word—with little doubt

---

2. Other Defendants in their motions to dismiss thoroughly argue that a commercial real estate land sale is factually and objectively not a religious practice, for example Tovah Fry. Mr. Camins joins in that argument, but will not repeat it here. This motion simply argues that the Establishment Clause bars the use of the FACE Act entirely in cases which would require the Court to determine whether something is a religious practice.

3. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

to exercise the First Amendment right of religious freedom at a place of religious worship".

about its intentions and stated purposes—no longer holds. When [the government], in this case, conveys assurances...it must be thoroughly scrutinized and squared with its open and public statements to the contrary".

The Department of Justice, like the present administration itself, has made very little attempt to conceal the fact that it seeks to privilege a subset of Jewish religious belief over other faiths, and in fact over a substantial number of other Jewish people who do not share these beliefs.  Similarly, the DOJ has been absolutely clear about its intention to chill, penalize, and prosecute pro-Palestinian expression and criticism of the political nation state, Israel.

This administration's official stance is that virtually all criticism of Israel constitutes antisemitism.  The President issued an executive order on December 11, 2019, "On Combating Anti-Semitism",  https://trumpwhitehouse.archives.gov/presidential-actions/executive-order-combating-anti-semitism/ which requires "all agencies" of the Executive Branch involved in enforcing "all executive departments and agencies (agencies) charged with enforcing Title VI shall consider [the] working definition of anti Semitism adopted on May 26, 2016, by the International Holocaust Remembrance Alliance (IHRA)". These standards, which were only intended as a private speech code, and never as rules to be enforced by government, give as examples of antisemitism "Denying the Jewish people their right to self-determination, e.g., by claiming that the existence of a State of Israel is a racist endeavor"; "Applying double standards by requiring of [Israel] a behavior not expected or demanded of any other democratic nation";  "Drawing comparisons of contemporary Israeli policy to that of the Nazis", "Working definition of antisemitism", *International Holocaust Remembrance Alliance,* https://holocaustremembrance.com/resources/working-definition-antisemitism Each of the negated statements— "Israel is a racist state", "I would have hoped that Israel would live up to a higher moral

6

standard than other nations",[4] and "Benjamin Netanyahu is behaving like a Nazi"—are clearly, facially, First Amendment-protected statements of political opinion.

Kenneth Stern, one of the drafters of the IHRA Standards, has since said: "It's not the definition that's the problem. It's the abuse of it....[I]t sets up a system in which administrators have a reason to either condemn or try to suppress pro-Palestinian speech....A lot of this comes to whether anti-Zionism is anti-Semitism or not.... I don't like government putting its thumb on the scales inside of a debate inside the Jewish community....Do I think it's going to chill speech? Yeah, and I think that's the purpose. " Eric Cortelessa, "The scholar who wrote the definition of anti-Semitism says it's been subverted", January 9, 2020 https://www.timesofisrael.com/the-scholar-who-wrote-the-definition-of-anti-semitism-says-its-been-subverted/ At least one federal court has indicated, on a preliminary injunction ruling, that the IHRA standards are likely unconstitutional, *Students for Just. in Palestine v. Abbott,* No. 1:24-CV-523-RP, 2024 U.S. Dist. LEXIS 196180, at *22-23 (W.D. Tex. Oct. 28, 2024)( "Plaintiffs argue that IHRA's labeling of these examples as antisemitic arguably proscribes their similar criticisms of Israel.... The Court finds the connections between these definitions sufficient at this stage to show Plaintiffs' planned conduct is arguably proscribed".)

Mr. Camins argues that, to the extent ever given the authority of law, the IHRA standards, created as a private speech code, would be facially unconstitutional for the same reasons the MPAA movie ratings were found to be, when various states passed legislation purporting to implement them, *MPAA v. Spector*, 315 F.Supp. 824 (ED Pa. 1970) ("[H]owever well-intended, [the law] is... patently vague and lacking in any ascertainable standards and so infringes upon the plaintiffs' rights to freedom of expression"); *Swope v. Lubbers*, 560 F.Supp. 1328 (W.D. Mich. 1983) ("[I]t is well-established that

