UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,                    CIVIL ACTION NO. 2:25-CV-16049

        Plaintiff,

  v.

TOVA FRY, ET AL.,

        Defendants.

## AMP-NJ'S REPLY IN SUPPORT OF
## MOTION TO DISMISS PURSUANT TO FED. R. CIV. PROC. 12(b)(6)

Defendant American Muslims for Palestine New Jersey (AMP-NJ) hereby submits its reply in support of its Motion to Dismiss (Dkt 63). Based upon this brief and the memorandum in support, AMP-NJ requests that the Court dismiss Plaintiff's claims against AMP-NJ for failure to state a claim, pursuant to Fed. R. Civ. Proc. 12(b)(6).

**I.    The Allegations in the Complaint Regarding AMP-NJ Do Not State a Claim for "True Threat"**

Plaintiff USA asserts that AMP-NJ's "advertising" regarding the protests "continued even after the protest in Bergenfield turned violent. *See* [Complaint] ¶¶ 26, 67, 71." Dkt 82 at 16 (p. 21 of PDF). But all three of these paragraphs of the complaint are improper and insufficient conclusory allegations – "naked assertion[s]" devoid of "further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). These paragraphs set forth no facts showing that AMP-NJ was "advertising" after the Bergenfield protest "turned violent."

Paragraph 26 alleges:

> 26.    On November 7, 2024, AMP and others organized a violent protest that disrupted the Bergenfield event.

USA does not allege any facts showing what AMP did to make this a "violent" event. And it certainly does not say what USA's brief says, that AMP "advertised" online *after* violence (allegedly) broke out.

1

67.      Defendants PSL and AMP, as organizers, have a history of participating in disruptive and violent demonstrations targeting Jewish institutions, including, upon information and belief, the protest on November 7, 2024, in Bergenfield, New Jersey, demonstrating a pattern of conduct aimed at intimidating Jewish worshipers.

This paragraph is even more conclusory – "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Nor does it say that AMP "advertised" online *after* violence (allegedly) broke out.

71.      PSL and AMP promoted the November 13, 2024, protest, knowing it would foreseeably lead to violence and intimidation, like the November 7th Bergenfield protest a week prior. By urging supporters to mask their identities and target the event, PSL and AMP are responsible for the resulting violations.

While this allegation, finally, asserts that AMP promoted a post-Bergenfield protest, it adds no facts that would plausibly support foreseeability. As fully briefed in AMP's motion, such cause and effect assertions requires the USA to "have pled *facts* plausibly demonstrating" that AMP directed others to "conduct the operation in a manner that they 'knew or should reasonably have known would cause'" the protesters to be violent. *Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (emph. added) (quoting *Conner v. Reinhard*, 847 F.2d 384, 397 (7th Cir. 1988)). Urging masking is not *plausibly* a call to violence. In the current political atmosphere, it is a common-sense self-preservation measure when engaging in public protest. People often wear face coverings during protests or demonstrations to maintain anonymity and avoid retaliation for political views. https://www.icnl.org/post/news/legislative-briefer-anti-mask-laws-and-the-first-amendment. In the specific context of the protests at issue in this case, doxxing has become a huge concern. https://www.thenation.com/article/world/canary-mission-israel-covert-operations/

USA asserts that, "[a]s in *Planned Parenthood of Columbia/Willamette* [*v. Am. Coal. of Life Activists*, 290 F.3d 1058 (9th Cir. 2002) (*en banc*)], it is unnecessary to plead that AMP's social media poster was itself explicitly threatening; "[r]ather, it is . . . the context of the poster pattern . . . that constitutes the threat." 290 F.3d at 1085." Dkt 82 at 16 (p. 21 of PDF). But USA takes *Planned Parenthood* wildly

2

out of context. As the Ninth Circuit noted in that case: "If ACLA had merely endorsed or encouraged the violent actions of others, its speech would be protected." *Id.* at 1072. USA's use of ellipses regarding the "poster pattern" quote is telling. The full quote was:

> [I]t is use of the *"wanted"-type format* in the context of the poster pattern -- poster followed by murder -- that constitutes the threat. Because of the pattern, a *"wanted"-type poster* naming a specific doctor who provides abortions was perceived by physicians, who are providers of reproductive health services, as a serious threat of death or bodily harm.

> *Id.* at 1085 (emph. added). The social media posts cited in the complaint are nothing like the "wanted" posters in the Planned Parenthood case. Furthermore, it is unclear whether the *Planned Parenthood* analysis survives *Counterman v. Colorado*, 600 U.S. 66 (2023), which held that, to constitute a "true threat," the government must also allege (and later prove) that the *speaker subjectively* understood their statement to be threatening, at a minimum showing recklessness.

AMP's "advertising" simply exhorts people to protest – an activity 100% protected by the First Amendment.

## II.    The Allegations Against AMP-NJ Involve Speech, Not Conduct

USA asserts that "Defendants were engaged in conduct, not speech." Dkt 86 at 22 (p. 27 of PDF). This clearly is not true of the allegations against AMP, and USA's brief stating otherwise is frivolous. USA asserts that, "[a]s discussed above, supra pp. 2-6, Fry and AMP allegedly *delivered* a threatening letter directed at Glick at his home and *photographed* the home where the event was intended to be held." Dkt 82 at 23 (p. 28 of PDF) (emph. added). But the complaint nowhere alleges that AMP delivered such a letter, much less approached the home or photographed it. To the contrary, the complaint alleges:

> 20.    On or around November 4, 2024, Defendant Tova Fry, a/k/a Terry Kay, was recorded on a Ring camera delivering a threatening letter to Glick's home, *signed by AMP and other anti-Israel organizations*, demanding cancellation of the event or threatening legal action, stating, in part, to "immediately terminate any and all hosting, participation, support, facilitation, and conspiracy to support such events."

Dkt 1 at 6 (emph. added). Under the USA's theory, the First Amendment-protected action of *signing*

*onto a group letter* – which letter simply "demand[s] cancellation of an event" and "threaten[s] legal action" – means AMP "delivered" that letter at the home and photographed the home. Even if delivering a letter to someone's home and/or photographing the home were "true threats," AMP did neither of those things.

**CONCLUSION**

The Complaint is not plausibly pled against AMP-NJ under the *Twombly* and *Iqbal* standards. Even if a "true threat" were plausibly pled, the complaint fails to meet the standards for pleading causation. The attenuated causation allegations regarding AMP-NJ do not come close to the *Twombly/Iqbal* requirements. The actions Plaintiff alleges AMP-NJ took were clearly protected by the First Amendment.

Based upon this brief and the earlier-filed Memorandum, Defendant AMP-NJ respectfully requests that the Court dismiss the claim against AMP-NJ, for failure to state a claim.

Respectfully submitted,
       s/ Saad Admani
Saad Admani, Esq.
Admani Law LLC
101 Hudson Street, 21st Floor
Jersey City, NJ 07302
(201) 502-5243
sadmani@admanilaw.com


        s/ Lauren Regan
Lauren Regan, *pro hac vice*
Civil Liberties Defense Center
1711 Willamette St Ste 301 # 359
Eugene, OR 97401
(541) 554-1399
lregan@cldc.org

Attorneys for Defendant American Muslims for Palestine New Jersey