UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
----------------------------------------------------------x
UNITED STATES OF AMERICA,

Plaintiff,

             CIVIL ACTION NO. 2:25-CV-16049

v.

             Motion Day: April 6

TOVA FRY, ET AL.,
Defendants.
----------------------------------------------------------x

## MEMORANDUM OF LAW IN REPLY

Defendant Eric Camins, by his attorneys Jonathan Wallace and Fatima Maryam,
submits this Memorandum of Law in reply to Plaintiff's opposition to, and in further
support of, his motion to dismiss the Complaint pursuant to FRCP Rule 12(b) (6).

As a threshold matter, Plaintiff makes certain incorrect statements in its brief
pertaining to Defendant Camins. The Complaint does not allege in the paragraphs cited,
or anywhere, that Mr. Camins blew a vuvuzela, nor that he ever assaulted Mr. Silberberg
or anyone (assertions made at p. 13).

## ARGUMENT

## THE COMPLAINT SHOULD BE DISMISSED

The *Twombly/ Iqbal* standards of pleading require that the assertions in a
Complaint be plausibly pled, *Bell Atl. Corp. v Twombly,* 550 US 544, 570 (2007) ("[W]e

1

do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face"); *Ashcroft v Iqbal,* 556 US 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

Claims of assault by blowing a vuvuzela, or that a real estate sale is a solemn religious ritual, are at least in staring distance of some of the more outlandish assertions dismissed by 3rd Circuit courts on 12(b)(6) motions, *Lampon-Paz v Dept. of Homeland Sec.,* 612 F App'x 73, 76 (3d Cir 2015) ("Lampon-Paz's amended complaint alleging brain-mapping, subliminal messaging, and other methods to control his mind and harm his body is not plausible on its face, as required to survive a Rule 12(b)(6) motion to dismiss"); *Patel v Crist,* 2020 US Dist LEXIS 194712, at \*8 (DNJ Oct. 20, 2020, Civil Action No. 19-8946) ("Plaintiffs' allegations are entirely conclusory and, frankly, implausible. ... For example, Plaintiffs do not allege which state legislators were bribed, how the bribes to the state legislators or judges occurred, or where the secret servers are housed"); *Miller v Comcast,* 724 F App'x 181, 182 (3d Cir 2018) ("His claim is facially implausible…. that Comcast is....spying on him through his phone and is attempting to have him murdered").

As far as the argument that real estate sales are a religious exercise, the Third Circuit held: "[W]e can look behind the purported religious belief to the extent that we

2

are questioning whether the belief is honestly held, and we have recognized that some assertions of religious belief are so facially implausible or secular in nature that we do not credit them as a matter of law", *Robinson v Supt. Houtzdale SCI,* 693 F App'x 111, 116 (3d Cir 2017), citing *Cutter v Wilkinson,* 544 US 709, 725, n 13 (2005) ("Although RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion, see 42 U.S.C. § 2000cc-5(7)(A), the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity"); *Cavanaugh v Bartelt,* 178 F Supp 3d 819, 824 (D Neb 2016) (Church of the Flying Spaghetti Monster "is not a religion within the meaning of the relevant federal statutes and constitutional jurisprudence. It is, rather, a parody, intended to advance an argument about science, the evolution of life, and the place of religion in public education").

By analogy, a FACE Act complaint asserting that Defendants disrupted a frisbee match, and asserting that playing catch with frisbees is a sacred religious ritual (whether or not the asserted religion was a novelty to the Court, or a well-recognized mainstream world religion) should not survive the *Twombly/Iqbal* plausibility test based simply on the type of conclusory allegations that Plaintiff makes about real estate religious practice in Judaism, cf. *Sawicki v Wilson,* 2026 U.S. App. LEXIS 4482, at *2 (3d Cir Feb. 13, 2026, No. 25-3581) ("[C]onclusory....allegations [are] implausible"); *Miller v Comcast, supra, at* 182 (3d Cir 2018) ("His claim is facially implausible as it is based on vague and conclusory allegations"). On an evaluation of the sincerity of a religious belief,

"sufficient evidence" is required, *Matos v PNC Fin. Servs. Group,* 2005 US Dist LEXIS 24529, at \*12 (DNJ Oct. 17, 2005, No. 03-5320 (RBK)). This Court may also take into account in its plausibility evaluation that statements in the Complaint such as the "obligation to live in the Land of Israel, [is] a tenet of Jewish faith" (paragraph 17) are being made by the Department of Justice, not a Jewish litigant, cf. *United States v Oregon,* 2026 US Dist LEXIS 25259, at \*34 (D Or Feb. 5, 2026, No. 6:25-cv-01666-MTK) ("The presumption of regularity that has been previously extended to [the Department of Justice] that it could be taken at its word—with little doubt about its intentions and stated purposes—no longer holds"). The Department of Justice should not be presumed to have any expertise in what is or is not Jewish, *Yong Wong Park v AG of the United States,* 472 F3d 66, 71 (3d Cir 2006) ("[T]he Attorney General has no particular expertise in defining a term under federal law").

