UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-------------------------------------------------------------x

UNITED STATES OF AMERICA,

               Plaintiff

v.

TOVA FRY, ET AL.,

               Defendants

-------------------------------------------------------------x

MOTION DATE
April 6, 2026

CIVIL ACTION NO.
2:25-CV-16049

Hon. Katherine S. Hayden, U.S.D.J.
Hon. José R. Almone, U.S.M.J.

## DEFENDANT TOVA FRY'S REPLY IN SUPPORT OF MOTION TO DISMISS

JULIE FRY
27 Lessing Rd
(646) 338-9148

RONALD L. KUBY
119 West 23rd Street, Suite 90
New York, New York 10011
(212) 529-0223

Attorneys for Defendant Tova Fry

Of Counsel:
Emma Vasta-Kuby

Dated:  March 30, 2026

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………………………ii

I.   Fry's Actions Do Not Constitute a "Threat of Force" Under the FACE Act……………………1

     A. The Government's Opposition Relies on Unpled Allegations………………………1

     B. The Opposition Misconstrues and Misapplies *Planned Parenthood*………………2

     C. Whether the Government has Pled Fry's Actions Constitute True Threats and Whether *Mens Rea* Elements Are Met Are Properly Before this Court in a Motion to Dismiss……………………………………………………………………………...4

II.  Moshe Glick's Home is Still Not a Place of Religious Worship Under the FACE Act………..6

III. Fry Did Not Physically Obstruct Access, and the Government's New Rhetoric is Irrelevant….6

IV.  Contrary to the Government's Assertion, 18 U.S.C. § 248(a)(2) Requires Specific Intent to Injure, Intimidate, or Interfere with a Person *Because of* Their Exercise of Religious Freedom……………………………………………………………………………….7

CONCLUSION…………………………………………………………………………………9

# TABLE OF AUTHORITIES

## CASES

*Allentown Women's Center, Inc. v. Sulpizio*, 403 F.Supp.3d 461 (E.D.P A. 2019)  ...................3 n.3

*Anela v. City of Wildwood*, 790 F.2d 1063 (3d Cir. 1986)……………………………………………..7

*Counterman v. Colorado*, 600 U.S. 66 (2023) ...............................................................................5

*Grand v. City of University Heights, Ohio,* 159 F.4th 507 (6th Cir. 2025) ...................................3, 5

*Helmann v. Codepink et al*., 2025 WL 3030582 (C.D. Cal. Jun. 13, 2025).....................................5

*Helmann v. Codepink et al*., 2025 WL 2673633 (C.D. Cal. Aug. 13, 2025)................................3, 5

*Jutrowski v. Twp. Of Riverdale*, 904 F.3d 280 (3d Cir. 2018)…………………………………………7

*Lotierzo v. A Woman's World Med. Ctr*., 278 F.3d 1180, 1182 (11th Cir. 2002)……………………7

*Melugin v. Hames*, 38 F.3d 1478, 1485 (9th Cir. 1994)…………………………………………4

*New Beginnings Ministries v. George*, 2018 WL 11378829 (S.D. Ohio Sep. 28, 2018) .... ….5, 7-8

*Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058 (9th Cir. 2002), *as amended* (July 10, 2002)........................................................................... 2-5

*Sharpe v. Conole*, 123 F.Supp.2d 87, 90 (N.D.N.Y. 2000)……………………………………………..8

*Spitzer v. Operation Rescue Nat'l*, 273 F.3d 184, 194 (2d. Cir. 2001)……………………………7

*United States v. American Trucking Associations*, 310 U.S. 534, 543 (1940)……………………..9

*United States v. John Baptiste*, 747 F.3d 186, 203, 206 (3d Cir. 2014)……………………………7

*United States v. Zavrel*, 384 F.3d 130, 138 (3d Cir. 2004)………………………………………3 n.3

*Watts v. United States,* 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969)………………...4

## STATUTES

Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248............................................... *passim*

## LEGISLATIVE MATERIALS

139 Cong. Rec. S15660, 1993 WL 470962 (Nov. 3, 1993)………………………………………….8

**<u>DEFENDANT TOVA FRY'S REPLY IN SUPPORT OF MOTION TO DISMISS</u>**

The Government's Opposition is a desperate attempt to save a case brought to punish protected political speech protesting the confiscation of Palestinian land. To do this, the Government recasts the Complaint's numerous pleading defects to assert that the pleadings say things they clearly do not say, and that courts have held things they clearly have not held.

