**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No.: 2:25-cv-16049** |
| | ) | |
| **PARTY FOR SOCIALISM AND** | ) | **Motion Day: June 15, 2026** |
| **LIBERATION NEW JERSEY,** *et al.*, | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

**Table of Contents**

I.      Allegations Against PSL-NJ in the Complaint.............................................................. 5

II.     Legal Standards ........................................................................................................... 6

III.    The Elements of a Claim ............................................................................................. 6

IV.     The Government's Complaint Fails to State a Claim for Relief ............................. 7

      A.  The Government failed to plausibly allege PSL-NJ violated the FACE Act through an Instagram post calling for a protest in a public forum ...................... 8

      B.  The Government's remaining statements regarding PSL-NJ and "Defendants" should be disregarded as conclusory................................................................... 13

      C.  If the Government is seeking to allege that PSL-NJ is liable for alleged actions committed by others, it has failed to plausibly so allege .................................. 15

      D.  The Government's abuse of the FACE Act to punish viewpoint with which it disagrees, specifically here pro-Palestine speech, violates the first amendment and is a vindictive prosecution.......................................................................... 17

V.      Leave To Amend Should Be Denied and This Case Should Be Dismissed With Prejudice ..................................................................................................................... 19

VI.     Conclusion ................................................................................................................... 21

**Table of Authorities**

Page(s)

**Cases**

*Ashcroft v. Free Speech Coal.*,
  535 U.S. 234 (2002)............................................................................................... 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................... 2, 6, 13

*AT&T Co. v. Winback & Conserve Program, Inc.*,
  42 F.3d 1421 (3d Cir. 1994).................................................................................. 17

*Cureton v. NCAA*,
  252 F.3d 26772 (3d Cir. 2001)............................................................................. 21

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................... 6, 13, 15

*Bible Believers v. Wayne County*,
  805 F.3d 228 (6th Cir. 2015) ................................................................................ 10

*Bistrian v. Levi*,
  696 F.3d 352 (3d Cir. 2012).......................................................................... 1, 7, 14

*Brandenburg v. Ohio*,
  395 U.S. 444 (1969)..................................................................................... 9, 10, 16

*Manhart v. WESPAC Found., Inc.*,
  No. 24-CV-08209, 2025 WL 2257408 (N.D. Ill. Aug. 7, 2025) ............................ 21

*Canel v. Art Inst. of Chi.*,
  No. 23 CV 17064, 2026 U.S. Dist. LEXIS 57802 (N.D. Ill. Mar. 19, 2026) ......... 19

*Chavarriaga v. N.J. Dep't of Corr.*,
  806 F.3d 210, 218-19 (3d Cir. 2015) ....................................................................... 6

*Counterman v. Colorado,*
  600 U.S. 66 (2023)......................................................................................... 12, 16

*Covington v. Int'l Ass'n of Approved Basketball Officials*,
  710 F.3d 11420 (3d Cir. 2013)............................................................................... 17

*Edwards v. South Carolina*,
  372 U.S. 229 (1963)......................................................................................................... 9

*Nat'l Rifle Ass'n of Am. v. Vullo*,
  602 U.S. 175 (2024)..................................................................................................... 19, 20

*D. W, by Renaud v. N.J. Div. of Child Protection Permanency*,
  No. 21-15789, 2023 U.S. Dist. LEXIS 90604 (D.N.J. May 24, 2023)...................................... 15

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009).............................................................................................. 15

*Helman v. Codepink Women for Peace*,
  No. 2:24-cv-05704-SVW-PVC, 2025 U.S. Dist. LEXIS 157027
  (C.D. Cal. Aug. 13, 2025).............................................................................................. 13, 16

*Hess v. Indiana,*
  414 U.S. 105 (1973).............................................................................................. 10, 16, 17

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997)............................................................................................. 20

*Landau v. Corp. of Haverford Coll.*,
  No. CV 24-2044, 2025 WL 35469 (E.D. Pa. Jan. 6, 2025) ........................................................ 19

*Lake v. Arnold*,
  232 F.3d 36073 (3d Cir. 2000)........................................................................................... 20

*Mattiaccio v. Scharfenberg*,
  No. 23-23037 (GC) (TJB), 2025 U.S. Dist. LEXIS 128973 (D.N.J. July 8, 2025).................. 15

*Meyer v. Holley*,
  537 U.S. 280 (2003)....................................................................................................... 17

*Morrow v. Balaski*,
  719 F.3d 160 (3d Cir. 2013)............................................................................................... 6

*Murray v. Cty. of Hudson*,
  No. 17-2875 (JMV) (MF), 2018 U.S. Dist. LEXIS 100357 (D.N.J. June 14, 2018)................ 15

*NAACP v. Claiborne Hardware Co.*,
  458 U.S. 886 (1982)...................................................................................................... 16

*Nwanguma v. Trump*,
  903 F.3d 604, 610 (6th Cir. 2018) ...................................................................................... 11

*Packingham v. North Carolina*,
    582 U.S. 98 (2017).................................................................................................. 9

*Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal of Life Activists,*
    290 F.3d 1058 (9th Cir. 2002) ........................................................................... 7, 12

*Reno v. American Civil Liberties Union,*
    521 U. S. 844 (1997)............................................................................................... 9

*Sears Mrtg. Corp. v. Rose*,
    634 A.2d 7479 (N.J. 1993).................................................................................... 17

*StandWithUs Ctr. for Legal Just. v. Mass. Inst. of Tech.*,
    158 F.4th 118 (1st Cir. 2025)............................................................................... 19

*United States v. Alvarez*,
    567 U.S. 709 (2012)........................................................................................ 16, 17

*United States v. Fullmer*,
    584 F.3d 132 (3d Cir. 2009).................................................................................. 10

*Ward v. Rock Against Racism*,
    491 U. S. 781 (1989)............................................................................................... 9

