## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *Plaintiff*, <br><br> v. <br><br> PARTY FOR SOCIALISM AND LIBERATION NEW JERSEY; <br><br> AMERICAN MUSLIMS FOR PALESTINE NEW JERSEY; <br><br> TOVA FRY a/k/a TERRY KAY; <br><br> ALTAF SHARIF; <br><br> MATT DRAGON; <br><br> ERIC CAMINS; <br><br> JANE DOE and JOHN DOE, <br><br> *Defendants*. | No. 2:25-cv-16049 <br><br> MOTIONS DATE: July 6, 2026 <br><br> Hon. Katherine S. Hayden, U.S.D.J. |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT PARTY FOR SOCIALISM AND LIBERATION NEW JERSEY'S <u>MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES........................................................................................ ii

INTRODUCTION ......................................................................................................1

FACTUAL BACKGROUND .......................................................................................4

LEGAL STANDARD .................................................................................................6

ARGUMENT .............................................................................................................7

I.      The Complaint Adequately Alleges That PSL-NJ Violated the FACE Act.....7

II.     PSL-NJ's Asserted Defenses Are Unavailing..................................................10

    a.  PSL-NJ's First Amendment affirmative defense fails...............................10

    b.  The Complaint does not improperly rely on a theory of vicarious

    liability....................................................................................................12

    c.  PSL-NJ cannot establish viewpoint discrimination or vindictive

    prosecution .............................................................................................13

CONCLUSION.........................................................................................................16

CERTIFICATE OF SERVICE .................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ..................................................................1, 6

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)..................................................1

*Bohus v. Restaurant.com, Inc.*, 784 F.3d 918 (3d Cir. 2015) ..................................10

*Cnty. of Butler v. Governor of Pennsylvania*, 8 F.4th 226 (3d Cir. 2021) ...............15

*Cureton v. National Collegiate Athletic Ass'n*, 252 F.3d 267 (3d Cir. 2001) ..........16

*Foman v. Davis*, 371 U.S. 178 (1962)........................................................................15

*Helmann v. Codepink Women for Peace*, No. 2:24-cv-05704, 2025 WL 3030582

  (C.D. Cal. 2025) ......................................................................................................12

*Hosanna-Tabor Evangelical Lutheran Church and Sch. v. EEOC*, 565 U.S.

  171(2012)................................................................................................................10

*In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125 (3d Cir. 2016)..................7

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ...............16

*Lake v. Arnold*, 232, F.3d 360 (3d Cir. 2000)...........................................................15

*Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127 (3d Cir. 2018) .......................10

*Manhart v. WESPAC Foundation., Inc.*, 2025 WL 2257408 (N.D. Il. 2025) ..........14

*Minch v. City of Chicago*, 363 F.3d 615 (7th Cir. 2004)...............................................3

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) ......................................12

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008).......................................7

*Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*,

    290 F.3d 1058 (9th Cir. 2002)........................................................................8, 9, 11

*Revell v. Port Auth. of N.Y., N.J.*, 598 F.3d 128 (3d Cir. 2010)................................10

*Slavens v. United States*, 196 U.S. 229 (1905) ........................................................15

*United States v. Dillard*, 795 F.3d 1191 (10th Cir. 2015) .......................................11

*United States v. Kosma*, 951 F.2d 549 (3d Cir. 1991)..............................................10

*United States v. Torquato*, 602 F.2d 564 (3d Cir. 1979)..........................................14

*United States v. Valdez Levy-Armstrong*, et al., No. 26-cr-00025 (D. Minn. Jan. 29,

    2026) .....................................................................................................................14

**Statutes**

18 U.S.C. § 248 ............................................................................................................1

18 U.S.C. § 248(a)(2).....................................................................................................1

18 U.S.C. § 248(e)(2)..................................................................................................14

**Other Authorities**

H.R. Rep. No. 103-488 (1994)......................................................................................8

**Rules**

Fed. R. Civ. P. 10(c) .....................................................................................................1

Fed. R. Civ. P. 12(b)(6) .............................................................................................6, 7

Fed. R. Civ. P. 15(a)(2)...............................................................................................17

iii

# INTRODUCTION[1]

Defendants, including Defendant Party for Socialism and Liberation New Jersey (PSL-NJ), organized an unlawful protest against a Jewish religious event that, with predictable inevitability, turned violent and prevented worshipers from exercising their First Amendment rights. .  The United States has alleged that that conduct violates the FACE Act, 18 U.S.C. § 248.

