UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 2:25-cv-16049** |
| | ) | |
| **PARTY FOR SOCIALISM AND** | ) | **Motion Day: July 6, 2026** |
| **LIBERATION NEW JERSEY,** *et al.* | ) | |
| **Defendants.** | ) | |
| | ) | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

**Table Of Contents**

I.      The Instagram post identified in the Complaint does not constitute a true threat  1

II.     The Government's claims are not supported by well-pled factual allegations ....... 6

III.    The Government's theory of liability fails as a matter of statutory interpretation.6

IV.     This lawsuit is unconstitutional, viewpoint-based vindictive enforcement. ............ 9

V.      Dismissal with prejudice is appropriate ...................................................... 11

## Table of Authorities

**Cases**

*Att'y Gen. of U.S. v. Irish People, Inc.*,
   684 F.2d 928 (D.C. Cir. 1982) ................................................................................. 9

*Bistrian v. Levi*,
   696 F.3d 352 (3d Cir. 2012) ................................................................................. 6

*Counterman v. Colorado*,
   600 U.S. 66 (2023) ................................................................................. 7

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) ................................................................................. 9

*Fed. Educ. Ass'n v. Trump*,
   795 F.Supp.3d 74 (D.D.C. 2025) ................................................................................. 10

*Griffin v. Lockett*,
   No. 1:CV-06-02445, 2009 U.S. Dist. LEXIS 5113 (M.D. Pa. Jan. 26, 2009) ........................... 6

*Helmann v. Codepink Women for Peace*,
   No. 2:24-cv-05704-SVW-PVC, 2025 U.S. Dist. LEXIS 157027
   (C.D. Cal. Aug. 13, 2025) ................................................................................. 3, 4, 6

*Humanitarian L. Project v. Reno*,
   205 F.3d 1130 (9th Cir. 2000) ................................................................................. 4

*Kumar v. Soto*,
   822 F.Supp.3d 450 (D.N.J. 2026) ................................................................................. 10

*NAACP v. Claiborne Hardware Co.*,
   458 U.S. 886 (1982) ................................................................................. 5, 8

*New Beginnings Ministries v. George*,
   No. 2:15-cv-2781, 2018 U.S. Dist. LEXIS 245391 (S.D. Oh. Sept. 28, 2018) ........................... 7

*Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal of Life Activists*,
   290 F.3d 1058 (9th Cir. 2002) ................................................................................. 2, 3

*Roofers Loc. No. 149 Pension Fund v. GSK PLC*,
   No. 25-00618, 2026 U.S. Dist. LEXIS 44087 (E.D.P.A. Mar. 4, 2026) ................................. 9

*Sines v. Kessler*,
  324 F. Supp. 3d 765 (W.D. Va. 2018) ...................................................................... 6

*Torres v. Carlson*
  No. 25-cv-3474 (CM), 2026 U.S. Dist. LEXIS 123088 (S.D.N.Y. June 1, 2026) ..................... 8

*United States v. Carey*,
  816 F.Supp.3d 129 (D.D.C. 2026) ......................................................................... 10

*United States v. Dillard*,
  795 F.3d 1191 (10th Cir. 2015) ........................................................................... 5

*United States v. Kosma*,
  951 F.2d 549 (3d Cir. 1991) ........................................................................... 4, 5

*United States v. Schoolcraft*,
  879 F.2d 64 (3d Cir. 1989) ................................................................................ 9

*Vanderklok v. United* States,
  868 F.3d 189 (3d Cir. 2017) ................................................................................ 9

*W. Va. State Bd. of Educ. v. Barnette*,
  319 U.S. 624 (1943) ........................................................................................ 1

*Watts v. United States*,
  394 U.S. 705 (1969) ..................................................................................... 5, 6

*Yevgen Taran v. MetLife Stadium*,
  No. 25-cv-11947, 2026 U.S. Dist. LEXIS 54306 (D.N.J. Mar. 16, 2026). ............................ 11

**INTRODUCTION**

The Department of Justice offers not one cogent argument that PSL-NJ alleged public call to lawfully assemble to protest at a given public street corner plausibly constitutes a "true threat" of violence against a particular person or group of persons in violation of the FACE Act.

Where such a frivolous complaint is filed by the Government to punish the exercise of a constitutional right based on disfavored viewpoint, the baseless nature of the complaint itself is evidence of a vindictive prosecution. This matter should be dismissed with prejudice.