---

[4] As a Jewish child growing up in Brooklyn the 1960's, undersigned counsel Jonathan Wallace was raised to believe that Israel not only was held to, but voluntarily assumed, higher standards than other nations. This seems an example of giving one set of partisans an exclusive right on the use of a vocabulary word or phrase; a similar instance is that people who proudly call themselves Zionists assert that anyone else referring to them using that word is an antisemite.

the Motion Picture ratings may not be used as a standard for a determination of constitutional status");

*Engdahl v. Kenosha*, 317 F.Supp. 1133 (E.D. Wis. 1970) ("[I]f the Motion Picture Association utilized any standards whatsoever in reaching its judgments as to what is an 'adult' movie, the defendants are not aware of what these standards are").[5]

This Court may take judicial notice of statements made by senior officials of Plaintiff which support the proposition that all anti-Zionism is antisemitism. In a live-streamed hearing of the House Judiciary Committee on February 11, 2026, attorney general Pam Bondi lashed out at Jewish Congressperson Becca Balint (D Vt.) stating that "With this antisemitic culture right now, she voted against a resolution condemning 'From the river to the sea.'"

https://www.facebook.com/CSPAN/videos/rep-becca-balint-d-vt-and-attorney-general-pam-bondi-engaged-in-a-heated-exchang/1676592403474298/  House Resolution 883, voted on in April 2024, begins: "Whereas the slogan 'from the river to the sea, Palestine will be free' is an antisemitic call to arms with the goal of the eradication of the State of Israel, which is located between the Jordan River and the Mediterranean Sea". https://www.congress.gov/bill/118th-congress/house-resolution/883/text Balint, whose own grandfather was killed in the Holocaust, stated: "This resolution is yet another way to sow division and demonize Palestinians. I'm voting no."

https://balint.house.gov/news/documentsingle.aspx?DocumentID=222 The First Circuit recently held that a plaintiff construing "'from the river to the sea, Palestine will be free'... as a call to wipe out the Jewish people...dictates the interpretation of the protestors' speech in order to suppress it, without any facts suggesting that the protestors were using these slogans in the way plaintiffs claim", *StandWithUs Ctr. for Legal Just. v Massachusetts Inst. of Tech.,* 158 F.4th 1, 19 (1st Cir 2025).

---

[5]    This Court may therefore not apply the IHRA standards in making a FACE Act, Title VI or other ruling, even on behalf of a private plaintiff, because in that case the Court itself is the government actor, *New York Times Co. v. Sullivan,* 376 U.S. 254, 265 (1964);  *Tappe v. Alliance Capital Mgmt. L.P.,* 177 F. Supp. 2D 176, 182  (SDNY 2001) ("Thus, the Court, in interpreting the statute, becomes the 'government actor'").

Assistant Attorney General Harmeet Dhillon, chief of the Civil Rights division,  also clearly stands for the proposition that all anti-Zionist speech is antisemitic; the firm she founded, and from which she was recruited, Dhillon Law Group, asserts in Title VI  litigation, for example *White v. New School,* 1:25-cv-02910 (SDNY 2025), paragraphs 166 and 186,  that "anti-Zionism [is] a widely-recognized form of antisemitism."

DOJ is merely echoing a more widely held policy of the Trump administration. In 2019, then Secretary of State Mike Pompeo tweeted: "Anti-Zionism is anti-Semitism. The Trump Administration opposes it unequivocally and we will fight it relentlessly." "Secretary Pompeo Delivers Remarks at the AIPAC Policy Conference", *U.S. Department of State* March 26, 2019 https://2017-2021.state.gov/secretary-pompeo-delivers-remarks-at-the-aipac-policy-conference/ In December of that year, Jared Kushner, writing as "a senior adviser to the President", published an op-ed in the *New York Times* in which he stated: "Anti-Zionism is anti-Semitism... It has become fashionable among Jew haters to characterize any discriminatory behavior — no matter how loathsome — not as criticism of Jews, but of Israel. This is a lie". Jared Kushner, "President Trump Is Defending Jewish Students", *The New York Times,* December 11, 2019, https://www.nytimes.com/2019/12/11/opinion/jared-kushner-trump-anti-semitism.html  House Resolution 895, passed in December 2023, states that "anti-Zionism is antisemitism". *Congress.gov,* https://www.congress.gov/bill/118th-congress/house-resolution/894/text