Nor is a secular real estate event transformed into a religious ceremony by the inclusion of a prayer or other incidental practice, *Jingrong v Chinese Anti-Cult World Alliance Inc.,* 16 F.4th 47, 60 (2d Cir 2021), *cert. den.* 143 S. Ct. 91 (2022) ("The undisputed evidence shows that Plaintiffs and their witnesses characterized the tables primarily as a site for political protest activity against the Chinese Communist Party, even if some incidental religious practice took place at the tables").

"True threats are serious expression[s] conveying that a speaker means to commit an act of unlawful violence," *Counterman v Colorado,* 600 US 66, 74 (2023). Plaintiff's

4

assertions in the Complaint regarding the run up to the night of the demonstration,

require numerous mental hops to transform sincere and strongly felt advocacy, however

disagreeable to Plaintiff, into threats (Complaint paragraph 70). Although Defendant

Camins does not believe that any threat was intended or reasonably construed (other

than of legal action),  the case law is absolutely clear that even more overtly disturbing

speech than is alleged here does not rise to "true threat" level if imminent violence is not

threatened,  *Cl. G v Siegfried*, 38 F.4th 1270, 1277 (10th Cir 2022) (Crude Holocaust

reference; "[O]ffensive, controversial speech can still be protected"); *Blessing v CNN,*

*Inc.*, 2020 US Dist LEXIS 241649, at *27 (ED Ky Dec. 23, 2020, No. 2:20-CV-0015

(WOB-CJS)), *affirmed* 988 F.3d 889 (2021) (Statement  that "'Some [people] can also be

punched in the face' [does] not meet the elements required for the [true threat] statutes,

but even assuming the elements were met, the First Amendment protects such speech");

*Stout v Harris,* 2021 US Dist LEXIS 232132, at *14 (ED Va Dec. 3, 2021, Civil Action

No. 3:21cv399)  (Statement "'Don't violate my rights, and I don't hurt you'.... does not

constitute a true threat and, therefore, remains protected speech").

As very important context, the assertion that all anti-Zionism is antisemitism, still

aggressively advanced by the Department of Justice, the Trump administration and

Congress, is being definitively rejected by federal courts, see  *StandWithUs Ctr. for*

*Legal Just. v Massachusetts Inst. of Tech.,* 158 F.4th 1, 16 (1st Cir 2025)  ("Plaintiffs are

entitled to their own interpretive lens equating anti-Zionism (as they define it) and

antisemitism. But it is another matter altogether to insist that others must be bound by plaintiffs' view").

Plaintiff cites cases which undermine the theory it is trying to advance to this Court. In *Thunder Studios, Inc. v Kazal*, 13 F.4th 736, 741-748 (9th Cir 2021), angered about a business deal gone bad,  Defendants "procure[d] a van, adorn[ed] it with a large sign about [Plaintiff's]  alleged misdeeds, and....[drove] it around town. [They] also hired protestors to distribute flyers denouncing [Plaintiff] and to picket near [his] house and [business], chanting slogans...[and holding] flyers and signs [which] included a picture of [Plaintiff] and denounced him as a 'corporate thief' and 'fraudster' who 'robbed his business partners of $180 million'". The Ninth Circuit held: "Though much of the [Defendants'] speech was intemperate and rancorous" it was First Amendment-protected, and therefore "none of their conduct constituted a 'true threat' outside the protection of the Amendment." The instant case may be more analogous to  *Edwards v South Carolina,* 372 US 229, 233, 235 (1963), also cited by Plaintiff. African American students charged with "breach of the peace" "engaged in what the City Manager described as 'boisterous,' 'loud,' and 'flamboyant' conduct, which, as his later testimony made clear, consisted of listening to a 'religious harangue' by one of  their leaders, and loudly singing 'The Star Spangled Banner' and other patriotic and religious songs, while stamping their feet and clapping their hands". The Court held that "in arresting, convicting, and punishing the petitioners under the circumstances disclosed by this

6

record, South Carolina infringed the petitioners' constitutionally protected rights of free speech, free assembly, and freedom to petition for redress of their grievances".