**I.      <u>Fry's Actions Do Not Constitute a "Threat of Force" Under the FACE Act.</u>**

**A.  The Government's Opposition Relies on Unpled Allegations.**

The Opposition is filled with false claims that obfuscate what scant facts the Complaint alleges. Most glaringly, the Government now asserts that Fry publicized Glick's address. Opp at 14. ("The Complaint alleged that Fry threatened violence by…publicizing his address with the intent to cause further harassment of Glick."). Bafflingly, the Government bases this allegation on its accurate quote from the Complaint that Fry "took photographs of Glick's home from the street, indicating an intent to disseminate his address to others to facilitate further intimidation or harm." *Id*. But, "indicating an intent to disseminate his address," the Complaint's allegation, is very much not "publicizing his address."

The Opposition further conflates defendants' actions in an attempt to create context. The Government claims: "the very organization that authored the letter which Fry delivered also organized prior violent protests" and notes the "context of prior violent demonstration organized by the very same Defendants." *Id*. But the Complaint does not allege who "authored the letter."[1] More egregiously, the Government never alleges that Fry organized any prior demonstration,

---

[1] Nor, in actuality, does the Opposition. But if it is claiming it was AMP, the Complaint's allegation that the letter was "signed by AMP and other anti-Israel organizations" surely does not claim "authored." *See* Complaint at 6.

violent or otherwise. The Government has not alleged that Fry participated in any prior protests. The Government has not alleged any context at all about Fry.

The reliance on these unpled falsities to allege a "threat of force" cannot cure the pleading defects outlined in Fry's Memorandum in support of her Motion to Dismiss. *See* Fry Mem. at 4-9.

### B. The Opposition Misconstrues and Misapplies *Planned Parenthood.*

The Government does not respond to the cases Fry cites in her Motion to Dismiss, including cases that directly analyze "threat of force" under the Face Act's religious freedom subsection. It instead relies, almost exclusively, on *Planned Parenthood of Columbia/Willamette v. American Coalition of Life Activists,* 290 F.3d 1058 (9th Cir. 2002) (en banc), a case so dramatically different from this it undermines the Government's claim and ultimately supports Fry. In *Planned Parenthood*, the Ninth Circuit found that anti-choice organizations' website and "GUILTY" posters that named specific doctors and published their addresses constituted "threats of force" under the FACE Act. The critical factor in *Planned Parenthood,* that decided the First Amendment claim for the Plaintiffs, was that three abortion doctors who had previously appeared on virtually identical posters *had actually been murdered*. *Id.* at 1079-1080, 1086.

The Government wholly misses and misapplies the *Planned Parenthood* holding. While acknowledging that Fry's actions "may not themselves be 'true threats' when viewed in a vacuum," it uses the "the same logic" of *Planned Parenthood* to claim that "in context of prior violent demonstration organized by the very same Defendants, they do constitute 'true threats.'" Opp at 15. This argument has, at minimum, two fatal flaws. First, as noted above, the Government has not pled any context against Fry; there is no context on which to transform Fry's actions into a "threat of force." Second, it misses the essential holding in *Planned Parenthood*, where the Ninth Circuit emphasized that it was the pattern of actual killings from virtually identical posters that gave the

posters their threatening meaning. 290 F.3d at 1086.[2] "[I]n *Planned Parenthood*, this pattern was essentially one-to-one; i.e., if a doctor appeared on a poster, they were targeted for murder." *Helmann v. Codepink et al.*, 2025 WL 2673633 *6 (C.D. Cal., Aug. 13, 2025) (Relying on *Planned Parenthood* to find that "Plaintiffs' allegations about [Defendant's] prior protests utterly fail to establish this same kind of one-to-one relationship."). Even assuming *arguendo* that the Government had established Fry's connection to a prior violent demonstration before she delivered a letter threatening legal action, that is a far cry from a direct one-to-one pattern of "poster-followed-by-murder."