*Warren Gen. Hosp. v. Amgen Inc.*,
    643 F.3d 77, 84 (3d Cir. 2011).............................................................................. 15

**Statutes**

18 U.S.C. § 248.................................................................................................... 7, 8, 12

**Rules**

Fed. R. Civ. P. 4(h)(1)(B) ............................................................................................ 4

Fed. R. Civ. P. 12(b)(6)................................................................................................ 6

N.J. R. Civ. P. 4:4-4..................................................................................................... 4

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| | ) | |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No.: 2:25-cv-16049** |
| | ) | |
| **PARTY FOR SOCIALISM AND** | ) | **Motion Day: June 15, 2026** |
| **LIBERATION NEW JERSEY,** *et al.*, | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Plaintiff ("the Government") alleges that Defendant Party for Socialism and Liberation New Jersey (PSL-NJ) violated the Freedom of Access to Clinic Entrances Act (FACE Act) by posting a call promoting a public forum demonstration on social media. The call asked individuals to assemble and protest at a designated intersection some distance from where the events alleged in the Complaint occurred at Congregation Ohr Torah. This sole particularized allegation, that an organization promoted a call for a lawful assembly on public space, does not plausibly state a claim of a violation of the FACE Act. That this is the alleged misconduct inherently evidences that the Government's purpose in this frivolous lawsuit is to attack constitutionally protected speech that it disfavors.

To determine whether a complaint meets the pleading standards to state a claim, the Court follows a three-step framework including to "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). In other words, the Court must sift the complaint and disregard averments that are mere "labels and conclusions" or "naked assertions" and consider only the averments that provide particular factual allegations against the legal standard to determine whether these

remaining averments are sufficient to plausibly substantiate the Government's claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Complaint has relatively scant references to PSL-NJ. Compl. ¶¶9 (parties section), 10 (parties section), 24 – 25 (factual background section), 67 (factual background section), 71 (Count I, FACE Act), and the substance of nearly all of the references are conclusory statements or smears that have to be disregarded.

The Count section identifies the sole, challenged conduct allegedly in violation of the FACE Act to be that "PSL . . . promoted the November 13, 2024, protest, knowing it would foreseeably lead to violence and intimidation." Compl. ¶ 71. The second half of that paragraph is wholly conclusory and has to be peeled away and disregarded. The Government describes, with specificity, the nature of the expressive activity that it asserts violated the FACE Act: that PSL-NJ published, or supported the publishing of, a post on Instagram promoting a protest at the public forum location of Ellis St. & Forest Ave. That call stated: "No business on stolen land / Protest land theft in our backyard" and identified that designated intersection as the situs for assembly. Compl. ¶¶ 24–25.

This First Amendment-protected expression protesting "land theft"—the single specific allegation against PSL-NJ—refers to protesting an event in New Jersey in which land in the illegal settlement of Givat Hamatos, situated in the occupied territory of East Jerusalem, would be sold to U.S.-based and Israel-aligned investors, to create what is advertised to be "a new Anglo community in Jerusalem." *See* Compl. ¶ 25 (AMP social media post embeds image of flyer from "My Israel Home," a company that sells real estate in the occupied territories to what it describes as "Anglo" investors, about its "magnificent Jerusalem projects"); s*ee also New JLM Neighborhood Aderet Yerushalayim in Givat Hamatos*, My Israel Home, www.myisraelhome.com/new-project [https://perma.cc/Y6DB-7VHX] (last visited May 18, 2026); *Introducing: Givat HaMatos Neighborhood*, Aderet, http://www.givathamatos.com [https://perma.cc/2NB9-T2EF] (last visited May 18, 2026). The settlement, internationally recognized as illegal, dispossesses the indigenous Palestinian people of their land and would

establish a permanent barrier for Palestinians separating and denying access between occupied East Jerusalem and Bethlehem.

PSJ-NJ's protest call condemning the illegal settlement as "land theft" aligns with the expressed position of the U.S. Government under previous administrations, Jen Psaki, *US Spokesperson Psaki says Israel's settlement plans in Givat Hamatos are contrary to agreement with Palestinians* (Oct. 1, 2014), https://www.un.org/unispal/document/auto-insert-194323/ [https://perma.cc/9HT6-QZDB] (former White House Press Secretary Jen Psaki uses self-described "strong language" to "condemn" the Givat HaMatos settlement plans on behalf of the United States), and that of the United Nations' Office of the High Commissioner for Human Rights, United Nations Office of the High Commissioner for Human Rights Press Release, *UN experts say Israeli settlement expansion 'tramples' on human rights law*, (Nov. 3, 2021), https://www.ohchr.org/en/press-releases/2021/11/un-experts-say-israeli-settlement-expansion-tramples-human-rights-law [https://perma.cc/6ZUZ-N332] ("The illegality of the Israeli settlements [including Givat HaMatos specifically] is one of the most widely-accepted issues in modern international law. 'As well, the Israeli settlements are a presumptive war crime under the Rome Statute of the International Criminal Court, and should be treated as such by the international community.'"). It is neither unlawful nor is it interference with freedom of religious expression to promote assembly on public space to protest land theft that is illegal under international human rights and other laws.

The right to engage in free expression does not turn on whether the viewpoint expressed is or is not supported by whoever is the current President. To permit otherwise would be to substitute the changing whims and ideology of the Presidency for the framework of precious rights established within the Bill of Rights to the U.S. Constitution.

As discussed below, the Government's motivation in the prosecution of the instant Complaint requires no resort to inference: It has stated expressly that its goal in this lawsuit is to "dismantle" the Party for Socialism and Liberation and any groups that engage in protest expressing viewpoints that diverge from the current administration's perspective, whether that

perspective be on the subject of Israel, Palestine, or the illegal tactics of ICE. It simultaneously eschews the use of the FACE Act against groups whose viewpoints challenge abortion or abortion clinics.