The FACE Act prohibits the use of force, threats of force, or physical obstruction to intentionally injure, intimidate or interfere with or attempt to injure, intimidate or interfere with "any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship."  18 U.S.C. § 248(a)(2).  The United States's Complaint, Dkt. 1, pleads sufficient facts which, when accepted as true, "'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)), covering all the statutory elements regarding the actions of PSL-NJ and, as previously argued by all PSL-NJ's co-defendants.  *See* Dkt. 82.

The United States further alleges that PSL-NJ and co-defendants' coordinated efforts caused actual intimidation and interference with religious worship because Jewish worshipers fled or refrained from attending the event at Congregation Ohr

---

[1] The United States incorporates herein the facts and argument from its previous Opposition to Defendants' Motions to Dismiss, Dkt. 82.  *See* Fed. R. Civ. P. 10(c).

1

Torah out of fear and reasonable apprehension of bodily harm to themselves and others. The foreseeable physical assaults on worshipers proved that the fear was entirely justified. This disruption by a mob of protestors followed efforts by the defendants to intimidate the event's organizer into cancelling the event, attempting to shut the door on Ohr Torah's worshipers. These properly pled allegations clearly show a violation of the FACE Act.

Specifically, the United States alleges that through PSL-NJ's postings on social media, it, along with Defendant American Muslims for Palestine New Jersey (AMP-NJ), organized protests that predictably erupted into a melee, preventing the religious event from going forward. The United States has alleged that Defendant PSL-NJ: (1) promoted a protest against a Jewish religious event at a house of worship on November 13, 2024, "knowing it would foreseeably lead to violence and intimidation, like the November 7th Bergenfield protest a week prior;" (2) was "motivated by the religious nature of the event and the Jewish identity—both as a race and religion—of the worshipers;" and (3) "caused actual intimidation and interference because individuals refrained from attending the event out of fear and reasonable apprehension of bodily harm to themselves and others." Compl., Dkt. 1, ¶¶ 71, 79, 80. As a result of PSL-NJ's alleged actions, on November 13, 2024, an angry mob of protesters trespassed on a synagogue's property, disrupted a worship

service, assaulted at least two worshipers, and prevented other worshipers from safely approaching the synagogue and attending the religious event.

PSL-NJ attempts to dismiss this action fail to properly challenge the legal sufficiency of the Complaint or take account of the fact that courts "owe a plaintiff's complaint a generous construction in deciding whether it states a claim on which relief can be granted." *Minch v. City of Chicago*, 363 F.3d 615, 630 (7th Cir. 2004). Instead, PSL-NJ improperly seeks to have this Court adjudicate disputed facts at the motion to dismiss stage. The Court should reject these efforts.

## FACTUAL BACKGROUND

This case arises out of "a coordinated effort to intimidate and disrupt Jewish worshipers at a religious event held at the synagogue Congregation Ohr Torah, in West Orange, New Jersey." Compl. ¶ 1, Dkt. 1. Moshe Glick, a Jewish man, organized a religious event in his home, originally scheduled for November 13, 2024. *Id.* ¶ 17. The event was supposed to promote "the Jewish obligation to live in the Land of Israel, a tenet of Jewish faith." *Id.* It was designated "as an Israel real estate fair and 'Ruach' (Spiritual) event." *Id.* News of the gathering reached anti-Israel individuals and organizations. On November 4, 2024, Defendant Tova Fry, a/k/a Terry Kay, delivered a letter to Dr. Glick's home, frivolously threatening legal action should Dr. Glick fail to cancel his gathering. *Id.* ¶ 20.