The Government's complaint is a dangerous undertaking that targets not only PSL-NJ's speech but sends a chilling message to others who seek to assemble or protest in dissent expressing views that this administration dislikes. The ultimate target is the foundational principle of First Amendment jurisprudence and democratic governance: "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion . . ." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). The vindictiveness requires no inference. The Government's *stated* goal is to "dismantle" groups expressing views with which it disagrees. The Complaint *itself* is vindictive, a SLAPP suit, and a violation of the First Amendment.

**I.      The Instagram post identified in the Complaint does not constitute a true threat**

The Government disclaims any argument that PSL-NJ is vicariously liable for the conduct of other individuals at the November 13 protest. Mem. of L. in Opp. to Def. PSL-NJ's Mot. to Dismiss, 12–13 (June 22, 2026), ECF No. 107 ("Opp."). The Complaint contains no allegations attributing to the PSL-NJ any alleged actions at the protest.

The Government claims PSL-NJ violated the FACE Act by posting a "threat of force" on Instagram. See Opp. 8–13. The speech is the following: NO BUSINESS ON STOLEN LAND / PROTEST LAND THEFT IN OUR BACKYARD / ELLIS ST. & FOREST AVE. / WEST ORANGE, NJ / WEDNESDAY – 6:00PM NOVEMBER 13th. Compl. p. 8 (ECF No. 1).

The Government has not plausibly alleged this classically protected free speech constitutes a "true threat," which can be constituted only by the "serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003); *United States v. Davitashvili*, 97 F.4th 104, 109 (3d Cir. 2024) (assuming this comprehensively defines a "true threat" and emphasizing the "particularity requirement" that there be an identified targeted person or group to a threat).

The speech contains no reference to violence or force, no reference to any particular individual or group, and no reference to any particular person or group as a target of violence.

The Government falsely represents in argument that the post called for supporters "to gather near Dr. Glick's home." Opp. 4. The post contains no reference to Dr. Glick, his home, or his address (whatever that is). Compl. ¶ 25. The Complaint contains no allegation as to the actual proximity of Glick's home to the intersection, leaving the phrase "near" entirely undefined. None of the alleged events on November 13 arose at Dr. Glick's home. The Government argues that Dr. Glick "discovered social media posts on pro-Palestinian social media accounts publicizing his home address as the location of a planned protest." Opp. 4 (citing Compl. ¶ 23). There is no allegation that PSL-NJ has any connection with such posts, that such posts pertained to the November 13 protest, or that such posts contained a reference to violence. Compl. ¶ 23.

The Government, straining to manufacture coded inference of violence in the challenged speech, argues that PSL-NJ urged protestors to wear masks. Opp. 4. The particular factual allegation about masks pertains to a different organization. Compl. ¶ 24. Even were this attributed to PSL-NJ it would not convert speech to assemble and protest into a threat. There are many reasons why persons wear masks including to avoid doxxing and political repression.

The paucity and danger of the Government's presentation is manifest in its principal reliance on *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 90 F.3d 1058 (9th Cir. 2002). *See* Opp. 8–11. The Government submits that PSL-NJ's alleged speech should be treated *as if* it targeted particular persons for murder. *Planned Parenthood*

2

involved a series of stylized "WANTED" and "GUILTY" posters with images of twelve abortion providers with each's name, home address, and an image of the "grim reaper" holding a scythe. *Planned Parenthood*, 90 F.3d at 1062, 1064, 1065. Each physician was indicated as guilty of mass murder in "the Deadly Dozen 'GUILTY' poster." *Id.* at 1062. The materials included the so-called "Nuremberg Files," a compilation of persons the speakers were identifying as guilty of crimes against humanity, *id.* at 1062, 1064, which in the Nuremberg trials resulted in execution. Those identified within the File had their names greyed out where they had already been wounded by violence and struck through where they had already been murdered. *Id.* at 1065.

Even with all of the above, the Court held that if those who issued the posters "had merely endorsed or encouraged the violent acts of others, its speech would be protected." *Id.* at 1072. What converted this speech into a "true threat" was that within approximately 16 months three doctors pictured in those posters were murdered. *Id.* Given this highly specific pattern of post-and-murder, "the poster format itself had acquired currency as a death threat for abortion providers." *Id.* at 1079; *see also Helmann v. Codepink Women for Peace*, No. 2:24-cv-05704-SVW-PVC, 2025 U.S. Dist. LEXIS 157027, at *17 (C.D. Cal. Aug. 13, 2025) ("this pattern was essentially one-to-one; i.e., if a doctor appeared on a poster, they were targeted for murder").