Because the Complaint fails to state a cause of action under the FACE Act, it must be dismissed under 12(b)(6).

b.. *The Complaint violates the Establishment Clause*

 The First Amendment states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof".  The Complaint asserts at paragraph 17: "Glick

organized a religious event centered on the Jewish obligation to live in the Land of Israel, a tenet of Jewish faith." It refers again at paragraph 28, to "educational activities about the religious obligation to live in Israel". The Establishment Clause restricts the DOJ from asserting and relying on, in a civil complaint, an alleged "tenet" of Jewish faith, as a fact which can be denied in an answer, then tried by the Court. And the impact of such a statement is in fact to support a Jewish claim to the Holy Land over those previously asserted by two other world religions (as well as to overrule Jewish people, like Mr. Camins, who does not hold that a right to the land of Israel, or a correspondent duty to live there, is a "tenet" of his Jewish faith[6]).

The use attempted to be made of the FACE Act in this case, via a complaint which states that the commercial land sales being challenged are a religious practice, privileges a subset of Jewish people over Muslims, Christians, and non Zionist Jewish people—a prima facie violation of the Establishment Clause. "Neither a state nor the Federal Government can.... prefer one religion over another", *Everson v Bd. of Educ.*, 330 US 1, 15 (1947). Note that the literal effect of placing the statement that Israelis have a religious right to their land beyond contradiction, is to cancel—to silence other religions which have also asserted such a claim (Islam and Christianity[7]), as well as Jews who deny such a claim[8]. The Establishment clause prohibits such a stance, *Commack Self-Service Kosher*

---

[6] The arrogance of the DOJ and of the Trump administration in purporting to speak for all Jewish people beggars belief.

[7] Jewish people, of course, assert that God granted them the Holy Land as part of His covenant with them. Pope Urban II, describing the Christian claim, said at the Council of Clermont in 1095: "Jerusalem is the navel of the world...This the Redeemer of the human race has made illustrious by His advent, has beautified by residence, has consecrated by suffering, has redeemed by death, has glorified by burial. This royal city, therefore, situated at the centre of the world, is now held captive by His enemies, and is in subjection to those who do not know God, to the worship of the heathens." Wendell Hunnicutt, "Speech of Urban II at the Council of Clermont, November 26, 1095", University of Texas at Arlington https://websites.uta.edu/hunnicut/reading-list/readings-western-civilization/speech-of-urban-ii-at-the-council-of-clermont-november-26-1095/ Islam concentrates on the importance of Jerusalem and of Al Aqsa mosque, which it considers "one of the earliest and the most noteworthy places of worship of God....Muslims have a mutual claim to the Holy Land with the Christians and Jewish people that is not exclusionary", "Why Is Al-Aqsa Mosque So Important for Muslims?", *Aboutislam.net,* May 7, 2021 https://aboutislam.net/counseling/ask-about-islam/al-aqsa-mosque-important/

[8] Peter Beinart, "Debunking The Myth That Anti-Zionism Is Anti-Semitic", *The Forward* February 27, 2019 https://forward.com/opinion/419988/debunking-the-myth-that-anti-zionism-is-anti-semitic/

10

*Meats, Inc. v. Weiss,* 294 F.3d 415, 418 (2d Cir. 2002) (state law enforcing Orthodox Jewish standards for foods sold as "kosher" violated First Amendment by privileging one Jewish group over others).

The fact that the Court ought not to evaluate the degree to which a duty to live in Israel is a tenet of the Jewish faith, means that FACE Act claims based on an ambiguous, not clearly established religious practice must fail.  The contrary result would be against public policy. Any litigant could assert a religious element to any activity—banking, farming, baking, fishing—and, if the Court could not inquire into its validity, shift the burden to the government to show an important or compelling government interest in regulation. This compels, as a matter of judicial economy, and basic fairness to the Defendants in this case, that the FACE Act not be permitted to be used in this way.

This Court could easily hold that the Defendants have failed to plausibly plead a primary (not incidental) religious motive for the land sale event, other than their own conclusory statements.  This would be consistent with the Supreme Court's most recent statement of the Establishment Clause standard, that the Establishment Clause must be interpreted by "reference to historical practices and understandings". The Framers certainly did not envision protection either under the First Amendment for land sales.