Plaintiff's assertion that true threat is a matter for a jury, not a judge, is a non-sequitur (P. 16). The question of whether an assertion of true threat is plausibly pled is obviously for the Court, not a jury, *City of Clinton v Pilgrim's Pride Corp.,* 632 F3d 148, 155 (5th Cir 2010) ("[B]efore [an] issue... may be heard by the finder of fact, the... pleadings must meet the standards set out in Rule12(b)(6)"). In its brief, Plaintiff continually tries to end run *Twombly/Iqbal's* plausibility standard, claiming that this Court must take all its fanciful assertions-- about vuvuzelas, real estate sales, and people delivering letters-- at face value.

Incidentally, Defendants and Counsel were intrigued by the Plaintiff's quote from their memorandum of law in support of the motion: "Contrary to Camins's argument the Complaint in no way 'privileges a subset of Jewish people over Muslims, Christians, and non Zionist [sic] Jewish people.'" p. 10 What is that "sic"? Possibly Plaintiff is merely calling out the hyphenation fail, but it seems more likely that Plaintiff (again, completely lacking expertise on the issue) is denying that there are "non-Zionist Jewish people". Yet Defendant Camins is one1, and so is his attorney, and the members of Jewish Voice for Peace, and the Satmar Hasidic Jews, and numerous others, cf. Peter Beinart, "Debunking The Myth That Anti-Zionism Is Anti-Semitic", *The Forward* February 27, 2019

---

1   As a fact issue, not to be determined on this motion, Mr. Camins,  a Jewish person, never shouted "The Jew is here". Plaintiff's failure to investigate the assertions it recklessly made in the Complaint is a matter for another time.

https://forward.com/opinion/419988/debunking-the-myth-that-anti-zionism-is-anti-semitic/ ; Shaul Magid, "'Anti-Zionism = Antisemitism' isn't Just Wrong, It's the Problem", *Religion Dispatches* December 13, 2023 https://religiondispatches.org/anti-zionism-is-antisemitism-isnt-just-wrong-its-the-problem/

The Department of Justice advancing the position that anti-Zionist Jews do not exist, or are not Jewish, would violate the Establishment clause by taking sides in an intra-religious dispute, *Commack Self-Service Kosher Meats, Inc. v. Weiss,* 294 F3d 415, 429 (2d Cir 2002).

Plaintiff argues that *Younger* abstention is inapplicable because "Silberberg was admitted into pre-trial intervention on March 5, 2026"and therefore "[t]here are no 'ongoing' state proceedings against Glick or Silberberg". This is false. As the New Jersey court website confirms, "If you are accepted into PTI, the judge can  postpone further court action against you for up to 36 months....You will have a probation officer assigned to your case. You must meet the conditions set by the court, such as random drug screening, community service, mental health and/or drug and alcohol evaluations, and compliance with treatment recommendations. If you do not comply with the conditions set by the court, you can be removed from the PTI program. If that happens, the charges against you will be reinstated. You will once again face prosecution." https://www.njcourts.gov/sites/default/files/forms/10304_pti.pdf The proceedings against Silberberg are still "ongoing" for the duration of the PTI period, *State v Allen,*

8

346 NJ Super 71, 72 (Super Ct App Div 2001) ("[T]he State's appeal presents the issue of under what circumstances and for what reasons a defendant may be denied dismissal of the underlying charges after he or she successfully completes a Pre-Trial Intervention (PTI) program").

Thus the case for *Younger* abstention remains compelling. Clearly, the Department of Justice advanced a narrative by filing this Complaint which was intended to counter the narrative in the state prosecutions. At state level, Messrs. Silberberg and Glick were deemed responsible by the District Attorney's office for an unprovoked attack on the Defendants. In the Department of Justice's view, they were defending themselves (against attack by vuvuzela, no less). The Complaint entirely fails to mention that Glick and Silberberg were arrested and charged.

This Court may also take note that in order to enter the PTI program, Mr. Silberberg entered a conditional guilty plea to the state charges.

Plaintiff also makes the rather astonishing statement, "Camins does not deny that his conduct constitutes 'physical obstruction'" (p. 21). Say what? Of course he vehemently denies it. However, this is a disputed fact issue, and the motion to dismiss concentrated on the Complaint's failures to state a cause of action. Last time we checked the federal rules, failure to mention a disputed fact issue in a memorandum of law did not constitute an admission of fact.

9

## CONCLUSION

The Complaint should be dismissed.

/s/ Fatima Maryam
Fatima Maryam
118-21 Queens Blvd, Suite 606,
Forest Hills, NY 11375
516-631-4266
lawoffice@fatimamaryamlaw.com


Jonathan Wallace
PO #728
Amagansett NY 11930
917-359-6234
jonathan.wallace80@gmail.com
Admitted pro hac vice

Attorneys for Eric Camins