In fact, *Planned Parenthood* makes clear that Fry's actions are *not* a threat of force. In *Grand v. City of University Heights, Ohio,* 159 F.4th 507 (6th Cir. 2025), the Sixth Circuit relies on *Planned Parenthood* to definitively state that the threat of legal action is not a threat of force under the FACE Act.[3]

---

[2] The Government uses ellipses to gloss over key details in *Planned Parenthood*. The Opposition reads: "As the Court explained, 'the language itself is not what is threatening. Rather, it is . . . the context of the poster pattern—poster followed by murder—that constitutes the threat.'" Opp at 15. The sentence actually reads: "Rather, it is *use of the 'wanted'-type format in* the context of the poster pattern—poster followed by murder—that constitutes the threat." 290 F.3d at 1085. (emphasis added).

[3] Numerous other FACE Act cases make it even more evident that Fry's actions weren't a "threat of force." *See, e.g.*, *Allentown Women's Center, Inc. v. Sulpizio*, 403 F.Supp.3d 461 (E.D.P A. 2019), relying on, *United States v. Zavrel*, 384 F.3d 130, 138 (3d Cir. 2004) (Anti-abortion activist's comments to abortion provider's employees and volunteers that one had a laugh like character from television show, that the actor who played that character had died, "you can be killed for being a faggot," "your life doesn't matter," "you're a baby killer," and "come on back here, you cunt" did not constitute serious expression of intention to inflict bodily harm required to constitute "threat of force" under FACE.); *New Beginnings Ministries v. George*, 2018 WL 11378829 (S.D. Ohio Sep. 28, 2018) (That Defendants called Plaintiffs "hypocrites," "adulterers," and "child-molesters," referred to the Church as a "cult," cursed at them, and made sexual comments during their protests is insufficient and does not rise to the level of true threats or equate to the behavior other courts have found to be sufficient. Even with the context of Defendants' criminal records and that one Defendant said in a in a sinister or satanic voice that he had a surprise for them, the Court found "that no reasonable jury could find the statement constituted a threat of force under FACE. Despite the fear such a statement may have caused Plaintiffs, there is nothing in the

3

**C. Whether the Government has Pled Fry's Actions Constitute True Threats and Whether *Mens Rea* Elements Are Met Are Properly Before this Court in a Motion to Dismiss.**

The Government claims *Planned Parenthood* held that the question of whether statements are true threats and whether *mens rea* elements are met must be resolved by a jury:

> In any event, whether [Fry's] actions are "true threats" and whether *mens rea* elements are met are jury questions not amenable to resolution on a motion to dismiss. *Planned Parenthood of Columbia/Willamette*, 290 F.3d at 1069 ("[T]he issue whether the prosecution has shown a 'true threat' is a question of fact for the jury, not a question of law for the court.") (quoting *Melugin v. Hames*, 38 F.3d 1478, 1485 (9th Cir. 1994)).

Opp at 15-16.

The Government takes this quote wildly out of context. In *Planned Parenthood*, the quoted language appears within an in-depth discussion of the appropriate standard of appellate review, where the Court details varying prior findings. Just as the Court quoted *Melugin v. Hames*, 38 F.3d 1478 (9th Cir. 1994), it cited cases such as *Watts v. United States,* 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969), which was so clear it could be resolved as a matter of law. *See* 290 F.3d at 1068-1069.

Contrary to the Government's assertion, *Planned Parenthood* held that whether speech is constitutionally protected is a matter of law, and that federal judges have a crucial role in enforcing First Amendment protections at an early stage of the litigation:

> If it were clear that neither the Deadly Dozen nor the Crist poster, or the Nuremberg Files, was a threat as properly defined, the case should not have gone to the jury and summary judgment should have been granted in ACLA's favor. If there were material facts in dispute or it was not clear that the posters were protected expression instead of true threats, the question whether the posters and the Files amount to a "threat of force" for purposes of the statute was for the trier of fact.

---

statement, or the surrounding circumstances, to indicate Defendant was threatening imminent and unequivocal *physical harm*.").