The instant lawsuit against PSL-NJ, illegally targeting on the basis of viewpoint and motivated by vindictiveness and malice, falls painfully short of stating a claim of a FACE Act violation.

The Complaint identifies six individual defendants, none of whom are alleged to represent PSL-NJ, and one unrelated organizational defendant, American Muslims for Palestine New Jersey. PSL-NJ is referenced a scant number of times in the eight-two (82) paragraph Complaint, Compl. ¶¶ 9, 10, 24, 67, 71, and only twice in the factual background section, Compl. ¶¶ 24, 67.

No alleged actions occurring in connection with events at the protest are attributed to PSL-NJ, much less any allegations of the necessary elements for a FACE Act violation by PSL-NJ, including physical force, threats of physical force, or intentionally placing a person in reasonable apprehension of bodily harm. Defendant PSL-NJ does not suggest any credibility to the conclusory allegations and assertions (which are also belied by video) alleged against other defendants but addresses in this Motion to Dismiss that which is pled against it.

On April 11, 2026, 194 days after this action was filed, the Government served two individuals living in Florida who were not affiliated with PSL-NJ let alone "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process" as required by the Federal Rules of Civil Procedure, Fed. R. Civ. P. 4(h)(1)(B), or "an officer or managing agent" as required by the New Jersey Rules of Civil Procedure, N.J. R. Civ. P. 4:4-4, and then filed an affidavit of service in this court. *See* Aff. of Service (ECF No. 93). Undersigned counsel conferred with counsel for the Government and accepted service on behalf of PSL-NJ in order to facilitate a decision on the defendants' dispositive motions to dismiss.

Where applicable to it, PSL-NJ joins and incorporates by reference the arguments made by its co-defendants in their motions to dismiss this Complaint rather than restate all arguments here. PSL NJ writes separately to address those facts and issues specifically related to it.

I.      **Allegations Against PSL-NJ in the Complaint**

The sole count against PSL-NJ, an alleged violation of the FACE Act, identifies the offending conduct to be that "PSL . . . promoted the November 13, 2024, protest." Compl. ¶ 71.

The "factual background" section of the Complaint spans fifty-two paragraphs. Within this range of paragraphs, PSL-NJ is referenced in only two. Compl. ¶¶ 24, 67.

The Complaint, paragraph 24, avers that "Defendant[] PSL . . . [was] posting on social media, calling for supporters to gather on November 13, 2024, near Glick's home to protest the event. The solicitation for protestors was distributed via interstate commerce through social media platform, Instagram." Compl. ¶ 24.

The Government does not identify with specificity the social media post PSL is alleged to have made however it includes in the next paragraph a post attributed to co-defendant American Muslims for Palestine New Jersey (AMP NJ) which also bears a logo representing PSL-NJ. *See* Compl. ¶ 25. As set forth in the Complaint, paragraph 25, that post reads: "No business on stolen land / Protest land theft in our backyard / Intersection of Ellis St. & Forest Ave. West Orange, NJ / Wednesday – 6:00 p.m. November 13th." Compl. ¶ 9. There is no reference to Mr. Glick, his home wherever that may be, or even to Congregation Ohr Torah.

The only other reference to PSL-NJ in the "factual background" section does not come until paragraph 67, which alleges in conclusory and pejorative fashion, with zero factual support, that "Defendant[] PSL . . . [has] a history of participating in disruptive and violent demonstrations targeting Jewish institutions, including, upon information and belief, the protest on November 7, 2024 in Bergenfield, New Jersey, demonstrating a pattern of conduct aimed at intimidating Jewish worshipers." Compl. ¶ 67. This is a naked and bare allegation, pejorative and inflammatory, impressively non-specific, and must be disregarded.

In the count section, paragraph 71, the Government vaguely adds a reference that "[b]y urging supporters to mask their identities and target the event, PSL and AMP are responsible for the resulting violations," Compl. ¶ 71, although PSL-NJ is excluded from the earlier particular and specific allegation in the factual background section that they urged protestors to "hide their identities with masks," Compl. ¶ 24.

## II.   Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility threshold requires that a plaintiff plead "factual content—as opposed to mere conclusions— allowing the court to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 218-19 (3d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678)." The Court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Id.* (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)).

> To determine whether a complaint meets the pleading standard, our analysis unfolds in three steps. First, we outline the elements a plaintiff must plead to a state a claim for relief. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth. Finally, we look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief. This last step is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Bistrian,* 696 F.3d at 365 (citations and quotation marks omitted).

## III.   The Elements of a Claim

To state a claim under the FACE Act, a plaintiff must plausibly allege that a defendant "by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person lawfully exercising

or seeking to exercise the First Amendment right of religious freedom at a place of religious worship." 18 U.S.C. § 248(a). The statute's definition of "intimidate" "means to place a person in reasonable apprehension of bodily harm to him- or herself or to another." *Id.* at § 248(e)(3).

As referenced above, none of the averments allege any act of physical force, physical obstruction, or physical intimidation on the part of PSL-NJ.

The FACE Act carves out, protects, and excludes from its scope First Amendment protected speech. The Act explicitly states: "Nothing in this section shall be construed to prohibit any expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment to the Constitution." *Id.* at § 248(d)(1). *But see* Compl. ¶¶ 68–82 (setting out the FACE Act cause of action, where the sole assertion against PSL-NJ, at paragraph 71, is that PSL "promoted the November 13, 2024, protest").

To give effect to this provision and prevent enforcement of the FACE Act from violating the First Amendment, any "threat of force" subject to the FACE Act must meet the constitutional definition of a "true threat." *See, e.g.*, *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal of Life Activists*, 290 F.3d 1058, 1071 (9th Cir. 2002). A true threat is "a statement which, in the entire context and under all circumstances, a reasonable person would foresee would be interpreted by those to whom the statement is communicated as a serious expression of intent to inflict bodily harm on that person." *Id.* No threat is attributed to PSL-NJ in any of the enumerated allegations.