After receiving the letter, Dr. Glick discovered social media posts "publicizing his home address as the location of a planned protest." Compl. ¶ 23. Dr. Glick knew that prior protests, including one organized by AMP-NJ, had become violent and threatening toward Jews. *Id.* Dr. Glick provided the threatening letter to his private security team, who discovered that PSL-NJ and AMP-NJ were rallying supporters on social media to gather near Dr. Glick's home to protest the religious event. *Id.* ¶ 24-25, Image 2 (showing the "PSL New Jersey" seal on the screenshot of the AMP-NJ social media post). In their social media posts, PSL-NJ and AMP-NJ urged their supporters to wear masks to hide their identities. *Id.* ¶ 71. These two entities

4

promoted the November 13, 2024, protest, "knowing it would foreseeably lead to violence and intimidation." *Id.* As alleged in the Complaint, PSL-NJ and AMP-NJ have a history of organizing disruptive and violent demonstrations targeting Jewish institutions. *Id.* ¶ 67.

Based on the threats that Defendants PSL-NJ and AMP-NJ generated against Dr. Glick and his home, Dr. Glick's security team determined that they could not keep him or his fellow congregants safe in the home where the religious event was initially slated to occur. *Id.* ¶ 27. As a result, Dr. Glick moved the religious gathering from his home to Congregation Ohr Torah, a nearby synagogue. *Id.* At Ohr Torah, the spiritual gathering related to living in the Israel integrated into the other religious events occurring at the synagogue on November 13, including prayer, a religious memorial service for a rabbi who had recently passed away, a sermon, religious songs with biblical verses, prayerful dancing, and a festive kosher barbecue in the synagogue's parking lot. *Id.* ¶ 28.

As PSL-NJ had urged, on November 13, "approximately 50 protestors, many wearing masks to conceal their identities and carrying vuvuzelas," which are "long thin horns capable of causing permanent noise-induced hearing loss," "gathered at an intersection near Glick's home." *Id.* ¶¶ 30-31. After "learning the event had moved to Congregation Ohr Torah, the protestors marched toward the synagogue, passing Jewish homes and shouting at residents." *Id.* ¶ 32. Like previous PSL-NJ-

5

and-AMP-NJ-organized protests, *id.* ¶ 67, the protesters participating in the November 13, 2024, West Orange, NJ protest became violent, trespassing onto synagogue property, *id.* ¶ 43, and attacking individual worshipers, including Dr. Glick, *id.* ¶¶ 43-48, and David Silberberg, *id.* ¶¶ 52-60.

The mob's incursion onto synagogue property and violence brought together by PSL-NJ and AMP-NJ caused several individuals to refrain from attending the religious event out of fear. *Id.* ¶ 65. The mob's "unpermitted protest obstructed the public sidewalk on one side of the synagogue, rendering passage for worshipers unreasonably difficult and hazardous. Worshipers would have had no choice but to overcome the obstruction by either walking through the angry mob or by risking their safety by walking on the busy street during heavy vehicular traffic and low visibility during the evening hours." *Id.* ¶ 66.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face," *i.e.*, to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quotation marks and citations omitted). In deciding a Rule 12(b)(6) motion to dismiss, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading

of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation omitted). "[A] court considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may consider only the allegations contained in the pleading to determine its sufficiency." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016).

## ARGUMENT

PSL-NJ's Motion to Dismiss fails because: (1) the Complaint adequately alleges that PSL-NJ violated the FACE Act, and (2) PSL-NJ's asserted defenses—misplaced assertions of First Amendment protections of its unlawful conduct, improper theory of vicarious liability, and baseless claims of vindictive prosecution—also are unavailing.

## I.    The Complaint Adequately Alleges That PSL-NJ Violated the FACE Act.

The FACE Act provides that whoever "by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship" is subject to injunctive relief and faces civil penalties. 18 U.S.C. § 248(a)(2). The Act reflects Congress's "profound concern . . . over private intrusions on religious worship, and the judgment of the Congress that the exercise of the right to religious liberty deserves federal protection." H.R. Rep. No. 103-488

at 9 (1994). The United States has alleged that PSL-NJ violated the FACE Act by using threat of force to interfere with Jewish worshipers lawfully exercising their right of religious worship at Congregation Ohr Torah.