PSL-NJ's alleged speech does not approach this framework. The only "context" the Government provides is a single sentence of generalized allegations of violence at other protests along with a conclusory allegation that "upon information and belief" PSL-NJ organized a protest in Bergenfield, NJ, that resulted in violence by unidentified persons in undescribed circumstances with no particular allegations pertaining to PSL-NJ. Compl. ¶ 67. The Government alleges there were no less than eight protests against land theft across New Jersey and New York between November 4 and 13, and conclusorily alleges violence in connection with just one. Compl. ¶ 25–26. Even by the Government's allegations, calling for protest against "land theft" is not the same as calling for violence against any particular person or group.

3

The Government fails to bring to the Court's attention the ruling in *Helmann v. Codepink Women for Peace* which applied *Planned Parenthood* in a remarkably similar fact pattern, holding that the call by the Palestinian Youth Movement (PYM) to protest a similar land sale/theft event was *not* a "true threat" and, therefore, granted dismissal of FACE Act claims on motion to dismiss. In *Helmann*, PYM was alleged to have posted on social media the following language: "Our land is not for sale / Stand against settler expansion at Sunday's real estate event selling homes to build 'Anglo neighborhoods' in Palestine, 6/23 12 PM Sharp, 9040 W Pica Blvd Los Angeles." *Helmann*, No. 2:24-cv-05704-SVW-PVC, at *4. The address is that of a synagogue. The Court dismissed, ruling the post could not be a "true threat."

"The post is political speech that calls for protest – such speech is protected by the First Amendment." *Id.* at *17–18 (quoting *Humanitarian L. Project v. Reno*, 205 F.3d 1130, 1137 (9th Cir. 2000). The *Helmann* Plaintiffs' allegations that PYM had a history of violent protest (even if accepted as true) "do not add sufficient context to make PYM's social media post a threat. Here, because the plain language of PYM's statement contains no threat, its potential history of violence is irrelevant – that a person has committed violence once does not necessarily mean that everything they say in the future will be violent or threatening." *Id.* at *17.

The Government was well aware of the district court's opinions in *Helmann* when it filed its Complaint. *See* Statement of Interest of United States of America, *StandWithUs Center for Legal Justice v. Codepink*, 24-cv-6253 (C.D. Cal. Feb. 28, 2025) (ECF. No. 119); *see also Helmann v. CodePink Women for Peace*, No. 24-cv-05704, 2025 U.S. Dist. LEXIS 219090, at *2 n.1 (C.D. Cal. June 13, 2025) (noting that the Court's opinion in *Helmann* was being simultaneously issued in *StandWithUs*); *Helmann*, 2025 U.S. Dist. LEXIS 157027, at *2 n.1.

The Government cites two additional inapposite cases. Opp. at 10–11. PSL-NJ's alleged speech is readily distinguishable from the speech constituting a true threat in *United States v. Kosma*, 951 F.2d 549 (3d Cir. 1991). That the Government would argue they are analogous is so far-fetched as to be an inappropriate lack of candor. In *Kosma,* the defendant sent mailgrams to

4

public officials including one "ordering" then-President Ronald Reagan to be murdered. "'Give me Liberty or give me Death.' WE can NOT give you Liberty, but we can give you Death . . . You should choose an Honorable Death. You are hereby ORDERED to Philadelphia, Penna. We are going to give you a 21 Gun-Salute. *Twenty-one guns are going to put bullets thru your heart & brains.* [Time, date, location of the President's assassination specified]." *Kosma*, 951 F.2d at 551 (emphasis in original). Other letters stated Reagan would, on a specified date, be put to death by Potassium-Cyanide gas. *Id.* Another letter stated "You are invited to an act of EUTHANASIA. . . 21 guns are going to blow holes in your heart and brain. . ." *Id.* at 552.

In *United States v. Dillard* a jury was permitted to assess whether speech constituted a "true threat" where the defendant sent a letter to a physician who announced she would be providing abortion related services in Wichita which had no abortion providers after the murder of Dr. George Tiller. The defendant wrote directly to Dr. Mila Means, referenced the Tiller murder, accused Dr. Means of being a killer of babies, warned that "thousands" will "know your habits and routines. They know where you shop, who your friends are, where you drive, where you live. You will be checking under your car everyday – because maybe today is the day someone places an explosive under your car." *Dillard*, 795 F.3d 1191, 1196 (10th Cir. 2015).