This is also consistent with the precept that the Establishment Clause is a shield, not a sword, *McDaniel v Paty,* 435 US 618, 641 (1978) (Brennan J., concurring).  Mr. Silberberg is free to assert the First Amendment as a defense in his criminal case. He, Mr. Glick, or the DOJ standing in for them, should not be permitted to ask the Court to take on faith that that a land sale is a religious practice, as a mode of attack in a FACE Act case.

*b. The Complaint Seeks to Abridge the Defendants' Freedom of Speech*

The First Amendment further states: "Congress shall make no law... abridging the freedom of speech".  The Complaint asserts as evidence of intent to interfere, under the FACE Act, certain First

11

Amendment-protected statements made prior to November 13, 2025 by Defendants and others which fit into no known exception to the First Amendment. The DOJ in fact seems to think that merely referring to a word or phrase as "antisemitic" removes it from the coverage of the First Amendment.

For example, the flyers appended to paragraph 25 of the Complaint are, despite Plaintiff's protestations, not antisemitic by any reasonable interpretation[9] , but are all First Amendment-protected political speech, containing statements like "Zionists are selling stolen Palestinian land in Jerusalem". The First Circuit, examining protest speech essentially similar to those on the flyers appended to paragraph 25[10], held: "[M]ost of the conduct about which plaintiffs complain is speech protected by the First Amendment, and we do not construe Title VI as requiring a university to quash protected speech. Furthermore, by gathering together in groups on campus, disrupting campus tranquility, and impeding travel for many students, the protestors did not render their speech antisemitic, much less unprotected." *StandWithUs Ctr. for Legal Just. v Massachusetts Inst. of Tech.,* 158 F.4th 1, 12 (1st Cir 2025)

An uncritical and inappropriate acceptance nationwide in recent times that virtually any criticism of Israel is antisemitic[11] has interfered with the academic freedom and First Amendment rights of numerous students, faculty, doctors, nurses, professionals, protesters, and American citizens of all other professions and backgrounds, who share a horror and indignation at what they see happening daily in Gaza, and a desire to speak out against it. Arguing that anti-Zionism is automatically antisemitism also produces an additional bizarre result, a finding that anti-Zionist Jewish people like

---

[9]   The ones discussed in this paragraph are facially not antisemitic. The Complaint makes a few assertions which admittedly raise issues of fact. For example, Mr. Camins, a Jewish person, never uttered, "The Jew is here" (paragraphs 14, 51).

[10]   An emailed "Joint Statement" of student groups "h[e]ld the Israeli regime responsible for all unfolding violence"; "unequivocally denounce[d] the Israeli occupation, its racist apartheid system, and its military rule"; and "affirm[ed] the right of all occupied people to resist oppression and colonization"; protesters "chanted 'From the river to the sea'", etc. *StandWithUs Ctr. for Legal Just. v Massachusetts Inst. of Tech.,* 158 F.4th 1, 5-6 (1st Cir 2025).

[11]    However, even biased speech is, of course, First Amendment protected expression, *cf. Snyder v Phelps*, 562 US 443, 457 (2011)  (First Amendment permitted Westboro Baptist Church to picket peacefully near military funeral with highly biased and offensive signs).

Mr. Camins and defendant Tovah Fry (and Congressperson Becca Balint) are themselves biased against members of their own faith.

Federal courts have rejected the proposition that anti-Zionism is antisemitism,[12] *StandWithUs Ctr. for Legal Just. v Massachusetts Inst. of Tech.,* 2025 U.S. App. LEXIS 27390, at *18 (1st Cir Oct. 21, 2025, No. 24-1800);  *Landau v. Corp. of Haverford Coll.,* No. 24-2044, 2025 U.S. Dist. LEXIS 1402, at *4-5 (E.D. Pa. Jan. 6, 2025) ("Plaintiffs seek[…] to blur the line between Zionism as a political philosophy and Zionism as a component of Jewish identity, and in the process implicitly sweep any and all criticism of Israel into the basket of antisemitism");  *Canel v Art Inst. of Chicago,* 2025 US Dist LEXIS 30309, at *24-25 (ND Ill Feb. 20, 2025, No. 23 CV 17064);  *Gerwaski v Nevada ex rel. Bd. of Regents of the NV Sys. of Higher Educ.,* 2025 US Dist LEXIS 84645, at *21-22 (D Nev May 5, 2025, No. 2:24-cv-00985-APG-MDC);  *Newman v. Point Park Univ.,* No. 2:20-cv-00204, 2022 U.S. Dist. LEXIS 60722, at *78-79 (W.D. Pa. Mar. 31, 2022).