4

*Id.* at 1070. Only when it is not clear whether a statement "is purely protected political expression," does the matter go to the jury. *Id.*

Indeed, of the four court cases brought under the FACE Act's religious freedom subsection, not a single one reached a jury. In *Codepink,* the sole religious subsection case the Opposition cites (and where the Government filed a statement of interest in plaintiffs' favor), the district court twice dismissed against three defendants at the Motion to Dismiss stage after it found there were no plausible "true threats" to make out "threat of force." *Helmann v. Codepink et al.,* 2025 WL 3030582 (C.D. Cal. Jun. 13, 2025); *Codepink*, 2025 WL 2673633 *6 (C.D. Cal. Aug. 13, 2025). For the same reason, the courts in *Grand* and *New Beginnings* dismissed the complaints against most defendants on summary judgment. *See Grand,* 159 F.4th at 516-517; *New Beginnings Ministries v. George*, 2018 WL 11378829 (S.D. Ohio Sep. 28, 2018). Clearly, the courts in each of these not only engage with these questions, but decide on them.

Finally, the Government failed to plead any *mens rea* in regard to Fry's actually alleged actions.[4] It now relies on *Planned Parenthood* to claim that whether *mens rea* elements are met is not amenable to resolution at this stage. *See* Opp at 16. *Planned Parenthood* says nothing of the sort. Regardless, *mens rea* must at least plead. While *Counterman v. Colorado*, 600 U.S. 66 (2023) establishes a foundational *mens rea* for criminal statutes that lack one, *Codepink* held that the FACE Act's language, *viz.,* "intentionally injures, intimidates, interferes with or attempts to…" establishes a specific intent requirement. 2025 WL 3030582 at *11 n.8. This Court need not decide the *mens rea* standard at this juncture, as the Government has failed to plead any *mens rea*.

---

[4] Although it does assert that the unpled allegation of Fry "publicizing Glick's address was at the very least reckless. *See Counterman v. Colorado*, 600 U.S. 66, 82 (2023)." Opp at 15.

## II. Moshe Glick's Home is Still Not a Place of Religious Worship Under the FACE Act.

The Complaint does not allege that Glick's home is a place of religious worship under the FACE Act, and the Government has failed to meaningfully assert that it is. Despite saying the "Complaint indisputably establishes that challenged conduct occurred at a place of religious worship," it provides no more facts, no caselaw, and no analysis regarding Glick's home. *See* Opp at 7. Fry's Motion to Dismiss makes clear the Complaint does not plead that Glick's home is a place of worship, and Glick's home is not a place of worship under the Face Act. Fry Mem. at 9-10.

This failure is dispositive, and even if the Court were to find that Fry's actions somehow constituted a "threat of force," the Government cannot sustain any cause of action based on Fry's delivery of the letter or photographing the outside of Glick's home, nor anything related to "forcing the relocation of the event."

## III. Fry Did Not Physically Obstruct Access, and the Government's New Rhetoric is Irrelevant.

As Fry's original memorandum shows, the Complaint does not allege what Fry actually did regarding events at the synagogue. *Id.* at 11-13. In response, the Government now claims that because it alleged she "joined a mob that broke through a police line [and] marched onto Congregation Ohr Torah synagogue property," that means the Complaint shows "a clear allegation that Fry was present on the synagogue's property and therefore contributed to the 'chaotic scene,'" which "rendered passage to Congregation Ohr Torah unreasonably difficult." Opp at 21.

First, this is not plead.

Second, even if it was, it would still not constitute a valid claim. Mere presence at a chaotic scene does not mean someone contributed to that chaos. Following the Government's reasoning, the counter protesters and the police, among others, contributed to the "chaotic scene." It is well-

6

settled that mere presence is insufficient to establish civil liability for wrongs done by others. *See, e.g., Jutrowski v. Twp. Of Riverdale*, 904 F.3d 280 (3d Cir. 2018); *United States v. John Baptiste*, 747 F.3d 186, 203, 206 (3d Cir. 2014); *Anela v. City of Wildwood*, 790 F.2d 1063 (3d Cir. 1986).

Third, especially when there are multiple defendants, this type of "general, vague, and blanket allegation," is insufficient to show an individual defendant's physical obstruction and "cannot amount to FACE violations." *New Beginnings,* 2018 WL 11378829, citing, *Spitzer v. Operation Rescue Nat'l*, 273 F.3d 184, 194 (2d. Cir. 2001) ("explaining that the plaintiffs must allege specific obstructing conduct by defendants individually").