## IV.    The Government's Complaint Fails to State a Claim for Relief

The Complaint fails to set out any legally cognizable theory that PSL-NJ violated the FACE Act. The Complaint's sole particularized factual averment regarding PSL-NJ is that PSL-NJ posted on Instagram calling for supporters to protest the November 13, 2024, Israeli real estate event. Compl. ¶¶ 24–25. The Complaint does not plausibly allege that this post itself directly violated the FACE Act, nor does it plausibly allege that PSL-NJ should be held liable for any alleged violations of others on the basis of this social media post. The Count section

reiterates that the conduct allegedly violative of the FACE Act is that PSL-NJ "promoted" the protest. Compl. ¶ 71. The sheer frivolity of the Government's legal case, combined with the Government's public statements and written policies, make evident that this lawsuit is an unconstitutional attempt to silence and punish PSL-NJ's pro-Palestine speech.

### A. The Government failed to plausibly allege PSL-NJ violated the FACE Act through an Instagram post calling for a protest in a public forum

The Complaint's sole specific factual averment that PSL-NJ took any action whatsoever in relation to the events of November 13, 2024, is that at some point in time, PSL-NJ posted on Instagram calling for supporters to protest a November 13, 2024, Israeli real estate event. Compl. ¶24 (PSL was "posting on social media, calling for supporters to gather on November 13, 2024" and protest the illegal land sale event); Compl. ¶ 25 ("No business on stolen land / Protest land theft in our backyard / Intersection of Ellis St. & Forest Ave. West Orange, NJ / Wednesday – 6:00 p.m. November 13th"); Compl. ¶ 71 (violation of FACE Act alleged because "PSL . . . promoted the November 13, 2024, protest").

The FACE Act expressly excludes from its scope "any expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment to the Constitution." 18 U.S.C. § 248(d)(1).

The challenged expression, an advance call for lawful, public-forum assembly and protest, is clearly protected by the First Amendment. Therefore, no viable claim of a FACE Act violation has been stated.

It cannot be denied that gathering in a public assembly to air grievances is "an exercise of … basic constitutional rights in their most pristine and classic form." *Edwards v. South Carolina*, 372 U.S. 229, 235 (1963).

The challenged speech was allegedly transmitted via social media, on Instagram. Compl. ¶ 24. The U.S. Supreme Court is emphatic that First Amendment protections extend to speech on social media, describing this virtual and digital forum as a modern quintessential public forum.

A fundamental principle of the First Amendment is that all persons have access to

> places where they can speak and listen, and then, after reflection, speak and listen once more. The Court has sought to protect the right to speak in this spatial context. A basic rule, for example, is that a street or a park is a quintessential forum for the exercise of First Amendment rights. *See Ward v. Rock Against Racism*, 491 U. S. 781, 796, 109 S. Ct. 2746, 105 L. Ed. 2d 661 (1989). Even in the modern era, these places are still essential venues for public gatherings to celebrate some views, to protest others, or simply to learn and inquire.
>
> While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace—the "vast democratic forums of the Internet" in general, *Reno v. American Civil Liberties Union*, 521 U. S. 844, 868, 117 S. Ct. 2329, 138 L. Ed. 2d 874 (1997), and social media in particular.

*Packingham v. North Carolina*, 582 U.S. 98, 104 (2017).

A call to engage in lawful assembly in a classic and quintessential public forum, on the designated street intersection, is squarely within the protections of the First Amendment. Indeed, it is at the core of the First Amendment's protections.

A narrow exception exists for First Amendment protections where political advocacy constitutes incitement to imminent lawless action. In *Brandenburg v. Ohio*, the Supreme Court held that "advocacy [that] is directed to inciting or producing imminent lawless action and is likely to produce such action" is not protected by the First Amendment. *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969); *United States v. Fullmer*, 584 F.3d 132, 154 (3d Cir. 2009) ("for the speech at issue in this case to fall outside the purview of the First Amendment, this Court must determine that the speech (1) invited imminent lawlessness and (2) that the imminent lawlessness was likely to occur") (underlining in original)).

The challenged speech, an advance call for lawful public forum assembly and protest, does not meet the *Brandenburg* test to fall outside the scope of First Amendment protection.

First and foremost, for advocacy to be proscribed and to constitute impermissible incitement to imminent violence there is *an indispensable requirement that the actual language used specifically encourage the use of force or unlawfulness*.

PSL-NJ's alleged advance call for lawful, public-forum assembly to protest does not reference, expressly or implicitly, any use of force or unlawful conduct. There is not a single

word that can be plausibly argued constituted a call for violence. Therefore, these words are not outside the scope of First Amendment protection. There can be no FACE Act violation arising from PSL-NJ's alleged verbiage, which is First Amendment-protected, promoting a lawful public forum assembly.

The call for a protest occurred at an unspecified date obviously in advance. It is an advance and non-imminent call for lawful protest assembly. There is no call for imminent action of any sort presented, much less advocacy of imminent violent or unlawful conduct. The advance call for a lawful protest was remote or virtual. No person nor group of persons was being exhorted to *any* imminent particular action whatsoever, much less imminent violent action. *See Hess v. Indiana*, 414 U.S. 105, 108–09 (1973) (a protestor's loud expression amidst an agitated crowd vocalized at a street protest that "we'll [unlawfully] take the fucking street again" was protected speech; since the "statement was not directed to any person or group of persons, it cannot be said that he was advocating, in the normal sense, *any* action.") (italics added)); *Bible Believers v. Wayne County*, 805 F.3d 228, 245 (6th Cir. 2015) ("speech that fails to specifically advocate for listeners to take 'any action' cannot constitute incitement.") (quoting *Hess*, 414 U.S. at 109)).