The Complaint alleges that PSL-NJ, along with AMP-NJ, used threat of force by "posting on social media, calling for supporters to gather on November 13, 2024, near Dr. Moshe Glick's home to protest the event." Compl. ¶ 24. Image 2 shows PSL-NJ's logo on the post publicizing the location, date, and time of the protest at Dr. Glick's home. Dr. Glick's home, where the November 13th event was initially scheduled and advertised to be held, has a room designated for communal prayer and study, containing a Jewish library with prayer books and sacred texts, where he has hosted numerous prayer groups. *Id.* ¶¶ 1, 17. The Complaint further alleges that PSL-NJ has a history of organizing "disruptive and violent demonstrations targeting Jewish institutions . . . demonstrating a pattern of conduct aimed at intimidating Jewish worshipers." *Id.* ¶ 67. The advertising for the November 13th protest continued even after a separate PSL-NJ protest in Bergenfield turned violent. *See id.* ¶¶ 67, 71.

The United States has alleged that PSL-NJ's posts advertising its planned protest were not protected political speech but instead were true threats. The Ninth Circuit's opinion in *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058 (9th Cir. 2002) (en banc), is instructive. That Court

8

held that the actions of anti-abortion activist organizations in publicly disclosing, through "Guilty" posters and a website, names and addresses of abortion providers, constituted true "threats of force" within the meaning of FACE, even though neither the posters nor the web site "contain[ed] any language that [wa]s overtly threatening." *Id.* at 1085. As the Court explained, "the language itself is not what is threatening. Rather, it is . . . the context of the poster pattern—poster followed by murder—that constitutes the threat." *Id.*

The same logic applies here. PSL-NJ organized both the West Orange event and a similar violent event in Bergenfield, New Jersey. *Id.* ¶¶ 25-26, Image 2 (depicting Defendant PSL-NJ's logo as co-organizer of protests). The Complaint alleges that PSL-NJ "promoted the November 13, 2024 protest, knowing it would foreseeably lead to violence and intimidation, like the November 7th Bergenfield protest a week prior." Compl. ¶¶ 71. Further, the Complaint alleges that PSL-NJ urged protest participants to wear masks to hide their identities, making PSL-NJ responsible for the resulting FACE Act violations. *Id.* This call for protesters to wear masks to hide their identities in order to escape liability for illegal acts establishes an intent to intimidate or physically obstruct in violation of the FACE Act. And, the Complaint alleged, the protest at Congregation Ohr Torah did, in fact, result in protesters using force, threats, and intimidation upon worshipers, and that these actions were easily foreseeable. *Id.* ¶¶ 36-60. Similarly, masks and other

9

disguises worn by protesters foreseeably and intentionally made the task of identifying protesters more difficult. While PSL-NJ alleges that it was calling for a "lawful, public forum assembly," Mot. 14, at this stage, the Court must assume the truth of the Complaint's allegations and draw all reasonable inferences in favor of the United States. *Revell v. Port Auth. of N.Y., N.J.*, 598 F.3d 128, 134 (3d Cir. 2010).

## II.   PSL-NJ's Asserted Defenses Are Unavailing.

### a.   PSL-NJ's First Amendment affirmative defense fails.

The First Amendment does not require dismissal of this lawsuit. *Contra* Mot. 16. The First Amendment "operates as an affirmative defense to an otherwise cognizable claim." *Hosanna-Tabor Evangelical Lutheran Church and Sch. v. EEOC*, 565 U.S. 171, 195 n.4 (2012). Under the Third Circuit precedent, a dismissal on the basis of an affirmative defense can be obtained only where "the defense is apparent *on the face of the complaint* and documents relied on in the complaint." *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 130 (3d Cir. 2018) (quoting *Bohus v. Restaurant.com, Inc.*, 784 F.3d 918, 923 n.2 (3d Cir. 2015)) (emphasis added).