The Government miscasts PSL-NJ's motion to dismiss as asserting an affirmative defense. Opp. 10–11. This is a false statement of law. The Court reviews the Complaint under well-known plausibility standards and must dismiss where the Government fails to state a claim.

PSL-NJ's alleged speech is pure First Amendment-protected speech with no threatening language. Even in cases involving speech that contained explicit references to violence, courts remain expansive in protection of speech, often determining that even such speech does not constitute a "true threat" and is, at the most, non-actionable and protected political hyperbole. *See, e.g.*, *NAACP. v. Claiborne Hardware Co.*, 458 U.S. 886, 902, 929 (1982) ("if we catch any of you going in any of them racist stores, we're gonna break your damn neck," was protected speech); *Watts v. United States*, 394 U.S. 705, 706 (1969) ("If they ever make me carry a rifle

5

the first man I want to get in my sights is L. B. J."); *Sines v. Kessler*, 324 F. Supp. 3d 765, 794 (W.D. Va. 2018) (calling counter-protesters at the 2017 Charlottesville Unite the Right rally "savages," making racist and violent statements on a podcast was protected speech where defendant promoted and was present at the murderous rally); *Griffin v. Lockett*, No. 1:CV-06-02445, 2009 U.S. Dist. LEXIS 5113, at *13–15 (M.D. Pa. Jan. 26, 2009) (letter stating "fuck all you racist motherfuckers, and hope you bastards die a violent death" was not a true threat).

A plaintiff cannot just assert that a non-threatening statement was a "true threat" and automatically proceed to discovery. Absent plausibility, the allegation fails as a matter of law, and it is the role of the judge to dismiss the cause of action at the motion to dismiss phase. *See Helmann*, 2025 U.S. Dist. LEXIS 157027, at *17 (granting 12(b)(6) motion regarding FACE Act claim where "the Court is left without any basis to infer that PYM's post is a true threat").

## II.    The Government's claims are not supported by well-pled factual allegations

The only specific factual allegation regarding PSL-NJ is that it made the social media post. As explained on opening brief, all other claims regarding it—that PCL-NJ organized the November 13 protest, Compl. ¶ 9, participated in other violent demonstrations, Compl. ¶ 67, and knew that the November 13 protest would "foreseeably lead to violence," Compl. ¶ 71—are conclusory and lack factual support. The Court should "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). The Government does not respond to this argument and thus, has conceded it. Absent a "true threat," under an *objective* standard, the Court must dismiss.

## III.    The Government's theory of liability fails as a matter of statutory interpretation.

The allegations fail to state a violation of the FACE Act because, in at least two respects, the Government has not averred that PSL-NJ acted with the required intent.

First, as PSL-NJ pointed out in its Memorandum, the express terms of the FACE Act impose liability only on those who "*intentionally*…intimidate[] or…attempt[] to…intimidate."

6

18 U.S.C. § 248(a)(2) (emphasis added). The Government alleges only that PSL-NJ "promot[ed] a protest, 'knowing it would foreseeably lead to violence and intimidation.'" Opp. 12. "Foreseeability" speaks to a "negligence standard," *Helmann*, 2025 U.S. Dist. LEXIS 219090, at *39-40 n.11, not the required mens rea of intentionality as required by the FACE Act. *See also Counterman v. Colorado*, 600 U.S. 66, 87 (2023) (First Amendment prohibits the Government from punishing true threats made with any mens rea less culpable than recklessness).

The claims suffer from a second, insurmountable deficiency: FACE Act liability only attaches when the individual intentionally intimidates a person "because that person is exercising or seeking to exercise his or her right of religious freedom at a place of religious worship." *New Beginnings Ministries v. George*, No. 2:15-cv-2781, 2018 U.S. Dist. LEXIS 245391, at *16 (S.D. Oh. Sept. 28, 2018). The alleged post referenced assembly at a public intersection not any place of worship. Although some events allegedly transpired in proximity to a synagogue where the commercial real estate sale was occurring, the speech has no reference to a place of worship or act of religious worship. There is nothing to suggest that PSL-NJ was motivated by the exercise of religious freedom at a place of religious worship or that it advertised a protest occurring at a place of religious worship (which itself is perfectly lawful if not illegally disruptive). The Complaint alleges only that PSL-NJ advertised a protest to be held somewhere near, though not "at," Moshe Glick's home. Compl. ¶ 24.