In *Gerwaski v Nevada ex rel. Bd. of Regents of the NV Sys. of Higher Educ.,* 2025 US Dist LEXIS 84645, at *21-22 [D Nev May 5, 2025, No. 2:24-cv-00985-APG-MDC]), the District Court rejected the Plaintiffs' assertion that Defendants' pro-Palestinian speech implied a "true threat"[13]: "As pleaded, AMP and SJP-UNLV's conduct alleged in the FAC is protected by the First Amendment. All the conduct alleged appears to take place in public areas and involves speech on the conflict between Israel and Palestine and UNLV's response to that conflict.... None of the speech described could be interpreted as likely to incite imminent lawless action or as a serious expression of intent to harm any

---

[12]    The assertion that anti-Zionism is antisemitism is also ontologically very problematic. As mentioned, not all Jewish people are Zionists or are offended by opposition to Zionism; see Peter Beinart, "Debunking The Myth That Anti-Zionism Is Anti-Semitic", *The Forward* February 27, 2019 https://forward.com/opinion/419988/debunking-the-myth-that-anti-zionism-is-anti-semitic/; Shaul Magid, "'Anti-Zionism = Antisemitism' isn't Just Wrong, It's the Problem", *Religion Dispatches* December 13, 2023 https://religiondispatches.org/anti-zionism-is-antisemitism-isnt-just-wrong-its-the-problem/ . Also, not all Zionists are Jews, William N. Dale,  "The Impact of Christian Zionism on American Policy", *American Diplomacy* Volume IX, Number 2, 2004 https://ciaotest.cc.columbia.edu/olj/ad/ad_v9_2/daw01.html In fact, some Christian Zionists are antisemites: Julian Sayarer, "The Antisemitic Face of Israel's Evangelical Allies", *Jacobin Magazine* February 20, 2022 https://jacobin.com/2022/02/israeli-us-evangelical-alliance-zionism-antisemitism

[13]   The question of what constitutes a "true threat" has been fully briefed by other Defendants such as Tovah Fry. Mr. Camins joins in those arguments and will not reiterate them in full here.

particular individual".

C. *The Complaint's Use of the FACE Act would infringe the Defendant's Right of Assembly*

The First Amendment states: "Congress shall make no law respecting... the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

The DOJ asks this Court to infringe the Defendants' right peaceably to assemble, because it clearly and unequivocally asserts that the *content* of their speech—such as the phrasing of the flyers—must be construed as a threat of violence to Jewish people (even though the demonstrators included other Jewish people). The Complaint therefore does not envision that a peaceful pro-Palestinian demonstration anywhere in proximity to a synagogue would be First Amendment-protected—and it makes an impermissible content-based distinction that clearly fails strict scrutiny, *People Acting Through Community Effort v Doorley,* 468 F2d 1143, 1145 (1st Cir 1972) ("[T]he ordinance in question distinguishes between permissible and impermissible conduct on the basis of the content of the demonstrator's message").

### Point Two

### THIS COURT SHOULD ABSTAIN UNDER YOUNGER v. HARRIS

The Complaint fails to make any reference to the fact that the two men it mentions involved in a physical altercation with the Defendants, were both arrested by local police and charged by Essex County prosecutors with an unprovoked attack on the defendants."[P]olice reports and the feds' lawsuit agree that Silberberg pepper-sprayed Sharif, and Glick bashed Sharif in the head with a metal flashlight. Sharif got four staples to close a head wound, the reports say… The Essex County

14

Prosecutor's Office indicted Glick and Silberberg for crimes including assault, although former Gov. Phil Murphy pardoned Glick last month on his last day in office. The case against Silberberg is proceeding." Dana DiFilippo, "NJ activists sued by feds over synagogue protest demand their day in court", *New Jersey Monitor* February 13, 2026 https://newjerseymonitor.com/2026/02/13/nj-activists-sued-by-feds-over-synagogue-protest-demand-their-day-in-court/  Camins and other defendants are prepared to testify at a trial of the instant case that Silberberg disguised himself as a member of the protest, marched along with them to the synagogue, then unprovokedly pepper sprayed the protesters.