**IV. <u>Contrary to the Government's Assertion, 18 U.S.C. § 248(a)(2) Requires Specific Intent to Injure, Intimidate, or Interfere with a Person *Because of* Their Exercise of Religious Freedom.</u>**

The Government was required, and failed, to allege that Fry both specifically intended to intimidate and interfere and to do so "because" of the religious observation.  The Government now pieces together quotes from *Custis v. United States*, 511 U.S. 485 (1994), which is not a FACE Act case, to allege that since the word "because" does not appear in the religious freedom subsection but does appear in the reproductive clinic subsection, the omission indicates that Congress did not intend to create a religious freedom subsection intent requirement. Opp at 28.

In *New Beginnings*, the district court identified four elements required to plead a violation of 18 U.S.C. § 248(a)(2), and held that the elements of the FACE Act require the plausible allegation that the defendant's actions against the plaintiff were "because that person is exercising or is seeking to exercise his or her right of religious freedom at a place of religious worship." 2018 WL 11378829 at *15, citing, *Lotierzo v. A Woman's World Med. Ctr.*, 278 F.3d 1180, 1182 (11th Cir. 2002).

As *New Beginnings* describes, "there are no legislative findings related to the religious liberties provision . . . in an official congressional report. Instead, all that exist are Senator Hatch's

7

statements made when he proposed the religious access amendment." 2018 WL 11378829 at *6. Senator Hatch, the amendment's sponsor, explained that the religious liberty amendment "is very straightforward. It would ensure that the first amendment right of religious liberty receives the same protection from interference that FACE would give abortion." He then reiterated: "Through this amendment, religious liberty would also be protected against private intrusion-in exactly the same way that FACE would protect abortion." *Id.* at 6-7, quoting 139 Cong. Rec. S15660, 1993 WL 470962 (Nov. 3, 1993). The legislative history dictates that this subsection be construed as equal in scope to the reproductive health clause—that it should be interpreted and applied "exactly the same way."

Moreover, *Sharpe v. Conole*, 123 F.Supp.2d 87, 90 (N.D.N.Y. 2000) describes why a mere general intent requirement to commit the obstructive act "could lead to ridiculous results." For example, under a general intent requirement, if access to medical offices providing reproductive health services was obstructed because the offices were in a building that was condemned for public safety reasons, those responsible for condemning the building and those stopping people from entering an unsafe building, "could be found liable under FACE because they intended to keep medical providers and patients out of the building and, in doing so, interfered with immediate reproductive services." *Id*. Or, if a bomb threat required a reproductive clinic to evacuate, those escorting patients and providers out of the facility, or stopping others from entering, could be liable. *Id*. These examples can just as easily be applied to the religious freedom subsection. Under the Government's proposed reading of the statute, there could be a cause of action any time construction to repair a house of worship blocked the entrance, volunteer firefighters ordered congregants to evacuate for a fire drill, or in many other common scenarios. The *New Beginnings* elements protect from these absurd results.

As the Supreme Court established: where the plain text of a statute produces an absurd result or "even when the plain meaning did not produce absurd results but merely an unreasonable one plainly at variance with the policy of the legislation as a whole," the Court can, and the Supreme Court "frequently" has "followed that purpose, rather than the literal words." *United States. v. American Trucking Associations*, 310 U.S. 534, 543 (1940).

## CONCLUSION

For the foregoing reasons, and the arguments Fry previously set out in her Memorandum in support of the Motion to Dismiss, as well as the arguments of the other defendants to the extent they apply to Fry's Motion to Dismiss, Defendant Tova Fry respectfully requests that the Court dismiss this Complaint in its entirety.

Dated: March 30, 2026

Respectfully submitted,

s/ Julie Fry
Attorney for Defendant Tova Fry
27 Lessing Rd
West Orange, NJ 07052
(646) 338-9148

s/ Ronald L. Kuby
Attorney for Defendant Tova Fry
Admitted *pro hac vice*
Law Office of Ronald L. Kuby
119 West 23rd Street, Suite 900
New York, NY 10011
(917) 602-3992

Of Counsel:
Emma Vasta-Kuby
Law Office of Ronald L. Kuby
119 West 23rd Street, Suite 900
New York, NY 10011
(646) 238-7662

9