It is fatal to the Government's claim of a FACE Act violation that PSL-NJ's challenged expression does <u>not</u> contain any call to violent or unlawful action and is squarely within First Amendment protections.

The Government, in its count section, alleges in conclusory fashion that the call for a lawful protest challenging the land sale can be proscribed because "PSL . . . promoted the November 13, 2024, protest, knowing that it would foreseeably lead to violence and intimidation." Compl. ¶ 71. The second half of this averment is wholly conclusory and must be disregarded. Regardless, this suggests that the Government might contend that expression that does <u>not</u> call for imminent violence or unlawful conduct could still be actionable on the basis that its *effect* on unknown third-party listeners foreseeably resulted in violence or unlawful conduct. (PSL-NJ does not suggest that there was any protestor violence, given that the Complaint describes how Moshe Glick and his colleague violently attacked protestors notwithstanding that

there were many police available had there been a need.)

The argument has been rejected that speech can be sanctioned because it may foreseeably encourage others to use force. The *Brandenburg* doctrine is applied strictly to protect and permit speech. Where Donald Trump, responding to protestors, ordered officials to "[g]et 'em out of here" that speech remained protected even where the court found that his words foreseeably led to use of violence against those protestors. "Trump's words may *arguably* have had a tendency to encourage unlawful use of force, but they did not specifically advocate for listeners to take unlawful action and are therefore protected." *Nwanguma v. Trump*, 903 F.3d 604, 610 (6th Cir. 2018) (citing *Brandenburg).* Trump's words expressly contemplated and urged use of force and yet remained protected. The alleged expression by PSL-NJ has no reference, implicitly or explicitly, to violence, force, or unlawful conduct. There is no intent by PSL-NJ to encourage violence.

If the Government's possible argument were accepted that lawful and core political speech calling for lawful public forum assembly can be sanctioned, this will be death knell for any calls to engage in lawful assembly and protest. This appears to be the Government's intent, at least for political viewpoints with which this administration disagrees.

A FACE Act violation requires: "force," "threat of force," or "physical obstruction."18 U.S.C. § 248(a). As a social media post cannot constitute force or physical obstruction, it could only be analyzed at best as a "threat of force." As above, any "threat of force" subject to the FACE Act must meet the constitutional definition of a "true threat." *Planned Parenthood of Columbia/Willamette, Inc.,* 290 F.3d at 1071; *see also Counterman v. Colorado*, 600 U.S. 66, 87 (2023) (holding that true threats must be made with at least a mens rea of recklessness to be actionable under the First Amendment).

The government does not aver that the PSL engaged in a "true threat," nor could the Instagram post cited by the Government be interpreted to constitute a "serious expression of intent to inflict bodily harm." None of this language is threatening or violent let alone evincing an intent to inflict bodily harm.

Further, the Government's cited Instagram post does not have anything to do with religious exercise at a place of religious worship. *Cf.* 18 U.S.C. § 248(a). The post calls for supporters to assemble at the intersection of two roads—a public forum—to protest a real estate sale selling land in occupied Palestinian territory. Compl. ¶ 25 (ECF No. 1). There is no reference to a place of religious worship in the alleged call by PSL-NJ for persons to lawfully assemble at a designated public intersection on public space. Political expression that protests an illegal land sale of occupied territory cannot be recast as a call to interfere with persons "lawfully exercising or seeking to exercise the First Amendment right of religious freedom," as the call has nothing to do with religious expression. Internationally condemned territorial expropriation of occupied territory cannot be immunized from verbal dissent or challenge merely because the challenged actors invoke historic or religious faith as a motivation for the illegal transfer of occupied land.

In the only other reference to PSL-NJ in its "factual background" section, the Government baselessly (and falsely) claims in conclusory fashion that PSL-NJ has a "history of participating in disruptive and violent demonstrations targeting Jewish institutions, including, upon information and belief, the protest on November 7, 2024, in Bergenfield, New Jersey, demonstrating a pattern of conduct aimed at intimidating Jewish worshipers." Compl. ¶ 67. This paragraph is an empty smear and is not backed up by a single factual detail and must be disregarded per *Bistrian*'s three-step analysis.

The Government does not provide any factual basis for its allegations of past "disruptive and violent demonstrations targeting Jewish institutions." Compl. ¶ 67. The Government does not actually allege what misconduct occurred at the Bergenfield protest or any other demonstration. The vague invocation of the adjectives "disruptive and violent" does not constitute a well-pled allegation. Moreover, with the exception of pointing to a single protest in Bergenfield, the Government does not state when or where these alleged multiple demonstrations occurred. These allegations are "'naked assertion[s]' devoid of 'further factual enhancement'"

that do not suffice to state a claim and which are to be peeled away and disregarded pursuant to *Bistrian*. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Similarly, the Government states PSL-NJ has an alleged "history of participating" in such protests without a single allegation regarding any action PSL-NJ took relating to that November 7, 2024, protest or any other protest. Compl. ¶ 67. "Participate" is a vague term that, without more, does not plausibly state a claim. There is no explanation of what PSL-NJ's alleged "participation" entailed. The Government refers to a "pattern of conduct," but the Government does not state what PSL-NJ's alleged conduct actually was.

In any case, the Government's unsupported allegations of violence at past protests could not transform a social media post about a separate protest into a true threat. *See Helman v. Codepink Women for Peace*, No. 2:24-cv-05704-SVW-PVC, 2025 U.S. Dist. LEXIS 157027, at *17 (C.D. Cal. Aug. 13, 2025) ("PYM's prior violent and disruptive protests also do not add sufficient context to make PYM's social media post a threat. Here, because the plain language of PYM's statement contains no threat, its potential history of violence is irrelevant—that a person has committed violence once does not necessarily mean that everything they say in the future will be violent or threatening.").

PSL-NJ's alleged social media post is plainly political speech and a call for a political assembly—quintessential, protected First Amendment activity that expressly does not constitute a FACE Act violation.