Whether PSL-NJ's posts are protected speech is a question of fact and not something that is apparent "on the face of the complaint." *Id.* "Whether a speaker's language constitutes a threat is a matter to be decided by the trier of fact." *United States v. Kosma*, 951 F.2d 549, 555 (3d Cir. 1991). *See also Planned Parenthood of*

10

*Columbia/Willamette*, 290 F.3d at 1068 ("Whether any given form of written or oral expression constitutes a true threat . . . is a question for the trier of fact under all of the circumstances."); *United States v. Dillard*, 795 F.3d 1191, 1199 (10th Cir. 2015) ("Because this test involves a fact-intensive inquiry, we have consistently held that whether a defendant's statement is a true threat or mere political speech is a question for the jury.") (quotation marks omitted).  Factors to be considered include "whether the threat was communicated directly to its victim, whether the maker of the threat had made similar statements to the victim in the past, and whether the victim had reason to believe that the maker had a propensity to engage in violence."  *Planned Parenthood of Columbia/Willamette*, 290 F.3d at 1078.  The United States has alleged that Dr. Glick—the victim of PSL-NJ's conduct—construed its social-media posts as a true threat.  His security team believed that they "could not guarantee his safety at his home" and Dr. Glick therefore moved the religious gathering from his home to Congregation Ohr Torah.  Compl. ¶ 27.  That is enough to defeat a First Amendment affirmative defense at this stage.

11

**b. The Complaint does not improperly rely on a theory of vicarious liability.**

The Complaint alleges that PSL-NJ directly violated the FACE Act by promoting a protest, "knowing it would foreseeably lead to violence and intimidation." Compl. at ¶¶ 9, 26, 71. That other parties are also alleged to have violated the FACE Act on November 13, 2024, at Congregation Ohr Torah does not remove or lessen PSL-NJ's liability under the FACE Act.

PSL-NJ may be held liable for its conduct and any harm proximately caused by its conduct. *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 918 (1982) (explaining that First Amendment interests do not prevent liability for losses proximately caused by unlawful conduct). PSL-NJ endorsed and promoted the November 13th protest of a Jewish religious event. Compl. at 8, Image 2. It sought to intimidate Dr. Glick into cancelling the event, thus preventing worshipers from lawfully exercising their First Amendment rights. *Id.* ¶ 24. The Complaint alleges that PSL-NJ knew that its actions would cause violence and intimidation, like the November 7th Bergenfield protest a week prior. And by urging supporters to mask their identities and target the religious event, PSL-NJ proximately caused, and is therefore responsible for, the resulting FACE Act violations. *Id.* ¶ 71. *See Helmann v. Codepink Women for Peace*, No. 2:24-cv-05704, 2025 WL 3030582, at *15 (C.D. Cal. 2025) (quoting 18 U.S.C. § 248(e)(2)) (finding that defendant's social media posts, in the context of symbols historically used "to identify Jew and Jewish targets"

12

satisfied the FACE Act's second and third elements by "[i]ncit[ing] others to disrupt access to the Synagogue—thereby 'restrict[ing] a person's freedom of movement'").

PSL-NJ argues that it cannot be held liable for the acts of third parties. But the United States has made no such argument. Rather, the United States alleges that PSL-NJ itself, through its own actions, violated the FACE Act. Compl., ¶¶ 24, 67, 71. It is these actions for which the United States seeks to hold PSL-NJ liable. The United States's Complaint plainly and sufficiently alleges that PSL-NJ's own actions violate the FACE Act. Therefore, PSL-NJ's argument that the United States has not adequately pleaded vicarious liability is entirely beside the point.

### c. PSL-NJ cannot establish viewpoint discrimination or vindictive prosecution.

At the end of its brief, PSL-NJ accuses the United States of engaging in vindictive prosecution and seeks an order denying the United States leave to amend its Complaint. *See* Dkt. 103-1 at 20-24. Both arguments are baseless and frivolous.

PSL-NJ's argument that the United States is engaged in vindictive prosecution is meritless. PSL-NJ's characterization of this litigation as a "highly irregular suit" brought in bad faith, with motives of harassing, punishing and burdening PSL-NJ with the obligations of defense, "solely for expressed viewpoint," is advanced without evidence (or is based on extrinsic evidence).

Under the governing Third Circuit precedent, a defendant is not even entitled to an evidentiary hearing, much less an outright dismissal of a case unless he adduces

13

"credible evidence . . . that the government intentionally and purposefully discriminated against the defendant by failing to prosecute other similarly situated persons." *United States v. Torquato*, 602 F.2d 564, 570 (3d Cir. 1979). PSL-NJ has not even bothered to identify "similarly situated persons," much less show that the government failed to treat them in a comparable manner.[2] PSL-NJ's claim of vindictive prosecution thus fails at the outset.