The Government spills much ink describing various religious observances that have allegedly taken place at Glick's home. *See, e.g.*, Opp. 8. PSL-NJ's codefendants have written at length about why Glick's home fails to meet the statutory standard for a "place of religious worship," and PSL NJ incorporates those arguments here. *See, e.g.*, Fry Mot. to Dismiss 9-11 (ECF No. 62-1); *Sharif* Mot. To Dismiss 22 (ECF No. 65-1). Nothing alleged suggests that PSL-NJ has any knowledge of whatever Dr. Glick does within the privacy of his own residence. *See* Compl. ¶¶ 1, 17 (no allegation of such knowledge). Nor does a homeowner's faith transform

their home into a synagogue or a "place of religious worship." The argument that wherever Dr. Glick goes is a place of religious worship because he practices religion has no legal precedent.

The Complaint conclusorily asserts that the commercial land sale was designated a "'Ruach' (Spiritual) event" but is silent as to where, when, and how that designation occurred or it was even public. The flyer advertising the land sale event—the only link between the commercial land sale event and PSL-NJ—says no such thing. *See* Compl. ¶ 25. Nor can a person place a legally objectionable transaction within a place of worship and claim that any protest of the illegality of such transaction is protest of religious freedom. An illegal transaction is not rendered non-objectionable when engaged in by a person professing to be motivated by religious belief. The illegal sale of Palestinian lands by an occupying nation does not become a matter of "religious freedom" because the actor is Israel. There are many Jews who do not find this illegal conduct to be liberating, lawful, or an exercise of religious freedom. Many draw upon their Jewish values to protest this activity. Such condemnation is not evidence of animus against the practice of Judaism. *See Torres v. Carlson*, No. 25-cv-3474 (CM), 2026 U.S. Dist. LEXIS 123088, at *37, 37 n.5 (S.D.N.Y. June 1, 2026) (noting the Jewish community is itself divided over Zionism and that criticism of Israel does not necessarily manifest antisemitism, "Plaintiffs' effort to infer from [speech calling for divestment from Israel among other things] that the conspirators' objective was to deny those they perceived as Jews or their supporters of their civil rights is an inferential leap that the allegations of the complaint simply cannot support.").

The Government's inexplicable aside about the constitutionality of proximate cause principles in First Amendment cases does not rebut PSL-NJ's statutory arguments. Opp. 12. The only case cited cautions that proximate cause principles must be "approach[ed] . . . with extreme care" in the context of First Amendment-protected activity and may not be applied even to speeches "advoca[ting] . . . the use of force or violence"—advocacy that does not approach the Instagram post attributed to PSL-NJ. *Claiborne Hardware*, 458 U.S. at 927–28.

8

## IV.     This lawsuit is unconstitutional, viewpoint-based vindictive enforcement.

In response to the presentation that this suit was brought for improper purposes, the Government recites the wrong analog, selective rather than vindictive prosecution. Opp. 13–14. Criminal defendants alleging vindictive prosecution are "required to establish the appearance of vindictiveness," at which time "[t]he burden then shifts to the prosecution to show that the prosecutor's decision to prosecute was justified." *United States v. Schoolcraft*, 879 F.2d 64, 68 (3d Cir. 1989) (separately analyzing vindictive and selective prosecution claims). PSL-NJ has "establish[ed] the appearance" that the Government has brought this suit because of the viewpoints of the defendants and not "the usual determinative factors." *Id.*; *see also Att'y Gen. of U.S. v. Irish People, Inc.*, 684 F.2d 928, 933-34 (D.C. Cir. 1982) (applying the similar selective prosecution burden-shifting framework to a civil enforcement action).

There is no barrier to considering extrinsic evidence to support the claim of viewpoint discrimination. "[A] court may take judicial notice of news articles," *Roofers Loc. No. 149 Pension Fund v. GSK PLC*, Civil Action No. 25-00618, 2026 U.S. Dist. LEXIS 44087, at *15 n.5 (E.D.P.A. Mar. 4, 2026), and of "information . . . made publicly available by government entities," *Vanderklok v. United* States, 868 F.3d 189, 206 n.19 (3d Cir. 2017) (omission in original) (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)).