The Complaint is narrated first from Glick's standpoint, then both his and Silberberg's. Very obviously, if they had filed this action themselves under the FACE Act, as they would have been entitled to do, the case for abstention under *Younger v. Harris,* 401 U.S. 37 (1971), would be absolutely clear. Both could have asserted a First Amendment defense as well as self-defense in the state proceedings. Comity would have dictated that this Court would have declined jurisdiction while the state court resolved the fact issues. Under the *Rooker-Feldman* doctrine, either man, if convicted, could have appealed through the New Jersey system, then, if still not vindicated, petitioned the Supreme Court of the United States for certiorari on any constitutional or federal issues. Had Glick or Silberberg brought this action, they would have certainly been remitted to the state system, rather than permitted to short circuit the state process by a premature resort to federal court.

Given that the Department of Justice has chosen to stand in their shoes and bring this case instead, with the same false counter-narrative and potential for interference in the New Jersey legal system, this Court should treat DOJ exactly as it would have the individuals, and abstain under *Younger, Allee v Medrano,* 416 US 802, 830-831 (1974) ("The union, to the extent that it has standing, will be seeking interference with state court prosecutions of its members. There is an identity of interest between the union and its prosecuted members... The same comity considerations apply whether the action is brought in the name of the individually arrested union member or in the name of the union,

15

and there is no inequity in requiring the union to abide by the same legal standards as its members in suing in federal court"); *Stivers v Minnesota,* 575 F2d 200, 203 (8th Cir 1978) ("Such a case [for abstention] may arise where the interests of the parties seeking relief in federal court are closely related to those of parties in pending state proceedings and where the federal action seeks to interfere with pending state proceedings").

**Point Three**

**THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION**

Mr. Camins has argued in Point One that the Complaint fails to state a cause of action because of the First Amendment's prohibition on pleading protected speech as FACE Act violations. The Complaint's other significant failures to assert a FACE Act cause of action have been thoroughly dealt with in the motions of other Defendants, including Matt Dragon's and Tovah Fry's, and Mr. Camins joins in them and need not reiterate them here.

In case no one else does so, however, Mr. Camins wishes to call the Court's attention to the implausibility of the Complaint's assertions about the vuvuzela horn allegedly blown by some of the Defendants (there is no allegation Mr. Camins blew one). These are material because Plaintiff in effect asserts that certain Defendants' use of the vuvuzela justified Mr. Silberberg's pepper-spray attack, and Mr. Glick bashing Mr. Sharif in the head with a flashlight.

The vuvuzela is a large toy horn originating in South Africa, which in 2010 went "viral" for use by fans at soccer matches. When blown hard, it is louder than a drum or a chainsaw. It is now banned in some stadiums, because "extended exposure to such noise risks permanent hearing loss." "10 Things About the Vuvuzela", *BBC,* June 15, 2010 https://www.bbc.com/news/10312794 In other words, a fan seated between two strangers blowing vuvuzelas for the hours of a match might experience harm. A

16

vuvuzela blown briefly near someone's ear does not constitute an assault, especially because the affected individual could move away, *Gilles v Davis*, 427 F3d 197, 215 (3d Cir 2005) ("People who do not want exposure to the offensive speech can avert their eyes or walk away"). Blowing the vuvuzela is arguably First Amendment-protected expression, *Porter v Gore,* 354 F Supp 3d 1162, 1170 (SD Cal 2018), and is certainly not an act of violence.

**CONCLUSION**

The Complaint should be dismissed.

/s/ Fatima Maryam
Fatima Maryam
118-21 Queens Blvd, Suite 606,
Forest Hills, NY 11375
516-631-4266
lawoffice@fatimamaryamlaw.com


/s/ Jonathan Wallace
Jonathan Wallace
PO #728
Amagansett NY 11930
917-359-6234
jonathan.wallace80@gmail.com
Admitted pro hac vice

Attorneys for Eric Camins

17