To allow this case to proceed would allow the Government or a private party to drag any individual or organization into court because of a social media post sharing information about a protest. Such an abuse of the FACE Act is inconsistent with the plain text of the Act and a grave threat to fundamental First Amendment rights to speech and assembly.

### B. The Government's remaining statements regarding PSL-NJ and "Defendants" should be disregarded as conclusory

The additional references to PSL-NJ in the Complaint outside of the factual background section are equally scant, conclusory, lacking in particularity and explicitly reference protected

First Amendment activity and make pejorative and factually unsupported characterizations of such activity. The Complaint's other references to PSL-NJ are not accompanied by specific factual averments and thus should be disregarded. *See Bistrian*, 696 F.3d at 365; Compl. ¶ 9 (PSL-NJ is "a political organization that organizes protests" and "organized and promoted a violent protest at Congregation Ohr Torah" and "call[ed] for supporters to gather and disrupt the religious event"); Compl. ¶ 71 ("PSL . . . promoted the November 13, 2024, protest, knowing it would foreseeably lead to violence and intimidation, like the November 7th Bergenfield protest a week prior. By urging supporters to mask their identities and target the event, PSL and AMP are responsible for the resulting violations."). *But see* Compl. ¶25 (no reference to masks contained in the Government's cited AMP social media post.). These naked assertions, along with the threadbare paragraphs described above, constitute the totality of the Government's pleadings as to PSL-NJ.

These highly generalized, conclusory statements can be disregarded because of the Government's failure to "plead 'sufficient factual matter to show that the claim is facially plausible.'" *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). There are zero well-pled factual averments regarding PSL-NJ that support any of these conclusory statements.

In addition to the few mentions of PSL-NJ, the Complaint includes various assertions that "Defendants" engaged in certain conduct. *See* Compl. ¶¶ 1, 3, 69, 79–81. Such "impermissible group pleadings" do not satisfy a plaintiff's obligation to "give each Defendant 'fair notice of what the claim is and the grounds upon which it rests.'" *Mattiaccio v. Scharfenberg*, No. 23-23037 (GC) (TJB), 2025 U.S. Dist. LEXIS 128973, at *37 (D.N.J. July 8, 2025) (quoting *Twombly*, 550 U.S. at 555); *see also D. W, by Renaud v. N.J. Div. of Child Protection Permanency*, No. 21-15789, 2023 U.S. Dist. LEXIS 90604, at *5 (D.N.J. May 24, 2023) ("[C]ourts should not consider any group pleadings that cannot reasonably be attached to an individual defendant due to improper vagueness."); *Murray v. Cty. of Hudson*, No. 17-2875 (JMV) (MF), 2018 U.S. Dist. LEXIS 100357, at *13 (D.N.J. June 14, 2018) ("Plaintiff does

include some factual allegations specific to Aviles. . . However, it is unclear how these factual allegations relate to the counts brought by Plaintiffs against "Defendants" as a whole."). Thus, in evaluating PSL-NJ's motion to dismiss, the court should evaluate the specific allegations regarding PSL-NJ and discount the impermissible group pleadings.

### C. If the Government is seeking to allege that PSL-NJ is liable for alleged actions committed by others, it has failed to plausibly so allege

The Government has not articulated any legal basis by which PSL-NJ could be accountable for FACE Act violations allegedly committed by third parties. This is unsurprising, because there is no theory of liability under which PSL-NJ can be held liable. Failing to factually allege that the PSL-NJ engaged in any unlawful act itself, the Government references foreseeability at points in its Complaint. Compl. ¶ 71 ("foreseeably lead to violence and intimidation."). To the extent that this may be what is intended, the Government fails to identify any legal theory under which PSL-NJ can be held liable for others' alleged FACE Act violations because of the purportedly "foreseeable" consequences of its social media post. *See supra* at 10-12. The concept of liability for others' violations as a "foreseeable" result of lawful, constitutionally protected speech is directly contrary to the entire body of First Amendment jurisprudence. *See, e.g.*, *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 918 (1982). And as for more traditional vicarious liability, the Government has made no effort to plead facts sufficient to satisfy that doctrine's requirements.

> The government may not prohibit speech because it increases the chance an unlawful act will be committed "at some indefinite future time." *Hess* v. *Indiana,* 414 U.S. 105, 108, 38 L. Ed. 2d 303, 94 S. Ct. 326 (1973) *(per curiam)*. The government may suppress speech for advocating the use of force or a violation of law only if "such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg* v. *Ohio,* 395 U.S. 444, 447, 23 L. Ed. 2d 430, 89 S. Ct. 1827 (1969) *(per curiam)*.

*Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253 (2002)

If the Government's position is that a party should know that their First Amendment-protected social media post calling for a protest would lead to a FACE Act violation, it is a dead

end. "[N]othing in the text of the FACE Act supports it. More fundamentally, imposing liability on that basis would almost certainly violate the First Amendment, which forbids punishing speech on a negligence standard." *Helman*, 2025 U.S. Dist. LEXIS 219090, at *39-40 n. 11 (citing *Counterman*, 600 U.S. at 87). This is because government regulation of speech that is traditionally unprotected by the First Amendment, such as true threats or incitement to unlawful activity, require a culpable mental state on the part of the speaker to prevent the unconstitutional chilling of speech. *See Counterman*, 600 U.S. at 74. These mens rea requirements "reduc[e] an honest speaker's fear that he may accidentally [or erroneously] incur liability" and "provide[s] 'breathing room' for more valuable speech." *Id.* at 75 (quoting *United States v. Alvarez*, 567 U.S. 709, 733 (2012)). A true threat must be made recklessly to be punished—either civilly or criminally. *Id.* at 81. Incitement to unlawful activity must hurdle an even higher bar: only intentional incitement may be punished without running afoul of the First Amendment. *See id.* at 81 (citing *Hess*, 414 U.S. at 109). *See supra* at 9–11. Here, perhaps because it is the Government's *intention* to chill speech, it appears to disregard these well-established constitutional safeguards.