PSL-NJ's citations to statements made by a former Department of Justice attorney as evidence as to the supposed "true purpose" of this suit, even if they could be considered,[3] do not show that the suit was brought in bad faith. This suit was

---

[2] To the contrary, the Department of Justice has indicted and criminally prosecuted individuals engaged in obstructing houses of worship in situations having nothing to do with "pro-Palestine speech." Mot. 22. *See, e.g.*, *United States v. Valdez Levy-Armstrong*, et al., No. 26-cr-00025 (D. Minn. Jan. 29, 2026).

[3] PSL-NJ's attempts to have this Court consider statements and publications outside of the pleadings, but these attempts do not fit within any exceptions on the prohibition of consideration of extrinsic evidence at the motion to dismiss stage. Defendant's citation to *Manhart v. WESPAC Foundation., Inc.*, 2025 WL 2257408 (N.D. Il. 2025), is misplaced. In *Manhart*, the Court was able to point to Plaintiff's *pleadings* and find that "Plaintiff made legal contentions that were neither supported by existing law nor nonfrivolous arguments in favor of the extension or modification of existing law" and then made "false representations of law in support of his novel legal arguments." *Id.* at *15, 16. Further, the Court found that the Complaint was "rife with allegations that [were] irrelevant to Plaintiff's stated causes of action." *Id.* at 15. By contrast, the United States's Complaint alleges that PSL-NJ engaged in conduct, Compl. ¶¶ 24-25, 67, 71, 79, 80, resulting in the intimidation of and interference with individuals "lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship," in violation of the FACE Act, 18 U.S.C. § 248(a)(2).

brought not by a former Department of Justice employee, but by the United States of America.  The Assistant Attorney General for Civil Rights authorized this suit. Courts presume that the government acts in good faith.  *Cnty. of Butler v. Governor of Pennsylvania*, 8 F.4th 226, 230 (3d Cir. 2021); *see also Slavens v. United States*, 196 U.S. 229, 236 (1905).  Nothing in PSL-NJ's argument or in the Department of Justice's actions in prosecuting this or other FACE Act violations suggests that this presumption has been or can be overcome.

PSL-NJ's attempt to have the Court deny the United States's motion to amend the complaint is baffling.  As an initial matter, the United States has not made any motion to amend its Complaint and therefore PSL-NJ's preemptive attempt to preclude the United States from doing so is misplaced and premature.  Moreover, were the United States to move to amend its Complaint, the Court should "freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.").

A court has, under limited circumstances, the discretion to deny a request to amend.  *Lake v. Arnold*, 232, F.3d 360, 373 (3d Cir. 2000) (stating that "a district court has the discretion to deny *this request*" for leave to amend) (emphasis added). However, nothing in the opinions cited by PSL-NJ provides that a court may make

15

an anticipatory ruling that denies a party's ability to make such a request. *Id.* (district court provided no explanation for denying plaintiff's request for leave to amend); *see also Cureton v. National Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001) (explaining that a "*motion for* leave to amend a complaint" is within the sound discretion of the district court) (emphasis added); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (explaining that Plaintiffs had "*requested that,* in the event their Complaint was dismissed, they be given leave to replead") (emphasis added).

## CONCLUSION

Because the United States adequately pleaded facts supporting all causes of action against PSL-NJ, this Court should deny PSL-NJ's motion to dismiss.

16

DATED: June 22nd, 2026.

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

JESUS A. OSETE
Principal Deputy
Assistant Attorney General
Civil Rights Division

R. JONAS GEISSLER
Deputy Assistant Attorney General
Civil Rights Division


/s/ Gregory Dolin
GREGORY DOLIN
Senior Counsel
Civil Rights Division

U.S. Department of Justice
950 Constitution Ave., NW
Washington, DC 20530
202-598-9251
gregory.dolin@usdoj.gov

17

**CERTIFICATE OF SERVICE**

I certify that on the 22nd day of June, 2026, I caused a copy of the foregoing Opposition to be served via the Court's electronic filing system upon all counsel of record.

/s/ Gregory Dolin
Gregory Dolin

18