It is unpersuasive for the Government to point to its FACE Act prosecutions in Minnesota. Opp. 14 n.2. Though the Minneapolis prosecutions dealt with anti-ICE speech, the administration is overtly hostile to both viewpoints, anti-ICE and pro-Palestine speech. The Minneapolis prosecutions are further evidence that the Department of Justice is abusing the FACE Act as a weapon to punish viewpoints with which it disagrees. As raised in PSL-NJ's Memorandum, the DOJ has stated it is deprioritizing FACE Act prosecutions that involve reproductive health providers in an open statement of its viewpoint discrimination.

The presumption of regularity no longer provides refuge. "Generations of presidential administrations and public officials have validated this underlying premise of the presumption of

regularity: their actions writ large have raised little question that they act 'in obedience to [their] duty." *Fed. Educ. Ass'n v. Trump*, 795 F.Supp.3d 74, 90 (D.D.C. 2025). Months into the second Trump Administration, courts saw "instance after instance of departures from this tradition." *Id.* (collecting cases); *See also Kumar v. Soto*, 822 F.Supp.3d 450 (D.N.J. 2026); *United States v. Carey*, 816 F.Supp.3d 129, 144 (D.D.C. 2026) (identifying a "policy direct[ing] the Department of Justice to find charges to bring against people who exercise their rights in disfavored ways"). "The presumption of regularity and integrity previously and routinely afforded to the Executive branch . . . has been undeniably eroded in this jurisdiction and across the country." Order, *Singh v. Tsoukaris*, No. 26-cv-01531 (D.N.J. Feb. 20, 2026) (ECF No. 10).[1]

Even the other FACE Act prosecutions have been irregular.  *See* Jon Collins, *Judge: Cities Church protest search warrant applications didn't meet basic legal standards*, MPR News (May 26, 2025), https://perma.cc/MV3V-B77X (federal Magistrate Judge rejected five search warrants; White House posted a doctored photo to make it appear as though defendant was crying at arrest). The act of prioritizing FACE Act prosecutions involving places of worship, and deprioritizing prosecutions involving clinic access for which the Act is named, is irregular.

PSL-NJ is not merely relying on this Administration's destruction of the presumption of irregularity. It has identified statements by both the charging prosecutor and the Deputy Attorney General who oversees this case which demonstrate that this action was brought to punish viewpoint expressed and to interfere with a criminal prosecution of the alleged "victim" in this case, Dr. Glick, based on viewpoint. Mem. Of L. in Supp. of PSL-NJ's Mot. to Dismiss 22–24.

---

[1] Ankush Khadori, *Trump Is Weaponizing the Government Against His Enemies. It Doesn't Mean He'll Succeed.*, Politico (Aug. 28, 2025), https://www.politico.com/news/magazine/2025/08/28/trump-revenge-tour-weaponize-government-column-00…

## V.    Dismissal with prejudice is appropriate

This Court may dismiss with prejudice if amendment would be futile. *See, e.g.*, *Yevgen Taran v. MetLife Stadium*, No.  25-cv-11947, 2026 U.S. Dist. LEXIS 54306, at *10-11 (D.N.J. Mar. 16, 2026). PSL-NJ has identified numerous structural deficiencies in the Government's Complaint which cannot be remedied. Moreover, this frivolous case is brought for an improper purpose: a dangerous abuse of the power of the U.S. Department of Justice as a mechanism for government punishment and repression of constitutionally protected viewpoint and First Amendment activity with which it disagrees. As such, dismissal with prejudice is appropriate.

DATE: June 29, 2026                    Respectfully submitted,

s/ *Amy Greer*                          s/ *Mara Verheyden-Hilliard*
Amy Greer                               Mara Verheyden-Hilliard (*pro hac vice*)
agreer@dratellewis.com                  mvh@justiceonline.org
DRATEL & LEWIS
(fax): 212-571-3972                     cm@justiceonline.org
29 Broadway, Suite 1412                 s/ *Carl Messineo*
New York, NY 10006                      Carl Messineo (*pro hac vice*)
(212) 732-0707                          cm@justiceonline.org
(fax): 212-571-3972

                                        s/ *Graham L. Sternberg*
                                        Graham L. Sternberg (*pro hac vice*)
                                        graham.sternberg@justiceonline.org

                                        PARTNERSHIP FOR CIVIL JUSTICE FUND
                                        617 Florida Ave. NW
                                        Washington, D.C. 20001
                                        (ph): 202-232-1180
                                        (Fax) 202-747-7747

                                        *Counsel for Defendant Party for Socialism
                                            and Liberation New Jersey*

11