Nor has the Government pled so much as a single fact that could support a theory of vicarious liability. "[T]raditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment." *Meyer v. Holley*, 537 U.S. 280, 285 (2003). "An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of an agent." *AT&T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1434 (3d Cir. 1994) (quoting *Sears Mrtg. Corp. v. Rose*, 634 A.2d 74, 79 (N.J. 1993)); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 120 (3d Cir. 2013).

The Government's unsupported, conclusory assertions do not plausibly support any theory under which PSL-NJ could be held liable for the alleged misconduct of others.

**D.  The Government's abuse of the FACE Act to punish viewpoint with which it disagrees, specifically here pro-Palestine speech, violates the First Amendment and is a vindictive prosecution**

This lawsuit is an affront to the First Amendment and has been overtly brought for an improper purpose. The Department of Justice is abusing its authority to carry out an ideological agenda and punish viewpoints with which it disagrees. By filing this lawsuit, the Government has engaged in blatant viewpoint discrimination using the power of the state to bring meritless litigation in order to censor and punish based on viewpoint. This lawsuit is an unconstitutional act to suppress freedom of speech and is dangerous to democratic norms.

The Trump administration's Department of Justice, speaking through lead counsel in this lawsuit, has declared its intent to use this Complaint and the FACE Act to "dismantle" and to shut down the activities of groups who protest and advocate for Palestinian human rights, specifically identifying the Party for Socialism and Liberation and American Muslims for Palestine as targets of this Government operation. Marc Rod, *DOJ aims to 'dismantle' groups behind synagogue protests, Harmeet Dhillon says*, Jewish Insider (Feb. 10, 2026), https://jewishinsider.com/2026/02/department-of-justice-synagogue-protests-harmeet-dhillon/ [https://perma.cc/9SQ2-DUR8] (quoting lead counsel, Assistant Attorney General Harmeet Dhillon, head of the DOJ Civil Rights Division, proclaiming the Government's intent to use the FACE Act and other mechanisms to "dismantle" the referenced groups). Dhillon further complained that targeted organizations also protest against the unlawful misconduct of Immigration and Customs Enforcement. *Id.*

Reflecting a penchant for inflammatory and baseless accusations as well as viewpoint-based discrimination, Dhillon attacked these groups as engaging in "domestic terrorism" referencing this very case (where the allegation is that PSL-NJ called for a lawful, public forum assembly and protest), and boasted that this pernicious abuse of the FACE Act in the instant case has "paved the way" to dismantle these and other groups engaged in protest activity challenging human rights violations in the occupied territories or challenging illegal ICE operations. Basically, any group that engages in protest expressing viewpoint challenging illegal conduct supported by the current administration is to be targeted by the Department of Justice in overt

suppression of First Amendment rights.

The irregularity of this litigation is manifest. The architect of the lawsuit, former DOJ lawyer Jonathan Gross, openly stated that he brought this lawsuit in order to interfere with the New Jersey prosecution of Moshe Glick for Glick's violent assault against protestors in the underlying incident. Faygie Holt, *Attorney and Rabbi, Former DOJ's Jonathan Gross Defends Civil Rights*, Jewish Link (Apr. 30, 2026), https://jewishlink.news/attorney-and-rabbi-former-dojs-jonathan-gross-defends-civil-rights/ [https://perma.cc/7JZ5-Y4BY].  In researching how to interfere with that prosecution he determined that he could weaponize the FACE Act to have the Trump administration's Department of Justice charge the protestors and derail the prosecution of Glick, admitting "it [the FACE Act] had never been used that way." The Complaint itself describes in detail how, notwithstanding the ample presence at the scene of law enforcement, Moshe Glick was offended at the loud blowing of a vuvuzela near him and so he violently took matters into his own hands, physically assaulting and battering protestors. Compl. ¶¶ 44 – 46 (Glick engages in assault), ¶ 49 (Silberman assaults protestors with pepper spray), ¶ 60 (Glick uses a flashlight as a weapon).

Dhillon and Gross conflate lawful expression challenging human rights violations by or within Israel or the occupied territories as anti-Semitic. *Id*. Courts have rejected the false conflation of criticism of Israel and anti-Semitism that is the animating theory behind this proposition. *StandWithUs Ctr. for Legal Just. v. Mass. Inst. of Tech.*, 158 F.4th 1, 18 (1st Cir. 2025) ("We therefore reject plaintiffs' claimed right to stifle anti-Zionist speech by labeling it inherently antisemitic."); *Canel v. Art Inst. of Chi.*, No. 23 CV 17064, 2026 U.S. Dist. LEXIS 57802, at *30 (N.D. Ill. Mar. 19, 2026) ("The Court declined to conflate criticisms of Israel's government or promotion of the Palestinian cause with antisemitism."); *Landau v. Corp. of Haverford Coll.*, No. CV 24-2044, 2025 WL 35469, at *2 (E.D. Pa. Jan. 6, 2025) (rejecting the "proposition that any anti-Israel speech is intrinsically antisemitic, because reasonable people acting in good faith can challenge decisions of the Israeli government without harboring antisemitic views").

The Government's weaponization of the FACE Act to target pro-Palestine protesters is

especially notable in the context of its January 2026, Department of Justice memorandum which announced a discriminatory policy by which FACE Act actions involving *anti-abortion* protests "will be permitted only in extraordinary circumstances." Department of Justice, Memorandum for Kathleen Wolfe, Supervisory Official of the Civil Rights Division, FACE Act Charging Policy (Jan. 24, 2026), https://www.justice.gov/media/1386461/dl?inline. As no such limitation applies to FACE Act cases regarding protests on any other topic, the January memorandum is an express viewpoint discrimination policy, in violation of the First Amendment. *Nat'l Rifle Ass'n of Am. v. Vullo,* 602 U.S. 175, 187, (2024) ("At the heart of the First Amendment's Free Speech Clause is the recognition that viewpoint discrimination is uniquely harmful to a free and democratic society.")

In keeping with this viewpoint discrimination policy, this suit uses the Freedom of Access to Clinics Act against individuals and organizations expressing viewpoints the administration seeks to suppress while, simultaneously, making clear that it will not be similarly deployed where the challenged speakers or protestors articulate an anti-choice political viewpoint.

The First Amendment and the FACE Act, itself, preclude the use of the FACE Act as is advanced against PSL-NJ in this complaint. That the weaponization of the FACE Act is expressly targeting disfavored viewpoints is all the more anathema to democracy.

If tolerated, this suit would normalize the weaponization of federal enforcement power to chill and punish First Amendment-protected political speech and assembly with which it disagrees. Accordingly, the Court should dismiss the Complaint with prejudice and thereby reaffirm that the FACE Act cannot be repurposed as a tool of viewpoint-based retaliation but must be applied only within its statutory limits and consistent with constitutional constraints, the ordinary application of which require the dismissal of the instant Complaint.

## V.    Leave to Amend Should Be Denied and This Case Should Be Dismissed with Prejudice

A district court has discretion to dismiss a complaint with prejudice and without leave to amend where "it is apparent from the record that (1) the moving party has demonstrated undue

delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000). Amendment is futile when "the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). The decision to deny leave to amend is within the sound discretion of the district court. *Cureton v. NCAA*, 252 F.3d 267, 272 (3d Cir. 2001). This case was brought in bad faith and any attempt to amend the Government's Complaint as to PSL-NJ would be futile.

Dismissal with prejudice is appropriate because this highly irregular suit was brought in bad faith, with motives of harassing, punishing and burdening PSL-NJ with the obligations of defense, solely for expressed viewpoint. *Manhart v. WESPAC Found., Inc.*, No. 24-CV-08209, 2025 WL 2257408, at *18 (N.D. Ill. Aug. 7, 2025) (dismissing with prejudice lawsuit targeting pro-Palestine activists based on a determination that it was brought for the improper purpose of harassment). This lawsuit is an attempt to punish speech that the Government does not like. It is an act of lawfare and an effort to hale into court every organization that is conceivably associated with a protest that the Government disfavors, the victim of a state-prosecuted crime committed by opponents of the protest and the witnesses to that crime. It is an aggressive assault against the First Amendment coupled with overt witness intimidation brought by a lawless Department of Justice. The very act of bringing this frivolous lawsuit against PSL-NJ to punish its disfavored viewpoint violates the First Amendment. *See supra* at 17–20. As such, there are no facts the government could plead that would cure this constitutional infirmity and allow its Complaint to survive a motion to dismiss.

There are also no facts the Government could plead that would plausibly support a FACE Act claim against PSL-NJ because the FACE Act simply has not been violated. The Instagram post the Government objects to does not violate the terms of the FACE Act and no amendment to the Complaint will change that. While PSL-NJ is not liable for the events that purportedly occurred at the protest regardless, Defendant Altaf Sharif makes clear in his Motion to Dismiss that the Government's pleadings as to the substantive FACE Act violations allegedly committed

on the night of the protest are false and contradicted by the full body worn camera footage the Government selectively cited. *See* Sharif Mot. to Dismiss at 9–17 (ECF No. 65-1). These defects are so fundamental as to be incurable.

The fact that the Complaint is so facially incapable of meeting the elements of the FACE Act does not matter to the Government. This is a vindictive prosecution based on targeted viewpoint. It is a government-initiated Strategic Litigation Against Public Participation (SLAPP) suit: a meritless lawsuit filed to chill defendants' exercise of First Amendment rights, their expression of a disfavored political view. The archetype of a SLAPP suit is characterized by its lack of merit and the primary objective of burdening the defendant with legal defense costs and the threat of liability. See John C. Barker, *Common-Law and Statutory Solutions to the Problem of SLAPPs*, 26 Loy. L.A. L. Rev. 395, 396 (1993). The function of the SLAPP suit is the suit, itself, and the intended crippling consequences on defendants: tying defendants up in protracted litigation, diversion of resources from activism, delay, expense, distraction, financial risk, and potential ruin just from the cost of litigation. As the Government's attorney herself stated: the purpose of the DOJ's abuse of the FACE Act is to "dismantle" organizations whose viewpoints the government seeks to silence and punish. *See supra* at 17–18.

There is nothing the Government could change about their pleadings that would survive a motion to dismiss because the pleadings are baseless, frivolous, and misleading. This Court should act accordingly.

## VI.    Conclusion

For the foregoing reasons, the Complaint should be dismissed with prejudice.

May 18, 2026                                              Respectfully submitted,

                                                         s/ Amy Greer
                                                         Amy Greer
                                                         agreer@dratellewis.com

                                                         DRATEL & LEWIS

29 Broadway, Suite 1412
New York, New York 10006
(ph): 212-732-0707
(fax): 212-571-3792

s/ *Mara Verheyden-Hilliard*
Mara Verheyden-Hilliard (*pro hac vice*)
mvh@justiceonline.org

s/ *Carl Messineo*
Carl Messineo (*pro hac vice*)
cm@justiceonline.org

s/ *Sarah Taitz*
Sarah Taitz (*pro hac vice*)
sarah.taitz@justiceonline.org

s/ Graham Sternberg
Graham Sternberg (*pro hac vice*)
graham.sternberg@justiceonline.org

PARTNERSHIP FOR CIVIL
JUSTICE FUND
617 Florida Ave. NW
Washington, D.C. 20001
(ph): 202-232-1180
(fax): 202-747-7747

*Counsel for Defendant Party for Socialism
and Liberation New Jersey*